**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC.,<br>    700 2nd Street, NE<br>    Washington, DC 20002<br><br>                    *Plaintiff,*<br><br>v.<br><br>ROB BONTA, in his Official Capacity as<br>Attorney General of California<br>    1300 "I" Street<br>    Sacramento, CA 95814-2919<br><br>                    *Defendant.* | Case No.<br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff the American Chemistry Council, Inc. ("ACC") brings this action for declaratory and injunctive relief against Defendant Rob Bonta, in his official capacity as Attorney General of the State of California, and alleges as follows:

## PRELIMINARY STATEMENT

1.    This action involves an attempt by a state attorney general to use the powers of his office to punish a private party for presenting views to a federal agency that conflict with the policy positions that the state official supports. That effort is an affront to the freedom of speech, the freedom to associate, and the right to petition the government to adopt the policy that the speaker believes is best. All of those cornerstone First Amendment rights are ultimately dependent on the ability of private parties to speak "without…fear of subsequent punishment" from powerful

government officials who have a different view of optimal policy.[1] Where, as here, government officials lose sight of those principles, it falls to the courts to rein in their excesses and safeguard the rights to political expression that lie at the very heart of a free society and representative governance.

2.     Plaintiff, the American Chemistry Council ("ACC"), exercised its freedom to speak on behalf of a select group of its members by answering a Federal Trade Commission request for public comment. Defendant Rob Bonta, the Attorney General for the State of California, advocated a contrasting policy position. He then subpoenaed documents from ACC in order to ascertain its advocacy strategies and hinder its political engagement on the same policy issue that his office and ACC and its members disagree. These documents, however, are First Amendment privileged communications. To justify his subpoena and sidestep the privilege, Defendant Bonta posits that the documents represents speech that is false and thus unprotected, whereas if they reflected truthful speech, they concededly would be protected. This theory, if followed, would grant the government broad license to treat disfavored associational speech of as unprotected, and as has happened here, that government officials may bully their adversaries into curtailing their speech and public advocacy.

3.     Politicized investigations undermine public confidence. Defendant is using his investigative power to intimidate ACC and its members, to silence speech, and to undermine the federal government's request for public comment on matters of public concern. The Court should intervene to halt those abuses.

---

[1] *Roth v. United States*, 354 U.S. 476, 488 (1957) (quoting *Thornhill v. State of Ala.*, 310 U.S. 88, 101–02 (1940)).

## INTRODUCTION

4.      This dispute arises from an event common to the political life of the District: a federal agency's call for public comment on a matter under consideration by the agency. Specifically, after the United States Federal Trade Commission ("FTC") issued a public request for comment on updates to its Guides for the Use of Environmental Marketing Claims (the "Green Guides") in 2022, ACC, a Washington, D.C.-based trade association, exercised its freedom of speech and to petition the government, bringing together a select group of its members and submitting a comment to the FTC—supported by consumer data compiled by a third party—on ACC's views about how consumers understand plastics recyclability claims. Based on survey evidence, ACC also issued a press release stating that "Advanced Recycling is Recycling, 88% of Americans Say in Survey."[2]

5.      Defendant Bonta also submitted comments to the FTC, staking out an opposing position. Without citation to any source, or any consumer survey data, Defendant Bonta offered his view that "advanced recycling" and certain other types of recycling "should not qualify as recycling" unless these processes met certain stringent criteria which run counter to ACC's advocacy perspectives and will hinder potential growth and use of advanced recycling technologies.[3] The FTC thus had before it the competing views of ACC and Defendant Bonta, as well as others, just as the Commission had requested.

---

[2] *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, ACC (Apr. 20, 2023), https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey.
[3] R. Bonta, et al., *Green Guides Review* (Apr. 24, 2023), https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

6.     Apparently unsatisfied with being a mere participant in the public comment proceeding initiated by federal officials under federal law, Defendant Bonta then sought to wield his investigative power to ascertain ACC's internal advocacy strategies, bully ACC, and to discourage ACC and its members from exercising their freedom to petition the federal government. Defendant Bonta subpoenaed ACC, seeking information about the Environmental Claims Study that formed the basis for ACC's comments to the FTC.

7.     Acting in good faith, ACC produced certain documents responsive to the subpoena. ACC did not produce certain responsive documents that are subject to United States and California constitutional privileges because the disclosure of such documents would discourage ACC and its members from exercising their First Amendment rights to speak, associate, and petition the government on matters of public concern. ACC withheld those documents from production, providing a log with information ACC believed sufficient for Defendant Bonta to assess the constitutional privilege claims.

8.     In a letter dated May 3, 2024, Defendant Bonta challenged ACC's constitutional privilege claims. Tellingly, the letter attacked ACC's Environmental Claims Study, referring to it as "'survey data'" with quotation marks, suggesting that Defendant Bonta questioned whether ACC had performed an appropriate survey.[4] Rather than identifying additional information that Defendant Bonta believed would find helpful in assessing ACC's constitutional privilege claims, Defendant Bonta accused ACC and its members of attempting to "fraudulently sway the government and public" through the public comment process.[5] Defendant Bonta characterized

---

[4] Exhibit A at 2 (Exhibits cited in this Complaint are attached hereto).
[5] *Id.*

ACC's speech as untruthful and, therefore, unprotected by the United States and California constitutions.

