**Exhibit A**

| | |
|---|---|
| **ROB BONTA**<br>*Attorney General* | **State of California**<br>**DEPARTMENT OF JUSTICE** |

600 West Broadway, 18th FLOOR
San Diego, CA 92101

Telephone:  (619) 321-5908
Facsimile:  (619) 645-2271
E-Mail:  Katherine.schoon@doj.ca.gov

May 3, 2024

Sheila Armbrust
Sidley Austin, LLP
555 California Street, Suite 2000
San Francisco, California  94104

*Via E-Mail* (sarmbrust@sidley.com)

**RE: American Chemistry Council: Petition to Enforce Investigative Subpoena**

Dear Ms. Armbrust,

I write concerning the Attorney General's investigative subpoena ("Subpoena") served on your client, American Chemistry Council (ACC), on December 6, 2023, specifically regarding ACC's asserted privilege claims. In short, ACC's privilege claims lack merit, and we request that ACC promptly produce the documents listed on the privilege log responsive to the Subpoena by May 17, 2024.

On March 15, 2024, ACC provided a 50-page privilege log, in which ACC lists 550 documents (of unknown length) withheld from production in response to the Subpoena based on "associational, petitioning and free speech privileges of the United States and California Constitutions." The privilege log describes the documents as either "confidential communication resulting from communications with member" or "confidential communication with member." All 550 log entries include the same date "range" from January 1, 2021 to December 6, 2023. Although the identity of ACC employees is indicated, the names and or emails of the "members" involved are not included and instead are listed as "[redacted member representative(s)]." In sum, the privilege log gives no hint as to what the documents concern, or why the privilege would apply to these documents, other than that they involved conversations with members.

First, the sparse information provided by ACC in the privilege log is insufficient as a matter of law. "The purpose of a 'privilege log' is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production. [Citation.] The purpose of providing a specific factual description of documents is to permit a judicial evaluation of the claim of privilege." (*Catalina Island Yacht Club v. Superior Court* (2015) 242 Cal.App.4th 1116, 1125 [195 Cal.Rptr.3d 694, 700].) ACC has not provided a single correspondence with a single member, nor has ACC identified any member or representative of any member. ACC's position appears to be that all correspondence with all members concerning any issue is confidential. This proposition is not supported by the law.

Even assuming a legally adequate privilege log, ACC's privilege claims fail. The First Amendment provides, in relevant part: "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The associational privilege, which is grounded in the First Amendment, recognizes that the compelled disclosure of sensitive information can deter free association and thus violate the First Amendment. Notably, the privilege only applies to speech that is *actually protected* by the First Amendment. (*Americans for Prosperity Found. v. Bonta* (2021) 594 U.S. ___ [141 S.Ct. 2373, 2384].)

ACC has not shown any infringement on their First Amendment rights flowing from the Attorney General's demand for documents. In order to claim First Amendment protections, the claimant must make a prima facie showing that "requires appellants to demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of, the members' associational rights." (*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988).) The First Amendment may or may not protect a Club's membership list. "The state may overcome that right [associational privilege] if disclosure is both justified by a compelling state interest and is the least intrusive method to satisfy that interest." (*Pacific-Union Club v. Superior Court* (1991) 232 Cal.App.3d 60, 78 [283 Cal.Rptr. 287, 297].)

ACC has failed to make a prima facie showing of the consequences enumerated in *Brock*. (*Brock v. Loc , supra,* 860 F.2d at p. 350.) ACC's response to the subpoena did not include any specifics to support a prima facie showing, nor did any of the cover letters accompanying the rolling document production that extended over three months. The production itself was dismal, consisting of only 194 pages, almost entirely publicly available information, as well as Zoom meeting calendar requests.

In this case, the Subpoena requests communications and documents related to the funding, proposal, planning, execution, and follow-up of the Environmental Claims Study (Study) submitted by ACC to the Federal Trade Commission (FTC) for the purpose of modifying the Green Guides. The ACC touts that "Advanced Recycling is Recycling, 88% of Americans Say in Survey." ACC provided the Study's findings and attached "survey data" in comments made to the FTC in an attempt to sway the FTC's decision-making as to the definition of "recycling." The ACC, in this way, has put the Study front and center as a fact and potentially as a defense; therefore, the Study itself, its credibility, purpose, and funding, are all at issue. It appears this Study, formulated between a partnership of members and ACC, demonstrates the plastic industry's continued attempts to fraudulently sway the government and public into believing that they are creating solutions to the plastics waste and pollution crisis, while in reality, exacerbating the crisis. Correspondence of this nature would not be protected by the First Amendment. "Untruthful speech, commercial or otherwise, has never been protected for its own sake." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 953 [119 Cal.Rptr.2d 296, 306], as modified (May 22, 2002).)

May 3, 2024
Page 3

     Based on the foregoing, we are requesting that ACC produce the responsive documents from the privilege log with an updated written response within 14 days, or by May 17, 2024, in accordance with the instructions set forth in the Subpoena. If ACC does not produce the documents, and/or continues to assert that it is entitled to withhold those documents from production based on a First Amendment-related privilege, we reserve the right to file a petition to enforce the Subpoena and utilize any other enforcement tools available to us under the law.

                                         Sincerely,

                                         *Katherine Schoon*

                                         KATHERINE SCHOON
                                         Deputy Attorney General

                    For     ROB BONTA
                             Attorney General