9.      The May 3, 2024 letter makes clear that, far from constituting a neutral investigative process, Defendant Bonta pre-judged the outcome of his investigation. His investigation is merely a means to obtain ACC's internal advocacy strategies to advantage his own engagement on an on-going Federal policy issue and to punish ACC for speech with which Defendant Bonta disagrees.

10.     Moreover, Defendant Bonta's investigation is chilling further speech and association by ACC and its members by forcing ACC to divulge information that ACC and its members believed would remain anonymous, confidential, and private—thus violating free speech, associational, and petitioning rights. Revelation of the material Defendant Bonta seeks would make ACC and its members less likely to associate, speak freely, or petition the government on important national issues. Indeed, in reaction to the Investigative Subpoena, ACC has foregone further public advocacy and refrained from engaging in additional consumer research initiatives for fear of incurring additional demands from Defendant Bonta.

11.     Defendant Bonta's pernicious use of governmental power to punish speech with which he disagrees threatens the fundamental freedoms enshrined in the United States and California Constitutions.

12.     Defendant Bonta's Investigative Subpoena has already chilled ACC's speech, and a petition to enforce the Investigative Subpoena would further exacerbate those harms. This action seeks to shield ACC's constitutionally protected speech, associational rights, and petitioning conduct, and to enjoin Defendant from taking further actions to chill ACC's exercise of its constitutional rights.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction under Title 28, United States Code, Section 1331 over ACC's federal constitutional claims for declaratory and injunctive relief, which arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, Sections 1983 & 1988. The Court may also exercise supplemental jurisdiction over ACC's state-law claims, which derive from the same common nucleus of operative fact as ACC's federal claims.[6]

14.     ACC has Article III standing in its own right because ACC has suffered and will continue to suffer injuries-in-fact; there is a direct causal connection between Plaintiff ACC's injuries and Defendant Bonta's actions in pursuing the Investigative Subpoena. A favorable decision from this Court granting ACC relief will redress those injuries. This dispute is ripe because Defendant is already violating ACC's rights, and ACC will suffer further imminent invasions of those rights in the absence of relief from this Court. ACC has an actual fear that Defendant will enforce the Investigative Subpoena, which has already chilled its speech.

15.     This Court has specific personal jurisdiction over Defendant Bonta in his official capacity as California Attorney General. The District of Columbia's long-arm statute is effectively congruent with the permissible limits of personal jurisdiction under the Due Process Clause.[7] For constitutional purposes, specific personal jurisdiction exists where the defendant has "purposefully established minimum contacts within the forum State"[8] Physical presence is not a prerequisite to

---

[6] *See Coleman v. D.C.*, 794 F.3d 49, 56 n.1 (D.C. Cir. 2015)).
[7] *See*, *e.g.*, *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016); *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1113 (D.C. 2012).
[8] *Media Matters for Am. v. Paxton*, No. 24-CV-147 (APM), 2024 WL 1773197, at *9 (D.D.C. Apr. 12, 2024) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))

jurisdiction: "A nonresident defendant need not have been physically present in the District for courts to exercise personal jurisdiction," but "[r]ather, the critical issue is whether the individual's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[9] "Even a single act may be sufficient to constitute transacting business, so long as the contact is voluntary and deliberate, rather than fortuitous."[10]

16.     Further, Plaintiff alleges unlawful retaliation in violation of the First Amendment, an intentional tort. *See infra* Count I. In intentional-tort cases, "personal jurisdiction can be based upon: (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state."[11]

17.     The Court can exercise personal jurisdiction over Defendant Bonta under these standards. Defendant Bonta served ACC, headquartered in the District, with a subpoena seeking information that ACC provided to a federal agency, the FTC, that is likewise located in the District. The District is where ACC would have to undertake efforts to further comply with the Investigative Subpoena. By commanding production of such documents, Defendant Bonta has "directed" activity in the District. And Plaintiff's claims "arise" from those contacts because its claims challenge the constitutional propriety of Defendant Bonta's Investigative Subpoena. *See infra* Counts I-III. In sum, Defendant Bonta's conduct created a "substantial connection" to the District by targeting ACC's petitioning activity there.

---

[9] *Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 242 (D.C. 2015) (internal quotations omitted).

[10] *Media Matters for Am.*, 2024 WL 1773197, at *12 (internal quotation marks and citations omitted).

[11] *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 29 (D.D.C. 2017) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)).

18.     Venue is proper under 28 U.S.C. section 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Columbia. Defendant Bonta caused his Investigative Subpoena to be directed to ACC in the District; the documents at issue were created in the District; the public comments at the heart of the Investigative Subpoena were submitted to the FTC in the District; ACC's further compliance or noncompliance with the Investigative Subpoena will occur in the District; and the substantial chill to Plaintiff has been suffered, in substantial part, in the District, where ACC resides.

## PARTIES

19.     Founded in 1872, ACC is a non-profit trade association, headquartered in Washington, D.C. that represents its members—over 190 leading companies engaged in the business of chemistry. ACC employs 170 people in its Washington, D.C. office. ACC "advocate[s] for the people, policy, and products of chemistry that make the United States the global leader in innovation and manufacturing."[12] ACC's Plastics Division represents the leading resin manufacturers and partners in the United States' plastics value chain. The Plastics Division is an industry leader in promoting innovative plastics recycling and recovery programs. ACC has an interest in working with its members and regularly engaging in political speech and petitioning, including in submitting comments and engaging with policy makers at federal agencies. As part of its mission, ACC champions science-based policy solutions across all levels of government.

20.     Defendant, Rob Bonta, is the Attorney General for the State of California. Plaintiff brings this action against Mr. Bonta in his official capacity as Attorney General. California Government Code section 11180 *et seq*. grants Defendant Bonta powers in his capacity as Attorney General to make investigation concerning violations of any law or rule or order of the

---

[12] https://www.americanchemistry.com/.

department.[13] California Government Code section 11180 also grants Defendant Bonta power to prosecute actions for violations of any law or rule or order of the department.[14]

## FACTS

### A.    Defendant Announces an Investigation into Global Plastics Pollution.

21.    On April 28, 2022, Defendant Bonta announced that he had initiated an investigation into the fossil fuel and petrochemical industries.[15] Defendant's press release stated that he planned to "target companies that have caused and exacerbated the global plastics pollution crisis, their role in perpetuating myths around recycling, and the extent to which this deception is still ongoing."

22.    Soon thereafter, Defendant Bonta sent a letter to ACC asking it to preserve certain documents. ACC, at great time and expense, took efforts to preserve potentially responsive documents and has agreed to continue preserving these documents.

### B.    The United States Federal Trade Commission Issues a Public Request for Comments, and ACC Answers that Call with Comments and Survey Data.

23.    On December 14, 2022, the FTC requested public comment on its Green Guides. In that public announcement, the FTC specifically requested "information on consumer perception evidence of environmental claims."[16]

---

[13] Cal. Gov. Code § 11180(b).

[14] *Id.*

[15] *Attorney General Bonta Announces Investigation into Fossil Fule and Petro Chemical Industries for Role in Causing Global Plastics Pollution Crisis*, Cal. OAG (Apr. 28, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-investigation-fossil-fuel-and-petrochemical.

[16] *FTC Seeks Public Comment on Potential Updates to its 'Green Guides' for the Use of Environmental Marketing Claims*, FTC (Dec. 14, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/12/ftc-seeks-public-comment-potential-updates-its-green-guides-use-environmental-marketing-claims.

24.     Among other things, the FTC sought comment on whether the Green Guides should "be revised to provide guidance on making 'recycled content' claims based on alternative method(s), *e.g.*, mass balance calculations, certificate (*i.e.*, credit or tagging) systems, or other methods? If so, why, and what guidance should be provided? If not, why not?"[17] The FTC further asked: "What evidence supports your proposed revision?"[18]

25.     In line with its mission and at the urging of its members, ACC and a coalition of its members took up the federal government's call to provide comments, including the call to obtain survey data to address the questions raised by the FTC about consumer perspectives regarding recycling.

26.     On behalf of its members, ACC engaged Heart+Mind Strategies, an independent research and consulting firm, to conduct a national study of consumer perceptions and labelling preferences (the "Environmental Claims Study") to address the FTC's questions about consumer perceptions of recyclable claims. Heart+Mind Strategies conducted this survey from January through February 2023, and analyzed more than 3,000 responses to the survey, to aid ACC's efforts to prepare comments for the FTC. To ensure that a variety of demographic groups were represented, the survey relied on U.S. Census data to establish metrics for age, gender, region, education, and race or ethnicity.

27.     ACC worked closely with some of its member companies to help ensure the survey focused on topics most relevant to FTC's scope of public inquiry. Although ACC's website identifies many of its members, including certain of its Plastics Division Members, ACC does not

---

[17] *Guides for the Use of Environmental Marketing Claims*, Fed. Reg. (Dec. 20, 2022), https://www.federalregister.gov/documents/2022/12/20/2022-27558/guides-for-the-use-of-environmental-marketing-claims.
[18] *Id.*

typically identify which individuals from its member companies engage in specific advocacy. Whether a member company stands or collaborates with ACC on a particular issue is not public. The identities of ACC members who participated in ACC's work to prepare the Environmental Claims Survey and provide comment on the Green Guides are not public.

28.     After receiving the Environmental Claims Study survey data, ACC and a working group of its members also collaborated in drafting comments to submit to the FTC.

29.     Both ACC's comments and the Environmental Claims Study pertain, in part, to technologies known as advanced recycling. Advanced recycling consists of a set of technologies that can help significantly increase the ability to recycle plastic materials. In simple terms, advanced recycling takes hard-to-recycle plastics—such as films, multi-layered pouches, tubes,—and turns the plastic polymers back into their original molecular components so that they can be processed (and used) again. Twenty-five U.S. states have enacted laws recognizing advanced recycling as a manufacturing activity.

30.     On April 20, 2023, ACC provided comments to the FTC, sharing the consumer perception data gathered in the survey.[19] ACC submitted its written comments, as well as the results of the Environmental Claims Study,[20] to the FTC at 600 Pennsylvania Avenue NW, Washington, DC 20580.

31.     Also on April 20, 2023, ACC published a press release about its comments to the FTC regarding the Green Guides and the results of the Environmental Claims Study. As supported

---

[19] Exhibit B.
[20] Exhibit D.

by data from the Environmental Claims Study, the press release stated: "Advanced Recycling Is Recycling, 88% of Americans Say in Survey."[21]

C. **Defendant Also Answers the FTC's Call for Comments on the FTC's Green Guides.**

32.     ACC was not alone in responding to FTC's Green Guides request. Defendant Bonta also submitted comments on April 24, 2023.[22] Defendant Bonta submitted his comments to Chair Lina M. Khan at 600 Pennsylvania Avenue, NW, Suite CC-5610 (Annex J) Washington, DC 20580.

33.     Defendant Bonta's comments state:

> advanced, chemical, or molecular recycling, using methods such as gasification, pyrolysis, chemical depolymerization, solvent-based processing, or other non-mechanical means, should not qualify as a recycling program unless and until those processes are proven to be as efficient as mechanical recycling in yielding a useable product, and are shown to have an actual environmental benefit.[23]

Defendant Bonta's comments further propose revising the Green Guides to "require that an item marketed as 'recyclable' is of the type that is routinely and actually recycled through a mechanical process that reconstitutes it into a new item, or into raw material used to manufacture a new item."[24]

---

[21] *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, ACC (Apr. 20, 2023), https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey.

[22] *See* R. Bonta, et al., *Green Guides Review* (Apr. 24, 2023), https://downloads.regulations.gov/FTC-2022-0077-0987/attachment_2.pdf.

[23] *Id.* at 31 (emphasis omitted).

[24] *Id.*

34.     Defendant Bonta participated in other public advocacy processes, advancing views regarding advanced recycling.[25] Among others, these comments are signed by a Deputy Attorney General and Supervising Deputy Attorney involved in the Investigative Subpoena.

**D.     Defendant Bonta Subpoenas ACC After His Comments to the FTC Conflict With ACC's Survey Data.**

35.     Within months of ACC's submission of comments to the FTC, on December 6, 2023, Defendant Bonta served an Investigative Subpoena to ACC pursuant to powers conferred on the California Attorney General.[26]

36.     The Investigative Subpoena identifies ACC as "the non-profit trade association for the chemicals industry, with the address 700 Second Street, NE, Washington, DC 20002 including subordinate or affiliated organizational units of any kind, such as parents, divisions, affiliates, partnerships, subsidiaries, predecessors including all present and former officers, directors, employees, agents, consultants, attorneys, representatives or other persons acting on behalf of the foregoing."

37.     The Investigative Subpoena's caption includes Attorney General of California Rob Bonta, and Defendant Bonta's assistants and deputies.

38.     The Investigative Subpoena commands that ACC produce:

> All DOCUMENTS and COMMUNICATIONS RELATED TO the
> ENVIRONMENTAL CLAIMS STUDY, including, but not limited

---

[25] *See* Comments on *Draft National Strategy to Prevent Plastic Pollution: Request for Public Comment*, Cal. AOG (Jul. 31, 2023), https://oag.ca.gov/system/files/attachments/pressdocs/EPA%20Draft%20Plastics%20Strategy%20Comment%20Letter%20%28Final%2BBookmarks%29.pdf; Bonta, et al. *U.S. Environmental Protection Agency Proposed Rule; Significant New Use Rules on Certain Chemical Substances*, Cal. OAG (Aug. 18, 2023), https://oag.ca.gov/system/files/attachments/press-docs/Comments%20of%20the%20AGs%20of%20MD%20CA%20MA%20DC%20and%20other%20states%20on%20SNURs.pdf.

[26] *See* Exhibit C at 1–2.

to, the proposal, planning, execution, and follow-up regarding the ENVIRONMENTAL CLAIMS STUDY and

All DOCUMENTS and COMMUNICATIONS RELATED TO the funding of the ENVIRONMENTAL CLAIMS STUDY.

39.     The Investigative Subpoena defines "Environmental Claims Study" as "the survey conducted from January 30, 2023 through February 8, 2023, and all associated work product and COMMUNICATIONS, by the AMERICAN CHEMISTRY COUNCIL and Heart+Mind Strategies, as referenced in YOUR April 20, 2023 press release titled, 'Advanced Recycling is Recycling, 88% of Americans Say in Survey' published on YOUR website at https://www.americanchemistry.com/chemistry-in-america/news-trends/pressrelease/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey."

40.     The Investigative Subpoena included a declaration from a Deputy Attorney General stating that "[t]he Attorney General of California, pursuant to California Government Code section 11180, has authorized an investigation of possible violations relating to business practices and subjects under the jurisdiction of the California Department of Justice."

41.     The declaration also provided that "[t]he Attorney General's Office has received information that the AMERICAN CHEMISTRY COUNCIL'S promotion and marketing of recycling plastic may have resulted in legal violations. These violations include potential common law and statutory violations." Asserted violations include "potential common law and statutory violations, such as products liability, public nuisance, and violations of the California Unfair Competition Law (Bus. & Prof. Code sections 17200 *et seq*.), California False Advertising Law (Bus. & Prof. Code sections 17500 *et seq*.), and other laws regarding environmental protection, public health, and consumer protection."

42.     To date, Defendant Bonta has refused to disclose the source of information that led the Office of the Attorney General to conduct its investigation.

**E.    ACC Produces Documents to the Defendant and Also Objects to Production of Documents Protected by Constitutional Privileges.**

43.    ACC timely objected to the Investigative Subpoena on the ground that, among other things, the Investigative Subpoena sought documents that are privileged from disclosure by the United States and California Constitutions.

44.    Notwithstanding its objections, ACC undertook a good faith effort to identify responsive materials located in its files.

45.    As part of its efforts, ACC identified employees and former employees who might have had materials related to the subject matter of the Investigative Subpoena.

46.    During the time frame of the Investigative Subpoena, these custodians worked in ACC's headquarters located in the District.

47.    ACC's outside counsel undertook a document-by-document review to assess whether documents were responsive to the Investigative Subpoena's commands.

48.    Acting in good faith, ACC produced documents on a rolling basis on January 19, 2024, February 2, 2024, and March 15, 2024.

49.    The document production included the Environmental Claims Study summary prepared by Heart+Mind Strategies, the Survey questions and responses, ACC's comments to the FTC, along with communications with third parties that did not discuss member comments.

50.    Along with its final production, on March 15, 2024, ACC submitted a log identifying 550 documents withheld from production on the basis of U.S. and California constitutional privileges ("ACC's Constitutional Privileges Log").

51.    These withheld documents consist of materials and communications generated by ACC working with its coalition of members to submit comments related to the Green Guides. The documents include information that would reveal the strategy, timing, focus, policy perspectives,

viewpoints, identity, and preferences of ACC and its members engaged in petitioning the FTC and responding to the FTC's request for comment on the Green Guides.

52.     The withheld documents were not distributed publicly. ACC and its members expected that these documents would remain confidential. ACC and its members expected that the withheld documents would not be disclosed to governmental actors engaging in public advocacy on the same topics. ACC's members expected that their decision to work with ACC to respond to the FTC's request for comment on the Green Guides would not be public.

53.     The information provided in ACC's Constitutional Privileges Log, in connection with the subject matter of the Investigative Subpoena, is sufficient to substantiate ACC's constitutional privilege claims. ACC's Constitutional Privileges Log included the following information for each withheld document: a unique identifying number, a number associated with the "parent" of any withheld attachment, the author or sender of the document, the recipients of the document, the carbon copy recipients of the document, the blind copy recipients of the document, the date range of the document, and a description of the constitutional privilege. ACC redacted the identities of member representatives to the extent they would otherwise have appeared on the log.

**F.     Defendant Issues a Demand Letter to ACC Maligning the Environmental Claims Study as an Attempt to "Fraudulently Sway the Government and the Public."**

54.     On May 3, 2024, a Deputy Attorney General for Defendant sent to ACC's outside counsel a letter titled RE: American Chemistry Council: Petition to Enforce Investigative Subpoena ("Demand Letter").

55.     The Demand Letter states that "ACC's privilege claims lack merit" and "request[s] that ACC promptly produce the documents listed on the privilege log responsive to the [Investigative] Subpoena by May 17, 2024."

56.     The Demand Letter includes no citation to any case or any explanation of what information would need to be included in order to substantiate a constitutional privilege claim. Instead, the Demand Letter maligns ACC's speech as "untruthful," its productions "dismal," and characterized ACC's Environmental Claims Study as "an attempt to sway the FTC's decision-making as to the definition of 'recycling.'" The Demand Letter makes clear that Defendant disagrees with ACC's speech and denies that ACC has any constitutional right to submit the Environmental Claims Study or its results to the FTC.

57.     The Demand Letter claims that ACC failed to provide information required by law to support its claims of privilege because "ACC has not shown any infringement on their First Amendment rights flowing from the Attorney General's demand for documents."

58.     The Demand Letter asserts that, by submitting comments, ACC has "put the [Environmental Claims Study] front and center as a fact and potentially as a defense" even though Defendant has not filed litigation against any company or individual as part of his two-year old investigation into the fossil fuel and petrochemical industries.

### G.     Defendant's Demand Letter Violates ACC's Right to Petition and Exercise its Constitutional Rights on Behalf of Its Members.

59.     The Demand Letter is a naked attempt to pinpoint which of ACC's members joined together to petition the federal government, acknowledging that the Environmental Claims Study was "formulated between a partnership of members and ACC" and cynically concluding that it "demonstrates the plastic industry's continued attempts to fraudulently sway the government and public into believing that they are creating solutions to the plastics waste and pollution crisis, while in reality, exacerbating the crisis." The Demand Letter's allegations demonstrate that Defendant Bonta has pre-judged the result of his investigation, determining before concluding the investigation that ACC and its members' speech is untruthful and relevant to a "defense," despite

Defendant Bonta having filed no litigation for ACC to defend against. ACC and its members' speech is not "untruthful." Rather, it reflects speech that the California Attorney General disagrees with.

60.     The Demand Letter and its unsubstantiated and incorrect allegations underscore exactly why Defendant Bonta's Investigative Subpoena—and efforts to force ACC to reveal the identity and undertakings of ACC's members related to government petitioning—chills speech and associational rights. Disclosure of the documents requested by the Demand Letter would cause irreparable damage to ACC and its members, revealing ACC and its members' strategy and goals in lobbying, drafting legislation, coordinating with interested members of the public and managing membership. Additionally, disclosure of the documents requested by the Demand Letter would cause irreparable damage to ACC and its members by revealing to a hostile party the identities of those members who associated to petition the government with the understanding that their identities would remain anonymous and confidential.

61.     ACC has members that provided comments on the Environmental Claims Study and ACC's submission to the FTC that do not agree to having their names disclosed to Defendant Bonta for fear of retaliation and intimidation.

62.     Disclosure of the documents requested by the Demand Letter would further chill ACC's members future speech and decision to associate to petition the government due to fear of similar forced-disclosure in the future.

**H.     <u>Defendant Chilled, and Continues to Chill, ACC's Speech and Petitioning.</u>**

63.     Defendant's investigation and Demand Letter have chilled ACC's speech and petitioning activities.

64.     In a meeting between ACC and the FTC staff on September 28, 2023, the FTC indicated that they would appreciate additional information related to their considerations about

the Green Guides. The FTC is a data-driven organization, valuing empirical information to assist in rulemaking and other policy decisions.

65.     In response to the request from the FTC, in February 2024, ACC considered commissioning a second survey, similar to the Environmental Claims Study, to support further education and advocacy efforts with the FTC. However, due to the Investigative Subpoena, ACC decided not to commission another survey for fear of being singled out by Defendant Bonta for expressing views that are contrary to his, including through additional subpoenas from Defendant Bonta to turn over documents and data related to that new survey. Without data from the new survey, ACC has had to modify its advocacy efforts to the FTC, degrading its ability to speak, and preventing ACC from engaging in further public speech.

66.     ACC's speech has been further chilled in California where ACC has been reluctant to engage fully on certain policy issues important to its members' California interests for fear that its advocacy strategies and communications on those topics may be subject to additional singling out and retaliation from Defendant Bonta.

67.     ACC and its members are fearful that Defendant Bonta would single ACC out because it has expressed contrary viewpoints by requiring ACC to produce documents related to as yet unstated policy positions, drafts, and similar documents, which could be taken out of context or made public before ACC and its member had reached member consensus and decided to advance those positions publicly.

68.     ACC has also experienced hesitancy from members to send written communications to ACC for fear that those communications would be subject to production to Defendant Bonta. Written communication is a vital method ACC uses to work with its members and to develop public advocacy positions and strategies. Defendant Bonta's Investigative

Subpoena and demand for the production of non-public communications that members expected would stay private has diminished ACC's ability to fully associate with its members, exercise its freedom of speech, and petition the government.

I. **Through the Meet-and-Confer Process to Discuss Defendant's Demand Letter, Defendant Makes Clear That He Will Require ACC to Provide the Names of Its Members Who Participated in the FTC Comments, A Further Effort to Retaliate Against and Chill Their Speech.**

69.    On May 16 and May 22, 2024, outside counsel for ACC met and conferred with California Deputy Attorneys General on behalf of the Defendant to discuss the Demand Letter. The Deputy Attorneys General asked that ACC provide the names and identities of the members currently redacted in ACC's privilege log. The Deputy Attorneys General also asked that ACC provide more detail about the content of the withheld documents, such as email subject lines.

70.    Revelation of the requested information would result in a similar chill that full disclosure of the withheld documents would effect.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Plaintiff's Rights Under the First and Fourteenth Amendments of the United States Constitution (42 U.S.C. § 1983) and Plaintiff's Liberty of Speech Rights Under Article I Section 2 of the California Constitution and Plaintiff's Right to Assemble and Petition under Article I Section 3 of the California Constitution**

71.    Plaintiff incorporates paragraphs one through 70 above as if set forth fully herein.

72.    Defendant Bonta violated, and continues to violate, Plaintiff's First Amendment rights by launching an investigation, serving an Investigative Subpoena in retaliation for Plaintiff's speech, petitioning, and associational activities, and seeking to force ACC to turn over materials protected by the First and Fourteenth Amendments of the United States Constitution as well as by Article I Section 2 and Article I Section 3 of the California Constitution. Defendant Bonta's use

of the power of his office continues to discourage Plaintiff and its members from engaging in associational and petitioning activities. The chill imposed by Defendant Bonta's retaliatory actions injures Plaintiff's ability to associate with member organizations and petition the government. Absent relief from this Court, that chill will continue so long as Defendant Bonta's investigation remains active.

73.     "[T]he law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions."[27] "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[28]

74.     The D.C. Circuit has long recognized First Amendment retaliation claims as "actionable because 'retaliatory actions may tend to chill individuals' exercise of constitutional rights.'"[29] That cause of action for First Amendment retaliation arises under 42 U.S.C. § 1983, which "has long [been] interpreted . . . to permit suits against officials in their individual capacities" for constitutional violations.[30] To prevail on its retaliation claim, Plaintiff must show: "(1) [Plaintiff] engaged in conduct protected under the First Amendment; (2) [Defendant Bonta] took some retaliatory action sufficient to deter a person of ordinary firmness in [Plaintiff's] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action."[31] ACC satisfies each element.

---

[27] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

[28] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

[29] *Crawford-El v. Britton*, 93 F.3d 813, 846 (D.C. Cir. 1996) (Henderson, J., concurring) (quoting *ACLU of Md., Inc. v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993), *vacated by* 523 U.S. 574 (1998)); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

[30] *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020).

[31] *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (citations omitted).

75.     First, ACC's conduct is protected by the First Amendment: the freedom to associate—and to associate privately—is a bedrock of First Amendment jurisprudence.[32] Defendant Bonta demands that ACC disclose the identities of members participating in the communications listed in the privilege log. But, the First Amendment does not take disclosure of member identities lightly, and "[t]he Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation."[33] There is no question that the right to association encompasses the freedom to engage in expressive association in pursuit of economic ends.[34] ACC and its members are within their First Amendment rights to collaborate on political activity that furthers their business interests. In addition to the freedom to associate, petitioning the government is "one of the most precious of the liberties safeguarded by the Bill of Rights," and this "right is implied by [t]he very idea of a government, republican in form."[35] ACC is an organization that enables its members to effectively exercise their right to petition the government by collaborating on shared political and economic interests. As established in the *Noerr-Pennington* doctrine, "parties

---

[32] *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161-62 (9th Cir. 2010) (holding that the First Amendment privilege applies to the identity of members and to internal campaign communications).

[33] *Am. Fed'n of Labor & Cong. of Indus. Org. v. Fed. Election Comm'n*, 333 F.3d 168, 175 (D.C. Cir. 2003).

[34] *See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., and its Locals 1093, 558 and 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1148 (D.C. Cir. 1978) (explaining that "economically motivated expression or association is not disqualified from protection under the first amendment"); *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470 (10th Cir. 2011) (holding that First Amendment protections applied to the member identities of a motor fuel trade group whose associational interest were economic in nature).

[35] *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524-25 (2002) (citations omitted).

exercise their right to petition when they advocate their causes and points of view respecting resolution of their business and economic interests."[36]

76.    California's constitutional right to liberty of speech, assembly, and petition are even more protective than the rights protected by the U.S. Constitution.[37]

77.    Second, Defendant Bonta has acted adversely to Plaintiff's protected activity of petitioning the FTC regarding the Green Guides. His investigation and intrusive Investigative Subpoena have already chilled Plaintiff's associational and petitioning activities and will continue to do so absent relief. Defendant Bonta's retaliatory conduct would "deter a person of ordinary firmness in [Plaintiff's] position from speaking again."[38]

78.    Third, Defendant Bonta's Investigative Subpoena is causally linked to Plaintiff's associational and petitioning privileges. The Investigative Subpoena and subsequent communications expressly state that Defendant Bonta commands production of "documents related to the funding, proposal, planning, execution, and follow-up of the Environmental Claims Study submitted by ACC to the Federal Trade Commission for the purpose of modifying the Green Guides."[39] Defendant Bonta has made his opinion about advanced recycling publicly known, and his difference in opinion from ACC is clearly linked to the investigation into ACC's petitioning activity. The Office of the Attorney General has already described ACC's Environmental Claims Study as a "continued attempt[s] to fraudulently sway the government and public."[40] This unsupported attack underscores the impermissible and biased nature of Defendant Bonta's

---

[36] *Venetian Casino Resort L.L.C. v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015) (citations omitted).
[37] *L.A. All. For Survival v. City of L.A.*, 22 Cal. 4th 352, 366 (2000); *Robins v Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 908 (1979).
[38] *Aref*, 833 F.3d at 258 (citations omitted).
[39] Exhibit C at 8.
[40] Exhibit A at 2.

investigation. The material sought by Defendant Bonta's Investigative Subpoena further confirms the causal connection, singling out documents and communications related to petitioning the FTC regarding the Green Guides.

79.     Fourth, Defendant Bonta seeks to further intrude upon ACC's rights by forcing ACC to turn over materials squarely shielded by the associational privilege. Documents ACC withheld from production on the basis of the associational privilege would reveal protected information, such as the strategy, timing, focus, policy perspectives, viewpoints, identity, and preferences of ACC and its members engaged in responding to the FTC's request for comment on the Green Guides.

80.     Defendant Bonta's retaliatory campaign against ACC has injured Plaintiff and will continue to do so absent relief from this Court. This harm will be redressed by an order declaring Defendant Bonta's conduct to be unlawful and enjoining him from further investigating Plaintiff or enforcing his Investigative Subpoena. Such relief is appropriate under Section 1983.[41] Such relief is also appropriate for violations of California Constitution Article I Sections 2 and 3.[42]

## COUNT II

## Violation of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983)

81.     Plaintiff incorporates paragraphs one through 80 above as if set forth fully herein.

82.     Defendant Bonta's issuance of the overbroad and retaliatory Investigative Subpoena further violates ACC's First and Fourth Amendment rights by unreasonably requiring it

---

[41] *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 n.3 (D.C. Cir. 2004); *Anderson v. Reilly*, 691 F. Supp. 2d 89, 92 (D.D.C. 2010).
[42] *Stewart v. City & Cty. of S.F.*, 608 F. Supp. 3d 902, 916 (N.D. Cal. 2022), *aff'd*, No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023); *In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21-CV-0135, 2022 WL 870637, at *2 (N.D. Ill. Mar. 23, 2022).

to turn over privileged materials, including those that impinge upon ACC's association with its members in connection with petitioning activities.

83.    The Fourth Amendment limits the scope of administrative subpoenas.[43] The First Amendment provides Plaintiff a privilege against disclosure of materials that would chill their constitutional rights.[44] Where "the materials sought to be seized" by an administrative subpoena "may be protected by the First Amendment," the requirements of the Fourth Amendment are applied with "scrupulous exactitude."[45]

84.    Defendant Bonta has shown no such "scrupulous exactitude" in his Investigative Subpoena. Without any showing of cause or jurisdiction, Defendant Bonta has demanded that ACC produce documents related to ACC's petitioning activities and ACC's communications with member organizations.

85.    Defendant Bonta seeks, for example, a privilege log that discloses the names of members who participated in communications about ACC's petitioning of the FTC—member identities are protected from compelled disclosure under the First Amendment.[46]

86.    This ongoing violation of Plaintiff's First and Fourth Amendment rights will be remedied by prompt injunctive relief from this Court setting aside the Investigative Subpoena.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

---

[43] *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–11 (1946).
[44] *See Perry*, 591 F.3d at 1160.
[45] *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).
[46] *E.g., Am. Fed'n of Labor*, 333 F.3d at 175-76; *Perry*, 591 F.3d at 1161-62; *In re Motor Fuel Temperature Sales*, 641 F.3d 470.

87.    Declare that Defendant Bonta's Investigative Subpoena constitutes a First Amendment retaliatory action in violation of Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution and Article I of the California Constitution.

88.    Declare that Defendant Bonta's Investigative Subpoena violates Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution and Article I of the California Constitution.

89.    Enjoin Defendant Bonta, his officers, agents, servants, and employees from initiating any action to enforce the Investigative Subpoena or further investigating Plaintiff in violation of its constitutional rights.

90.    Award Plaintiff its costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. section 1988, and any other applicable law.

91.    Grant Plaintiff any and all other relief as the Court deems just and proper.


Dated: May 24, 2024                    Respectfully submitted,

                                       */s/ Kwaku A. Akowuah*

                                       Kwaku A. Akowuah (D.C. Bar No. 992575)
                                       Anna F. Boardman (D.C. Bar No. 90015086)
                                       (*pro hac vice* forthcoming)
                                       SIDLEY AUSTIN LLP
                                       1501 K Street NW
                                       Washington, D.C. 20005
                                       Telephone: +1 202 736-8000
                                       kakowuah@sidley.com
                                       aboardman@sidley.com

                                       David L. Anderson (CA Bar No. 149604)
                                       (*pro hac vice* forthcoming)
                                       Sheila A.G. Armbrust (CA Bar No. 265998)
                                       (*pro hac vice* forthcoming)
                                       David Goldenberg (D.C. Bar No. 1602274)
                                       (*pro hac vice* forthcoming)

SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
dlanderson@sidley.com
sarmbrust@sidley.com
dgoldenberg@sidley.com

*Counsel for Plaintiff American Chemistry Council, Inc.*