**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMERICAN CHEMISTRY COUNCIL, INC.,

*Plaintiff*,

v.

ROB BONTA, in his Official Capacity as
Attorney General of California,

*Defendant*.

Case No. 1:24-cv-01533-APM

HON. AMIT P. MEHTA

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMERICAN
CHEMISTRY COUNCIL, INC'S MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

i

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .............................................................................................................. 4

    A. The FTC Notice and Comment Process. ...................................................................... 5

    B. Bonta's Efforts to Obtain ACC's Documents. ............................................................ 9

        1. Bonta Serves Investigative Subpoena. ................................................................... 9

        2. ACC Produces Some Documents And Objects to Production
           of Documents And Objects to Production of Documents Protected
           by Constitutional Privileges. .................................................................................. 10

        3. Bonta Issues a Demand Letter. .............................................................................. 12

        4. ACC Files This Case, and Bonta Petitions To Enforce In
           California State Court. ............................................................................................ 13

    C. Bonta's Actions Chilled, and Continue to Chill, ACC's Speech,
       Association, and Petitioning. ........................................................................................ 15

III. LEGAL STANDARD ..................................................................................................... 16

IV. ARGUMENT ................................................................................................................... 17

    A. ACC Will Likely Prevail On The Merits. .................................................................. 17

        1. Bonta's Actions Are Prohibited Under the U.S. and California Constitutions
           Because They Constitute Retaliation. .................................................................... 17

           a. ACC's Speech and Participation in the FTC Process Was Protected Conduct. ............ 18

           b. Bonta's Actions Are Retaliatory And Sufficient to Deter
              First Amendment Activity. ............................................................................ 21

           c. Bonta Issued the Investigative Subpoena Because ACC
              Submitted Comments to the FTC ................................................................... 23

        2. Bonta Cannot Compel ACC to Produce the Documents At Issue
           Because They Are Constitutionally Privileged. ..................................................... 25

    B. Immediate Judicial Intervention Is Necessary To Protect ACC
       From Irreparable Harm. ................................................................................................ 28

    C. The Balance Of Equities And Public Interest Considerations
       Strongly Support Preliminary Relief. .......................................................................... 31

V. CONCLUSION ................................................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Fed. Election Comm'n,*
  333 F.3d 168 (D.C. Cir. 2003) ................................................................ 27

* *Ams. for Prosperity Found. v. Bonta,*
  594 U.S. 595 (2021) .................................................................... 2, 26, 27

*Aref v. Lynch,*
  833 F.3d 242 (D.C. Cir. 2016) ............................................................... 21

*Bayer Healthcare, LLC v. FDA,*
  942 F. Supp. 2d 17 (D.D.C. 2013) ......................................................... 17

*Britt v. Superior Court,*
  20 Cal. 3d 844 (1978).............................................................................. 26

* *Buckley v. Valeo,*
  424 U.S. 1 (1976) .................................................................................... 27

*Buckman Co. v. Plaintiffs' Legal Comm.,*
  531 U.S. 341 ....................................................................................... 3, 25

*In re Burlington N., Inc.,*
  822 F.2d 518 (5th Cir. 1987).................................................................. 30

*Ctr. for Nat'l Sec. Studies v. DOJ,*
  331 F.3d 918 (D.C. Cir. 2003) ............................................................... 11

*Coachella Music Festival, LLC v. Johnson,*
  No. 23-288 (RBW), 2024 WL 1485947 (D.D.C. Apr. 4, 2024) ........... 32

*Confederated Tribes of Chehalis Reservation v. Mnuchin,*
  No. 20-cv-01002, 2020 WL 1984297 (D.D.C. Apr. 27, 2020)............... 17

*Constantine v. Rectors & Visitors of George Mason Univ.,*
  411 F.3d 474 (4th Cir. 2005)............................................................ 22, 23

*Cooksey v. Futrell,*
  721 F.3d 226 (4th Cir. 2013).................................................................. 21

*Counterman v. Colorado,*
  143 S. Ct. 2106 (2023) ...................................................................... 18-19

*Crawford-El v. Britton*,
   93 F.3d 813 (D.C. Cir. 1996) ............................................................. 18

*Cuviello v. City of Stockton*,
   No. CIV. S-07-1625, 2008 WL 4283260 (E.D. Cal. Sept. 16, 2008) ................................... 28

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................. 16, 17

* *Fed. Election Comm'n v. Machinists Non-Partisan Political League*,
   655 F.2d 380 (D.C. Cir. 1981) ............................................................. 27

*Fed. Trade Comm'n v. Am. Tobacco Co.*,
   264 U.S. 298 (1924) ............................................................. 28

*People ex rel. Gallo v. Acuna*,
   14 Cal. 4th 1090 (1997) ............................................................. 25

* *Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ............................................................. 2-3, 19

*Hartley v. Wilfert*,
   918 F. Supp. 2d 45 (D.D.C. 2013) ............................................................. 22

* *Hartman v. Moore*,
   547 U.S. 250 (2006) ............................................................. 17-18

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021) ............................................................. 19, 20

*Holzemer v. City of Memphis*,
   621 F.3d 512 (6th Cir. 2010) ............................................................. 18

*Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*,
   41 F.4th 564 (D.C. Cir.), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022) ................................... 31

*Ivy Sports Med., LLC v. Burwell*,
   767 F.3d 81 (D.C. Cir. 2014) ............................................................. 29, 31

*Jones v. D.C.*,
   177 F. Supp. 3d 542 (D.D.C. 2016) ............................................................. 30

*Karem v. Trump*,
   960 F.3d 656 (D.C. Cir. 2020) ............................................................. 31

*Klayman v. Obama*,
   142 F. Supp. 3d 172 (D.D.C. 2015) ............................................................. 31

iii

*Lewis v. McTavish*,
673 F. Supp. 608 (D.D.C. 1987) ................................................................ 19

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
838 F.2d 1287 (D.C. Cir. 1988) ............................................................... 19

*M.G.U. v. Nielsen*,
316 F. Supp. 3d 518 (D.D.C. 2018) .......................................................... 17

*Major League Baseball v. Crist*,
331 F.3d 1177 (11th Cir. 2003) ............................................................... 28

*Martinez v. City of Fresno*,
No. 1:22-cv-00307, 2022 WL 1645549 (E.D. Cal. May 24, 2022) ...................... 29

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) .................................................................. 19

\* *Media Matters for Am. v. Paxton*,
No. 24-CV-147, 2024 WL 1773197 (D.D.C. Apr. 12, 2024) .......................... *passim*

*Merrill v. Navegar, Inc.*,
26 Cal. 4th 465 (2001) ......................................................................... 24

*N.C. Growers' Ass'n, Inc. v. United Farm Workers*,
702 F.3d 755 (4th Cir. 2012) ................................................................. 31

\* *NAACP v. Alabama*,
357 U.S. 449 (1958) ............................................................................ 27

\* *Nat'l Rifle Ass'n of Am. v. Vullo*,
No. 22–842, slip op. (U.S. May 30, 2024) ...................................... 2, 21, 22, 25

*Newrez, LLC v. Francis*,
No. 22-cv-00561, 2023 WL 4223749 (D.D.C. June 26, 2023) ........................ 32

*Okla. Press Publ'g Co. v. Walling*,
327 U.S. 186 (1946) ............................................................................ 25

*Pebble Ltd. P'ship v. EPA*,
310 F.R.D. 575 (D. Alaska 2015) .......................................................... 25-26

*People ex rel. Gallo v. Acuna*,
14 Cal. 4th 1090 (1997) ........................................................................ 24

\* *Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) .............................................................. *passim*

iv

*Playboy Enters., Inc. v. Meese*,
  639 F. Supp. 581 (D.D.C. 1986) ................................................................. 21

\* *Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
  831 F.3d 500 (D.C. Cir. 2016) ................................................. 28, 29, 31

*Quaker Action Grp. v. Hickel*,
  421 F.2d 1111 (D.C. Cir. 1969) ................................................................. 28

*Roth v. United States*,
  354 U.S. 476 (1957) ...................................................................................... 1

\* *Snyder v. Phelps*,
  562 U.S. 443 (2011) .................................................................................... 18

\* *Stanford v. Tex.*,
  379 U.S. 476 (1965) .............................................................................. 26, 28

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) ..................................................................... 31

*United States v. Alvarez*,
  567 U.S. 709 (2012) .................................................................................... 18

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) .................................................................................... 17

\* *W.V. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*,
  553 F.3d 292 (4th Cir. 2009) ..................................................................... 29

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ................................................................... 21

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................. 16, 17

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978) .................................................................................... 26

**Constitution and Regulations**

U.S. Const. amend. I ....................................................................................... 18

Ca. Const. Art. I, Section 2 ............................................................................ 18

Ca. Const. Art. I, Section 3 ............................................................................ 18

15 U.S.C. § 45 .................................................................................................. 5

16 C.F.R. § 260.12(b)(2) .................................................................................. 5

16 C.F.R. § 260.13(c) ........................................................................................... 5

87 Fed. Reg. 77766 .......................................................................................... 5, 6

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................ 10

Bus. & Prof. Code §§ 17500 *et seq.* .................................................................... 10

**Scholarly Articles**

Erickson Evanson, *Shaping a Federal Strategy for Chemical Recycling: Moving
Toward Sensible Applications of Emerging Technologies in US Plastic Waste
Management*, 43 Envtl. Progress & Sustainable Energy (2024) ............................... 6

**Other Authorities**

*Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, ACC (Apr. 20,
2023), https://www.americanchemistry.com/chemistry-in-america/news-
trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-
survey ................................................................................................................... 8

*Advanced Recycling, Remaking Plastics to Meet Sustainability Goals*, Plastic Makers
(Oct. 2023), https://plasticmakers.org/wp-content/uploads/2022/07/Advanced-
Recycling-Explainer-032023.pdf ........................................................................... 6

Am. Chem. Council, *Mission*, https://www.americanchemistry.com/ (last visited June
12, 2024)............................................................................................................... 4

*Attorney General Bonta Announces Investigation into Fossil Fuel and Petro Chemical
Industries for Role in Causing Global Plastics Pollution Crisis*, Cal. OAG (Apr.
28, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-
announces-investigation-fossil-fuel-and-petrochemical ............................................ 9

*Attorney General Bonta Petitions Court to Compel Plastics Indus. Ass'n and Am.
Chem. Counsel to Fully Comply with Outstanding Investigative Subpoenas*, OAG
(May 28, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-
petitions-court-compel-plastics-industry-association-and ........................... 15, 23, 24

R. Bonta, et al., *Green Guides Review* (Apr. 24, 2023),
https://downloads.regulations.gov/FTC-2022-0077-0987/attachment_2.pdf .......... 8

*FTC Seek Comments on Green Guides Review, Matter No. P954501*, Regulations.gov,
https://www.regulations.gov/docket/FTC-2022-0077 (last visited June 12, 2024) ................. 9

*Green Guides*, FTC, https://www.ftc.gov/news-events/topics/truth-advertising/green-
guides (last visited June 12, 2024) ......................................................................... 5

Guides for the Use of Envtl. Mktg. Claims, 87 Fed. Reg. 77766 (proposed Dec. 20,
2022), www.govinfo.gov/content/pkg/FR-2022-12-20/pdf/2022-27558.pdf .......... 5

*Talking Trash at the FTC: Recyclable Claims and the Green Guides*, FTC (May 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf ........................................................ 8

Joseph Winters, *California Opens Investigation Into 'Decades-Long Plastics Deception Campaign'*, Grist (Apr. 29, 2022), https://grist.org/accountability/california-launches-investigation-decades-long-plastics-deception-campaign ..................................................................... 9

I.     INTRODUCTION

Plaintiff the American Chemistry Council, Inc. ("ACC") and Defendant California Attorney General Rob Bonta have opposing opinions on a matter of public policy: how should the Federal Trade Commission define "recyclable" in the context of environmental advertising and labeling claims? Both ACC and Bonta have participated in the FTC's public notice-and-comment process and sought to inform the FTC's viewpoint on that debated policy question. ACC has advocated for the position that the FTC should adopt the view that products that can be recycled through "advanced recycling" should be able to be marketed as recyclable. Bonta disagrees. The FTC is still considering the issue.

Rather than rest on the persuasiveness of his advocacy, Bonta has chosen to wield the power he holds as California's top prosecutor to harass and retaliate against those on the other side of the policy divide. In particular, Bonta has issued—and is trying to enforce—a subpoena demanding that ACC turn over member identities, communications, and related documents that formed the basis of ACC's participation in the FTC's notice-and-comment process and adoption of a particular approach and viewpoint. The only basis Bonta has provided for the subpoena is the content of ACC's comments to the FTC and Bonta's disagreement with the viewpoint expressed.

Recent decisions from this Court and the Supreme Court confirm that the First Amendment makes this kind of retaliatory exercise of prosecutorial power off limits—and that a preliminary injunction is therefore necessary to protect ACC's constitutional rights. Private parties must be able to speak "without … fear of subsequent punishment" from powerful government officials who have a different view of optimal policy. *Roth v. United States*, 354 U.S. 476, 488 (1957) (quoting *Thornhill v. Ala.*, 310 U.S. 88, 101–02 (1940)). Just last month the Supreme Court reaffirmed that "the First Amendment prohibits government officials from wielding their power

1

selectively to punish or suppress speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, No. 22–842, slip op. at 19 (U.S. May 30, 2024). Bonta "can share h[is] views freely and criticize particular beliefs, and []he can do so forcefully in the hopes of persuading others to follow h[is] lead." *Id.* at 8-9. He can "rely on the merits and force of h[is] ideas, the strength of h[is] convictions, and h[is] ability to inspire others." *Id.* at 9. "What []he cannot do, however, is use the power of the State to punish or suppress disfavored expression." *Id.* Reasonable minds can differ on the right outcome to the public policy question the FTC is addressing. But, as this Court recently held when issuing a preliminary injunction under analogous circumstances, state prosecutors may not wield their exceptional power to punish and silence views with which they disagree. *See Media Matters for Am. v. Paxton*, No. 24-CV-147, 2024 WL 1773197, at *19 (D.D.C. Apr. 12, 2024).

ACC also has a second, independent claim based on the status of the documents Bonta is seeking. More specifically, and as Bonta does not appear to dispute, they are of a type typically privileged under the First Amendment. *See*, *e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1154-55 (9th Cir. 2010); *Ams. for Prosperity Found. v. Bonta,* 594 U.S. 595, 606 (2021).

Bonta's response lacks merit. He argues that ACC has no right to constitutional protections because, in his view, advanced recycling is not an "economically viable solution" to plastic waste—rendering ACC's advocacy "false." Unsurprisingly, ACC's members—including those that are currently commercializing advanced recycling[1]—have a very different viewpoint. And they have a fundamental constitutional right to hold and express that viewpoint, for "[u]nder the

---

[1] *See* Mot. To Partially Seal Ex. I at ¶ 4. To minimize confusion or duplicative filings, ACC's exhibits are sequentially numbered beginning with attachments to the complaint (Exs. A–D), followed by attachments to this motion (Exs. E–H), followed by attachments to ACC's accompanying Motion to Partially Seal (Exs. I–K).

First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974).

Bonta's position is also circular. On one hand, he contends that ACC's communications are unprivileged because he *knows* they are "false." On the other hand, he contends that he needs to pierce ACC's First Amendment privilege and use the subpoena *in order to determine if ACC's statement was actually false*. That is not just a logic problem—it underscores why Bonta's position disserves the First Amendment and would pose a deep threat to comment processes across the federal government. If state and local prosecutors could invade the First Amendment privilege and *compel* an association to turn over its privileged documents to discern whether statements made to federal agencies in the course of policy advocacy were "false," that new reality would deter the free flow of information to those agencies. Anyone offering a viewpoint that a state agency might deem "false" could wind up the target of an open-ended, expensive investigation. And in these highly polarized times, it would not be surprising to see competing investigations of "falsity" unfold, with advocates on both sides hit with subpoenas by different prosecutors with different political viewpoints.

There is a far better way forward—one that is fully consistent with the First Amendment and the traditional functioning of federal agency processes. Bonta is free to share his criticisms of ACC's advocacy with the FTC. The FTC can then decide for itself whether Bonta's criticisms (which ACC believes are misguided) affect the weight that ACC's comments should receive in the FTC's deliberations. That approach would produce more speech, rather than less. And it would appropriately reject Bonta's groundless appointment of himself as guardian of the FTC's processes. *Cf. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) ("Policing fraud

against federal agencies is hardly 'a field which the States have traditionally occupied …'") (citation omitted).

Bonta raced to California state court and filed a petition to enforce his subpoena four days after ACC filed this suit. In that suit, he made clear that the subpoena targets ACC's speech and petitioning activity. He also characterized this litigation as a "legally unjustified lawsuit in the District of Columbia" that aims to "thwart the authority of the Courts in the state of California." ACC is concerned that Bonta aims to evade federal jurisdiction over ACC's federal claims as to Bonta's unlawful actions in and directed at the District of Columbia. Urgent action by this Court is necessary to protect ACC's constitutional rights, prevent the chill on ACC's speech, association, and petitioning activity that would result from Bonta accessing ACC's protected documents, and end Bonta's retaliatory campaign.

## II.    BACKGROUND

ACC is a Washington, D.C.-based trade association that "advocate[s] for the people, policy, and products of chemistry that make the United States the global leader in innovation and manufacturing."[2] It represents the interests of nearly 200 companies engaged in the business of chemistry, including companies that provide services related to advanced recycling.[3] This case concerns ACC's representation of its members in connection with a specific federal agency request for public comment, and the defendant's efforts to punish ACC for that public advocacy and eviscerate the associational privilege of ACC and its members.

---

[2] Am. Chem. Council, *Mission*, https://www.americanchemistry.com/ (last visited June 12, 2024).
[3] *See* Mot. To Partially Seal Ex. J at ¶ 3; Ex. F at ¶ 2.

4

### A.  The FTC Notice and Comment Process.

The FTC is charged with enforcing Section 5 of the Federal Trade Commission Act, which bans "unfair or deceptive acts or practices in or affecting commerce."[4] To assist companies in determining what may be deceptive, the FTC issued a guidance document laying out certain FTC positions concerning marketing claims about environmental impacts. This agency document, known as the "Green Guides," is non-binding and not independently enforceable, but is intended "to help marketers avoid making environmental claims that mislead consumers."[5]

In December 2022, the FTC published in the Federal Register a request for public comment regarding a revision of the Green Guides.[6] As part of this revision, the FTC is considering what qualifies as "recyclable" and "recycled" in the minds of consumers. Under the existing Green Guides, whether claims that products are "recyclable" are misleading depends in part on whether facilities that recycle the item are actually available to "consumers or communities where the item is sold." 16 C.F.R. § 260.12(b)(2). The Green Guides also address claims that a product is "recycled." Unless an entire product is made from recycled materials, the FTC says that calling it recycled is misleading unless information "about the amount or percentage, by weight, of recycled content in the finished product or package" is provided. 16 C.F.R. § 260.13(c). The Green Guides "suggest marketers can substantiate 'recycled content' claims using per-product or annual weighted average calculation methods." 87 Fed. Reg. at 77769.

---

[4] Federal Trade Commission Act § 5, 15 U.S.C. § 45.
[5] *Green Guides*, FTC, https://www.ftc.gov/news-events/topics/truth-advertising/green-guides (last visited June 12, 2024).
[6] Guides for the Use of Envtl. Mktg. Claims, 87 Fed. Reg. 77766 (proposed Dec. 20, 2022) (to be codified at 16 C.F.R. § 260), www.govinfo.gov/content/pkg/FR-2022-12-20/pdf/2022-27558.pdf.

The FTC requested evidence concerning "consumer perception of environmental claims" and "consumer understanding of the term 'recyclable.'"[7] Specifically, the FTC solicited comments on whether the Green Guides should "be revised to include guidance related to unqualified 'recyclable' claims for items collected by recycling programs … but not ultimately recycled …?" It also asked if the Green Guides should "be revised to provide guidance on making 'recycled content' claims based on alternative method(s), e.g., mass balance calculations, certificate (i.e., credit or tagging) systems, or other methods? If so, why, and what guidance should be provided? If not, why not?"[8] The FTC asked: "What evidence supports your proposed revision?"[9]

One innovation relevant to the FTC's questions is known as "advanced recycling."[10] Advanced recycling consists of a set of technologies that can break down "solid material into liquid or gaseous raw materials that can be used to remake plastics or products for other industries."[11] In doing so, advanced recycling can divert plastics that are incompatible with traditional, mechanical recycling from the landfill into a circular plastic economy.[12] While mechanical recycling is limited in the types of plastics it can process, advanced recycling can accept a wider variety of plastics, even many mixed, contaminated, and flexible products. The end result from advanced recycling is

---

[7] 87 Fed. Reg. at 77767-68.
[8] *Id*. at 77769.
[9] *Id.*
[10] *See id.*
[11] *Advanced Recycling, Remaking Plastics to Meet Sustainability Goals*, Plastic Makers (Oct. 2023), https://plasticmakers.org/wp-content/uploads/2022/07/Advanced-Recycling-Explainer-032023.pdf.
[12] Erickson Evanson, *Shaping a Federal Strategy for Chemical Recycling: Moving Toward Sensible Applications of Emerging Technologies in US Plastic Waste Management*, 43 Envtl. Progress & Sustainable Energy, 1 (2024).

a more purified plastic that is largely interchangeable with virgin plastics and can be used for a wider variety of purposes than is possible with mechanical recycling.[13]

At the urging of its members, ACC chose to participate in the FTC's process. A coalition of ACC members worked with ACC in developing ACC's comments.[14] To respond to the FTC's call for "evidence" on "consumer perception," ACC commissioned a consumer survey.[15] ACC commissioned a national survey of consumer perceptions and labelling preferences (the "Environmental Claims Survey").[16] Heart+Mind Strategies conducted this survey from January through February 2023, analyzing more than 3,000 survey responses.[17] To ensure that a variety of demographic groups were represented, the survey relied on U.S. Census data to establish metrics for age, gender, region education, and race or ethnicity, and addressed confidence level and margin of error, noting that sample surveys are subject to multiple sources of error including question wording or placement.[18]

The survey's results were powerful. It concluded that 88% of Americans consider advanced recycling to be recycling and that 85% of consumers believe if a new plastic product is made from plastics processed through advanced recycling, the product could have a label saying it contained "recycled content."[19]

On April 20, 2023, ACC provided comments to the FTC, sharing the consumer perception data gathered in the survey.[20] It also published a press release about its comments to the FTC and

---

[13] *See* Mot. To Partially Seal Ex. I at ¶ 12.
[14] *See* Ex. F at ¶ 9.
[15] *Id.* at ¶ 9–10.
[16] *Id.*
[17] Compl. Ex. D. at 2.
[18] *Id.*
[19] *Id.* at 3–4.
[20] Compl. Ex. B.

the results of the Environmental Claims Survey, stating "Advanced Recycling Is Recycling, 88% of Americans Say in Survey."[21] ACC provided the full research report prepared by Heart+Mind Strategies to the FTC, including "the full interview and question wordings,"[22] as well as ACC's advocacy based on the survey's findings.

Bonta also submitted comments to the FTC, taking an opposing position. Without citing any source, or any consumer survey data, Bonta offered his view that "advanced recycling … should not qualify as recycling" unless these processes meet certain stringent criteria.[23] He argued:

> advanced, chemical, or molecular recycling, using methods such as gasification, pyrolysis, chemical depolymerization, solvent-based processing, or other non-mechanical means, should not qualify as a recycling program unless and until those processes are proven to be as efficient as mechanical recycling in yielding a useable product, and are shown to have an actual environmental benefit.[24]

Bonta also proposed revising the Green Guides to "require that an item marketed as 'recyclable' is of the type that is routinely and actually recycled through a mechanical process that reconstitutes it into a new item, or into raw material used to manufacture a new item."[25]

To allow for additional input and debate, the FTC hosted a workshop on May 23, 2023 to hear from panelists and other stakeholders on topics including the definition of "recyclable" and the merits and drawbacks of advanced recycling.[26] During the workshop, representatives from

---

[21] *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, ACC (Apr. 20, 2023), https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey.
[22] Compl. Ex. D. at 2.
[23] R. Bonta, et al., *Green Guides Review* (Apr. 24, 2023), https://downloads.regulations.gov/FTC-2022-0077-0987/attachment_2.pdf.
[24] *Id.* at 31 (emphasis omitted).
[25] *Id.*
[26] *Talking Trash at the FTC: Recyclable Claims and the Green Guides*, FTC at 445-61 (May 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf.

ACC and the California Attorney General's Office advocated contrasting positions on these issues and recommended policies for the FTC to adopt. To date, more than 7,000 comments have been received by the FTC in response to its request for comments, reflecting strong public interest and divergence of opinions.[27]

### B. Bonta's Efforts to Obtain ACC's Documents.

A year before all of this, on April 28, 2022, Bonta launched a highly publicized investigation into companies he purportedly views as responsible for a "global plastics pollution crisis"—from a podium on the beach flanked by bags of plastic trash.[28] According to his accompanying press release, he planned to "target companies that have caused and exacerbated the global plastics pollution crisis, their role in perpetuating myths around recycling, and the extent to which this deception is still ongoing."[29] To date, his office has not filed litigation or charges against any company or individual as a result of this investigation.

Bonta has, however, engaged in a targeted campaign to pursue ACC documents in connection with ACC's speech to the FTC.

### 1. Bonta Serves Investigative Subpoena.

Within months of ACC's submission of comments to the FTC, on December 6, 2023, Bonta served an investigative subpoena commanding ACC to produce:

> All DOCUMENTS and COMMUNICATIONS RELATED TO the
> ENVIRONMENTAL CLAIMS STUDY, including, but not limited

---

[27] *FTC Seek Comments on Green Guides Review, Matter No. P954501*, Regulations.gov, https://www.regulations.gov/docket/FTC-2022-0077 (last visited June 12, 2024).

[28] Joseph Winters, *California Opens Investigation Into 'Decades-Long Plastics Deception Campaign'*, Grist (Apr. 29, 2022), https://grist.org/accountability/california-launches-investigation-decades-long-plastics-deception-campaign.

[29] *Attorney General Bonta Announces Investigation into Fossil Fuel and Petro Chemical Industries for Role in Causing Global Plastics Pollution Crisis*, Cal. OAG (Apr. 28, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-investigation-fossil-fuel-and-petrochemical.

> to, the proposal, planning, execution, and follow-up regarding the
> ENVIRONMENTAL CLAIMS STUDY and All DOCUMENTS
> and COMMUNICATIONS RELATED TO the funding of the
> ENVIRONMENTAL CLAIMS STUDY.[30]

The subpoena expressly targeted ACC's submission to the FTC. As Bonta's office put it, the subpoena "command[s]" ACC to turn over "communications and documents related to the funding, proposal, planning, execution, and follow-up of the Environmental Claims Study (Study) submitted by ACC to the Federal Trade Commission (FTC) for the purpose of modifying the Green Guides."[31]

The subpoena asserts that "[t]he Attorney General's Office has received information that [ACC's] promotion and marketing of recycling plastic may have resulted in legal violations."[32] But the only information Bonta's office has ever pointed to as a basis for the subpoena is ACC's participation in the FTC's notice and comment process.

### 2. ACC Produces Some Documents And Objects to Production of Documents Protected by Constitutional Privileges.

ACC objected to the subpoena because it sought documents privileged under the United States and California Constitutions.[33] ACC nevertheless undertook a good faith effort and produced documents on a rolling basis throughout early 2024.[34] Among other things, ACC produced the Environmental Claims Survey summary prepared by Heart+Mind Strategies, the

---

[30] Compl. Ex. C at 9.
[31] Compl. Ex. A at 3.
[32] Compl. Ex. C at 10. Asserted violations include "potential common law and statutory violations, such as products liability, public nuisance, and violations of the California Unfair Competition Law (Bus. & Prof. Code sections 17200 *et seq.*), California False Advertising Law (Bus. & Prof. Code sections 17500 *et seq.*), and other laws regarding environmental protection, public health, and consumer protection."
[33] Ex. G at ¶ 4.
[34] *Id.*

survey questions and responses, ACC's comments to the FTC, and communications with third parties that did not discuss member comments.[35]

Along with its final production, ACC submitted a log identifying documents withheld on the basis of U.S. and California constitutional privileges:[36] documents and communications related to ACC and its coalition of members' efforts to comment on the Green Guides. The documents contain the strategy, focus, policy perspectives, viewpoints, and preferences of ACC and its members as they engaged in petitioning the FTC.[37] They were not distributed publicly, and ACC and its members expected that the documents would remain confidential—including and especially from governmental actors engaged in adverse public advocacy on the same topics.[38]

Keeping the documents confidential as intended is essential to preserve ACC and its members' rights. For one, disclosure of the documents and communications would reveal ACC and its members' strategy and goals in connection with its petitioning activities, including lobbying, negotiating positions on legislation, coordinating with interested members of the public and managing membership.[39]

For another, disclosure of the documents would reveal the identities of the members that participated in ACC's efforts relating to its FTC comments. Although ACC's website identifies

---

[35] *Id.* at ¶ 5.

[36] *Id.* at ¶ 6.

[37] *See* Mot. To Partially Seal Ex. J at ¶¶ 6–8; Mot. To Partially Seal Ex. I at ¶¶ 13, 15–17; Ex. F at ¶¶ 22–23.

[38] *See* Mot. To Partially Seal Ex. J at ¶¶ 4–5, 7; Mot. To Partially Seal Ex. I at ¶¶ 16, 19; Mot. To Partially Seal Ex. K at ¶ 7; Ex. F at ¶¶ 5–6.

[39] Not every individual document reveals all of these things. But, taken together, they reveal these substantive aspects of ACC's and its members' decision making. *C.f. Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 928 (D.C. Cir. 2003) ("[T]he Supreme Court cautioned that 'bits and pieces' of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'") (quoting *C.I.A. v. Sims*, 471 U.S. 159, 178 (1985)). *See* Mot. To Partially Seal Ex. J at ¶¶ 6–8; Mot. To Partially Seal Ex. I at ¶¶ 13, 15–17; Ex. F at ¶¶ 22–23.

many of its members, ACC does not typically identify which members engage in specific advocacy.[40] Consistent with that practice, the identities of ACC members who supported retention of Heart+Mind Strategies to conduct the Environmental Claims Survey and who helped draft comments on the Green Guides are not public.[41] ACC's members expected that their decision to work with ACC to respond to the FTC's request for comment would not be public.[42] ACC members who offered comments on ACC's advocacy to the FTC do not want their names disclosed for fear of retaliation and intimidation.[43]

### 3. Bonta Issues a Demand Letter.

On May 3, 2024, Bonta's office sent a demand letter[44] asserting that "ACC's privilege claims lack merit."[45] Bonta acknowledged that the Environmental Claims Survey was "formulated between a partnership of members and ACC" and recognized that "[t]he associational privilege, which is grounded in the First Amendment, recognizes that the compelled disclosure of sensitive information can deter free association and thus violate the First Amendment."[46] But Bonta continued to demand that ACC turn over member communications and the identity of members who participated in ACC's comment submission. ACC had no First Amendment interest in its documents, Bonta claimed, because its speech was "untruthful," and the Environmental Claims Survey was "an attempt to sway the FTC's decision-making as to the definition of 'recycling.'"[47]

---

[40] *See* Ex. F at ¶ 5.
[41] *See* Mot. To Partially Seal Ex. J at ¶¶ 4–5, 7; Mot. To Partially Seal Ex. I at ¶¶ 16, 19; Mot. To Partially Seal Ex. K at ¶ 7; Ex. F at ¶¶ 22–23.
[42] *See* Mot. To Partially Seal Ex. J at ¶¶ 4–5, 7; Mot. To Partially Seal Ex. I at ¶ 19; Mot. To Partially Seal Ex. K at ¶ 7; Ex. F at ¶¶ 5–6.
[43] *See* Mot. To Partially Seal Ex. J at ¶¶ 7–10; Mot. To Partially Seal Ex. I at ¶¶ 19–24; Mot. To Partially Seal Ex. K at ¶¶ 8-9.
[44] Compl. Ex. A.
[45] *Id.* at 2.
[46] *Id.* at 3.
[47] *Id.*

According to Bonta, the survey purportedly—and for unexplained reasons—demonstrated "attempts to fraudulently sway the government and public into believing that [companies] are creating solutions to the plastics waste and pollution crisis, while in reality, exacerbating the crisis."[48] By submitting its comments to the FTC, Bonta asserted, ACC "put the [Environmental Claims Survey] front and center as a fact and potentially as a defense"—a defense to what, exactly, was not specified.[49]

ACC met and conferred with Bonta's office.[50] That office continued to press ACC to provide the names and identities of ACC's members and detail about the content of the withheld documents, such as email subject lines.[51]

### 4. ACC Files This Case, and Bonta Petitions To Enforce In California State Court.

After Bonta's demand letter and the subsequent meet and confer made clear that Bonta would not respect ACC's constitutional privileges, ACC filed its complaint on May 24, 2024. ACC is seeking a declaration that Bonta's subpoena violates ACC's First, Fourth, and Fourteenth Amendment rights, along with similar rights in the California Constitution, and an injunction to prevent Bonta from taking further action to enforce the subpoena.

Bonta swiftly responded, but not in this Court. Instead, four days later, he filed a petition to enforce the subpoena in the Superior Court of the State of California. The petition accuses ACC, its members, and others of perpetuating a "deceptive recycling campaign," and asserts that Bonta "need not merely stand by as the plastics industry and ACC … intentionally and knowingly make untruthful and fraudulent statements to the public, the government, and the legislature in order to

---

[48] *Id.*
[49] *Id.*
[50] Ex. G at ¶ 7.
[51] *Id.*

increase their profits."[52] Bonta appears to concede that, absent purported fraud, the types of documents he seeks would be protected by ACC's constitutional rights.[53] But Bonta has supposedly determined that ACC has engaged in "potentially unlawful and fraudulent speech," which "is not protected by the First Amendment."[54]

Bonta's lawsuit identifies no evidence of falsity or fraud. He points to what he perceives as "leading and misleading" questions in ACC's Environmental Claims Survey—questions and data ACC provided in their entirety to the FTC.[55] Otherwise, he reasserts the policy position he took in his comments to the FTC. He asserts that "[s]tudies have shown that chemical recycling (just like mechanical recycling) is not an economically viable solution to the plastic waste and pollution crisis."[56] And "[s]tudies have also shown that the same problems that have plagued traditional recycling—sorting and cleaning highly contaminated plastic waste and creating end products that can compete on price and quality with virgin plastics—also prevents chemical recycling from scaling up … meaningfully."[57] In short, Bonta does not believe that advanced recycling is "viable" or effective.

According to Bonta, opposing views are not only wrong, they are fraudulent and actually provide *a justification* for him to demand otherwise privileged information from advocates of those views. Bonta admits as much when, despite his predetermination that ACC's speech was

---

[52] Petition to Enforce, *Bonta v. The Am. Chem. Council*, No. 24-cv-010509 (Cal. Super. Ct. May, 28, 2024), Ex. E.
[53] *See id.* at ¶¶ 45–46.
[54] *Id.* at ¶ 46.
[55] *Id.* at ¶ 32.
[56] *Id.* at ¶ 23.
[57] *Id.* at ¶¶ 23-24.

fraudulent, he asserts that the point of the subpoena is actually "to determine if the information being promulgated is truthful."[58]

Along with filing his petition, Bonta issued another press release that sounds more like a political advertisement than a report on litigation. Bonta asserts that ACC's documents "are relevant to the plastics industry's decades-long campaign of deception surrounding the recyclability of plastic."[59] Bonta's subpoena, he claims, is part of his "first-of-its-kind investigation into fossil fuel and petrochemical industries for their role in causing the plastics pollution crisis."[60] "Enough is enough," the press release states. "What are they trying to hide?"[61]

### C. Bonta's Actions Chilled, and Continue to Chill, ACC's Speech, Association, and Petitioning.

Bonta's attempts to force ACC to turn over member identities and communications have chilled ACC's speech, associational, and petitioning activities.[62] For example, in a meeting between ACC and the FTC staff on September 28, 2023, the FTC indicated that it would appreciate additional empirical information in connection with revising the Green Guides.[63] ACC considered commissioning a second survey, similar to the Environmental Claims Survey, to provide additional data to the FTC.[64] ACC has decided not to pursue such a survey at this time because ACC fears further retaliation from Bonta.[65]

---

[58] *Id.* at ¶ 43.
[59] *Attorney General Bonta Petitions Court to Compel Plastics Indus. Ass'n and Am. Chem. Counsel to Fully Comply with Outstanding Investigative Subpoenas*, OAG (May 28, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-petitions-court-compel-plastics-industry-association-and.
[60] *Id.*
[61] *Id.*
[62] *See* Ex. F at ¶¶ 16–21, 23.
[63] *Id.* at ¶ 12.
[64] *Id.* at ¶ 16.
[65] *Id.*

ACC has also chosen not to engage on certain policy issues important to its members' California interests in the way it otherwise would, for fear that its advocacy strategies and communications on those topics may be subject to additional singling out and retaliation from Bonta.[66] ACC and its members are fearful that Bonta would further target ACC.[67]

ACC's members are also hesitant to send written communications to ACC, and have at times chosen not to engage in such communications for fear that Bonta will demand to see such communications as part of his wide-ranging investigation.[68] Written communication is a vital method ACC uses to work with its members and to develop public advocacy positions and strategies.[69] Bonta's efforts have diminished ACC's ability to fully associate with its members, exercise its freedom of speech, and petition the government.[70]

### III.   LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts in this jurisdiction evaluate the four preliminary injunction factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009);

---

[66] *Id.* at ¶¶ 18–21.
[67] *Id.* at ¶ 19; Mot. To Partially Seal Ex. I at ¶¶ 16, 21–23; Mot. To Partially Seal Ex. J at ¶¶ 9–10; Mot. To Partially Seal Ex. K at ¶¶ 9-10.
[68] *See* Mot. To Partially Seal Ex. I at ¶ 25; Mot. To Partially Seal Ex. J at ¶ 9; Mot. To Partially Seal Ex. K at ¶ 10; Ex. F at ¶¶ 18–21.
[69] Ex. F at ¶ 7.
[70] *Id.* at ¶ 16–21.

*see also Confederated Tribes of Chehalis Reservation v. Mnuchin*, No. 20-cv-01002, 2020 WL 1984297, at *6-7 (D.D.C. Apr. 27, 2020). The weighing of the four factors is within the district court's discretion. *See Davis*, 571 F.3d at 1291.

This same standard "also applies to temporary restraining orders." *Bayer Healthcare, LLC v. FDA*, 942 F. Supp. 2d 17, 23 (D.D.C. 2013). That said, "[t]he purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has an opportunity to pass on the merits of the demand for a preliminary injunction," so while the Court must still consider the traditional four-part test, "the short duration of such an order and the imminence of the harm may justify the grant of a temporary restraining order to preserve the status quo." *M.G.U. v. Nielsen*, 316 F. Supp. 3d 518, 520 (D.D.C. 2018) (citations omitted).[71]

## IV.    ARGUMENT

### A.  ACC Will Likely Prevail On The Merits.

At this preliminary stage, ACC "is not required to prove [its] case in full." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). ACC need only show a "likelihood of success." *See Winter*, 555 U.S. at 32. In addition, ACC need only show a likelihood of success on *one* claim, *see M.G.U.*, 316 F. Supp. 3d at 521, but it is likely to succeed on both.

#### 1.  Bonta's Actions Are Prohibited Under the U.S. and California Constitutions Because They Constitute Retaliation.

"[T]he law is settled that … the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) "Official reprisal for protected speech 'offends the Constitution [because] it

---

[71] ACC is willing to withdraw the TRO request in exchange for Bonta's stipulation not to enforce the subpoena until the Court rules on the preliminary injunction motion. In light of Bonta's decision to rush to California court, and the parties' dealings to date, however, it is ACC's understanding that there is an urgent need for relief from this Court.

threatens to inhibit exercise of the protected right.'" *Id.* at 256 (quoting *Crawford–El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). First Amendment retaliation claims are actionable because retaliation "may tend to chill individuals' exercise of constitutional rights.'" *Crawford-El v. Britton*, 93 F.3d 813, 846 (D.C. Cir. 1996) (Henderson, J., concurring) (quoting *ACLU of Md., Inc. v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993)).

To prevail on a claim of retaliation for First Amendment activity, ACC "must show that (1) [it] engaged in conduct protected under the First Amendment; (2) 'the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action.'" *Media Matters for Am.*, 2024 WL 1773197, at *17 (quoting *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)). ACC is likely to show each factor.

### a. ACC's Speech and Participation in the FTC Process Was Protected Conduct.

ACC's speech and petitioning activity is protected by the First Amendment. "Speech on matters of public concern"—like the agency process at issue—"is at the heart of the First Amendment's protection." *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (internal quotation marks omitted); *see* U.S. Const. amend. I. Petitioning the government is also indisputably protected by the First Amendment. *See id.; Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010). The California constitution protects speech and petitioning as well. *See* Ca. Const. Art. I, Section 2 & Section 3.

Bonta has asserted that ACC's speech nonetheless was not protected because it was "false." But even if ACC's speech was false, which it was not, there is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 719 (2012) (plurality op.); *see also*, *e.g.*, *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) ("The First

18

Amendment, we have concluded, 'requires that we protect some falsehood in order to protect speech that matters." (quoting *Gertz*, 418 U.S. at 341)). In any event, while ACC disagrees with Bonta's characterizations, everything that Bonta points to is merely the subject of a public debate on which his viewpoint differs from ACC's. He first objects to the format of the Environmental Claims Survey, asserting that the options survey participants could select from in response to one question were "confusing and overlapping."[72] And he says it was misleading for ACC to flag that only 1% of respondents selected a response indicating that they believed "recyclable" means '"likely to be recycled' based on access to a recycling facility" without mentioning that 31% of respondents selected a response indicating that "recyclable" meant "reusable/able to reuse/can be reused/can be used again."[73] As courts have recognized, however, nothing about opinions like ACC's are "false." *See Gertz*, 418 U.S. at 339; *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988); *Lewis v. McTavish*, 673 F. Supp. 608, 611 (D.D.C. 1987).

For one thing, ACC provided the FTC with the data underlying its conclusions and has provided the same data to Bonta. An "opinion based on disclosed facts cannot be false" because when a speaker "discloses the underlying facts, readers can easily judge the facts for themselves." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357, 360 (3d Cir. 2020); *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159 (9th Cir. 2021) ("When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented") (citation omitted). If the FTC thinks survey participants may have been confused by the survey format, it can certainly take that into account in weighing the survey. And indeed, Bonta is free to alert the FTC to his concerns. Bonta's assertion that flagging

---

[72] Ex. E at ¶¶ 33-35.
[73] *Id.*

that 1% of respondents selected "likely to be recycled based on access" to a facility without flagging that 31% of respondents selected "can be used again" is misleading is inexplicable. Those two phrases mean distinctly different things. And ACC's emphasis of one data point in its advocacy, while providing the complete data set, is not "false." The FTC can "accept or reject [ACC's] opinion based on [its] own independent evaluation of the facts." *Herring*, 8 F.4th at 1160 (citation omitted). Moreover, the fact that Bonta apparently thinks ACC should have emphasized—that some respondents selected "can be used again"—*supports* rather than undermines ACC's view that "recyclable" should be defined to include items that "can be recycled," not just items that are likely to be recycled if placed in a recycling bin.

Bonta next objects to the description of advanced recycling used in the survey. Bonta thinks "advanced recycling suffers from many flaws" that were not included in the survey's description.[74] ACC, unsurprisingly, has more positive views of the process and its benefits. But this disagreement doesn't matter. It certainly does not make any ACC statement "false." The description used in the survey was in the survey results—that's how Bonta knows what the description was. And more importantly, ACC provided the survey description to the FTC. If the description of advanced recycling does not comport with the FTC's understanding of the term, the FTC does not have to agree with ACC's interpretation of the survey results. At bottom, the fair meaning of "recyclable" is precisely what is at issue in the FTC process. If there was only one correct viewpoint, the FTC would not have sought the public's views and there would not have been more than 7,000 comments submitted in response to the FTC's request for input.

---

[74] Ex. E at ¶¶ 36-42.

In the end, Bonta's own petition fatally undermines his claim that any ACC statement is "false." He says that he issued the subpoena to "understand why ACC describes advanced recycling the way it does" and to "determine if the information being promulgated is truthful."[75] It is hard to overstate the perniciousness of that standard—one in which a prosecutor can retaliate against an association based on speech to a separate government agency about matters the agency regulates because the prosecutor asserts speech is "potentially" false. *See Media Matters for Am.*, 2024 WL 1773197, at *18 (rejecting prosecutor's argument that "because [plaintiff's] articles were 'deliberately designed'" to mislead, they are not "constitutionally protected").

> **b.  Bonta's Actions Are Retaliatory And Sufficient to Deter First Amendment Activity.**

Bonta has taken "action sufficient to deter a person of ordinary firmness in [ACC's] position from speaking again." *Aref*, 833 F.3d at 258 (citation omitted). It is well understood that the mere "threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" can be sufficient to chill protected speech. *Playboy Enters., Inc. v. Meese*, 639 F. Supp. 581, 585 (D.D.C. 1986) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)); *see NRA*, slip op. at 12 ("The greater and more direct the government official's authority," the greater its coercive effect). Even being "under investigation" suffices, because a "person of ordinary firmness would surely feel a chilling effect" under such circumstances. *Cooksey v. Futrell*, 721 F.3d 226, 237 (4th Cir. 2013); *see also White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (government officials "unquestionably chilled the plaintiffs' exercise of their First Amendment rights" through investigation even though the officials "did not … seize the plaintiffs' materials, and … ultimately decided not to pursue … sanctions").

---

[75] Ex. E at ¶ 43; *id.* at ¶ 46 (describing the speech as "potentially unlawful and fraudulent").

This case follows *a fortiori* from these authorities. Bonta—cloaked in his authority as California's attorney general—is aggressively pursuing an investigation into *and* enforcement efforts against ACC. He has not just threatened to do so; he has served a subpoena and petitioned to enforce it. Further, his petition strongly suggests that his "investigation" will turn into a criminal or civil process, proclaiming that he "need not merely stand by as the plastics industry and ACC … intentionally and knowingly make untruthful and fraudulent statements to the public, the government, and the legislature in order to increase their profits."[76] In public statements, he has accused ACC of "trying to hide" conduct by asserting its First Amendment privilege. This kind of behavior is more than sufficient to constitute actionable retaliation.

ACC's "actual response" to the retaliatory conduct also "'provides some evidence of the tendency of that conduct to chill First Amendment activity.'" *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 54 (D.D.C. 2013) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)); *Media Matters for Am.*, 2024 WL 1773197, at *18 ("[A]ctual self-censorship in response to the announced investigation and [investigative demand] 'provides some evidence of the tendency of [defendant's] conduct to chill First Amendment activity."). A retaliatory action has the requisite chilling effect whether it chills speech, *see id.*, or association, *see NRA*, slip op. at 16 (finding plaintiff "plausibly alleged that [government actor] violated the First Amendment by coercing … entities into disassociating with the NRA in order to punish or suppress the NRA's gun-promotion advocacy"). ACC need not "prove that the allegedly retaliatory conduct caused [it] to cease First Amendment activity altogether." *Constantine*, 411 F.3d at 500. The "cause of action targets conduct that tends to chill [First Amendment] activity, not just conduct

---

[76] Ex. E at ¶ 45.

that freezes it completely." *Id.* (emphasis omitted). ACC's First Amendment activity has already been chilled, and will continue to be chilled while Bonta pursues the subpoena and related enforcement actions.[77]

### c. Bonta Issued the Investigative Subpoena Because ACC Submitted Comments to the FTC

The final factor—a causal link—is readily satisfied as well. ACC's speech and petitioning activity is *the* reason Bonta issued the subpoena and has engaged in ongoing enforcement activities against ACC. The petition could not be clearer. It is Bonta's position that "ACC put the Study into issue *when it submitted the Study and 'data' to the FTC*."[78] The accompanying press release was similarly clear, stating that Bonta "issued an investigative subpoena to ACC … seek[ing] specific documents containing information about an ACC-funded study … that ACC submitted to the Federal Trade Commission (FTC) in an attempt to modify the existing definition of recycled content and other definitions relevant to their campaign to expand chemical recycling."[79] *See Media Matters for Am.*, 2024 WL 1773197, at *19 (finding this factor satisfied when the state attorney general's "initial press release establishe[d] that Defendant opened an investigation … in response to its protected media activities").

Bonta's other viewpoint-based criticisms of ACC are also "evidence of retaliatory intent." *Id.* (defendant attorney general's "description of Media Matters as a 'radical anti-free speech' and 'radical left-wing organization'" is evidence of retaliatory intent). Bonta has repeatedly made clear

---

[77] *See* Ex. F at ¶¶ 16–21, 23.

[78] Ex. E at ¶ 46 (emphasis added); *see also id.* at ¶ 27 ("Specifically, ACC is lobbying to change the definition of recycling to include advanced recycling ….").

[79] *Attorney General Bonta Petitions Court to Compel Plastics Indus. Ass'n and Am. Chem. Counsel to Fully Comply with Outstanding Investigative Subpoenas*, OAG (May 28, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-petitions-court-compel-plastics-industry-association-and.

that he objects to ACC's viewpoint on recycling, and on other issues. For example, the petition repeatedly emphasizes ACC's political speech and activity, noting that "ACC is lobbying to change the definition of recycling to include advanced recycling" "has promoted its members' [other] priorities with elected officials," and "spent millions of dollars in lobbying efforts." [80] Bonta's public statements assert, apropos of nothing, that ACC's "leadership has for decades included major petrochemical company members."[81]

Retaliation must be the basis for Bonta's subpoena, because there is no other basis for it. The subpoena asserts that ACC's "promotion and marketing of recycling plastic may have resulted in legal violations" including, broadly, "common law and statutory violations, such as products liability, public nuisance, and violations of the California Unfair Competition Law … , California False Advertising Law," and unspecified "other laws."[82] But Bonta has never backed up this boilerplate incantation with any specifics, and his petition to enforce does not assert that ACC violated any specific law. The laws the subpoena references are a poor fit for the facts Bonta asserts anyway. Submitting comments to a federal agency is not "advertising." Nor could such comments "substantially annoy" a normal person in California. *See People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1105 (1997). ACC does not even "supply goods or products for the use of others," as would be required for a products liability claim. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001).

Nor is it Bonta's job to police the content of comments to the FTC. He asserts concern that ACC has "attempt[ed] to fraudulently sway the government" through its advocacy. But even if

---

[80] *See* Ex. E at ¶ 6 ("ACC has promoted its members' priorities with elected officials"); *id.* at ¶ 7 ("ACC has spent millions of dollars in lobbying efforts"); *id.* at ¶ 8 ("ACC has paid for advertisements"); *id.* at ¶ 27).
[81] May 28 Press Release, supra n. 79.
[82] Compl. Ex. C. at 10.

ACC's advocacy were somehow "false," the federal government is not in need of Bonta's defense. As the Supreme Court has recognized, such "[p]olicing" activity on behalf of "federal agencies is hardly 'a field which the States have traditionally occupied.'" *Buckman Co.*, 531 U.S. at 347. Instead, "the relationship between a federal agency and the entity it regulates is inherently federal in character." *Id.* More fundamentally, the FTC, not the California attorney general, is the body Congress tasked with considering and deciding what weight to assign to comments received in the notice-and-comment process. And the FTC—the nation's consumer protection agency—is well equipped to consider for itself the significance of fully reported results of a consumer perception study. Bonta can assist the FTC in its deliberative process by "shar[ing] h[is] views freely" and "criticiz[ing]" ACC's position. *NRA*, slip op. at 8-9. "What []he cannot do, however, is use the power of the State to punish or suppress disfavored expression." *Id.*

While Bonta may have broad authority to investigate under California law, that authority does not allow him to override constitutional protections. He cannot issue a subpoena to retaliate for speech and petitioning activity. And there is no serious dispute that, but for ACC's constitutionally protected participation in the FTC's notice-and-comment process, Bonta would not have issued his subpoena or filed and served his enforcement petition.

## 2. Bonta Cannot Compel ACC to Produce the Documents At Issue Because They Are Constitutionally Privileged.

Separate and apart from the retaliation claim, ACC is also likely to succeed on its claim that the withheld documents are privileged.

The Fourth Amendment limits the scope of administrative subpoenas. *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-11 (1946). And the First Amendment guards against compelled disclosure of materials that would chill First Amendment rights. *Perry*, 591 F.3d at 1160; *Pebble Ltd. P'ship v. EPA*, 310 F.R.D. 575, 582 (D. Alaska 2015) (subpoenas that have "the tendency to

chill the free exercise of political speech and association which is protected by the First Amendment" are invalid).[83] Thus, when "materials sought to be seized" by a subpoena "may be protected by the First Amendment," the requirements of the Fourth Amendment are applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978). "No less a standard could be faithful to First Amendment freedoms." *Stanford v. Tex.*, 379 U.S. 476, 485 (1965).

Bonta seeks to compel the production of materials protected by the First Amendment in a way that has chilled, and will continue to chill, ACC's protected conduct. As explained above, the documents he seeks form the basis of ACC's speech and petitioning activities at the heart of the First Amendment's interests.

The documents are precisely the type courts have held protected by the right of association. The Supreme Court has long recognized that the First Amendment protects the "right to associate with others." *Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). "Compelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights." *Perry*, 591 F.3d at 1156. "Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, *and to do so in private*." *Id.* at 1162 (emphasis added). The First Amendment therefore "prohibit[s] … compelled disclosure" of documents about an organization's associational activities—including about members—absent compliance with "exacting scrutiny." *Ams. For Prosperity*, 594 U.S. at 606-607, 613 (holding California violated the First Amendment by requiring disclosure of

---

[83] The California Constitution applies similar protections. *See Britt v. Superior Court*, 20 Cal. 3d 844, 852 (1978) ("[P]eaceful and lawful associational activity is, without question, constitutionally protected activity which, under both our state and federal Constitutions, enjoys special safeguard from governmental interference.").

"donors' names and the total contributions" to charitable organization); *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (preventing compelled disclosure of membership lists); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (preventing compelled disclosure of campaign contributions); *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 176 (D.C. Cir. 2003) (preventing compelled disclosure of identities of employees and volunteers).

ACC's withheld documents would reveal the strategy, timing, focus, policy perspectives, viewpoints, identity, and preferences of ACC and its members as they engaged in formulating viewpoints and responding to the FTC's request for comment on the Green Guides.[84] ACC and its members expected that the documents would be maintained confidentially, and the documents' "disclosure would have the practical effects of discouraging political association and inhibiting internal … communications that are essential to effective association and expression." *Perry*, 591 F.3d at 1163.[85] "[R]elease of such information to the government carries with it a real potential for chilling the free exercise of political speech and association guarded by the first amendment." *Fed. Election Comm'n v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981).

Indeed, Bonta does not seem to dispute that he is seeking materials that ordinarily would be privileged under the First Amendment.[86] And as explained above, Bonta has not identified any false statements by ACC. It is ACC's viewpoint (aka, opinion), not fraud, that motivated Bonta here. Bonta's theory—that his disagreement with ACC's opinions and advocacy justifies rooting

---

[84] *See* Mot. To Partially Seal Ex. J at ¶¶ 6–8; Mot. To Partially Seal Ex. I at ¶¶ 13, 15–17; Mot. To Partially Seal Ex. K at ¶¶ 7-8; Ex. F at ¶¶ 22–23.
[85] *See* Mot. To Partially Seal Ex. J at ¶¶ 4–5, 7; Mot. To Partially Seal Ex. I at ¶¶ 16, 19; Mot. To Partially Seal Ex. K at ¶¶ 8-11; Ex. F at ¶ 23.
[86] *See* Ex. E at ¶ 45.

through ACC's privileged documents "to determine if the information being promulgated is truthful"—is dangerous and fundamentally inconsistent with the First Amendment.

"It is contrary to the first principles of justice to allow a search through all the respondents' r[e]cords, relevant or irrelevant, in the hope that something will turn up." *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924). Bonta's investigation is targeted at speech and associational activities that are afforded broad constitutional protection and such "investigations premised solely upon legal activity are the very type of 'fishing expeditions' that" the Supreme Court has long made clear cannot be permitted. *Major League Baseball v. Crist*, 331 F.3d 1177, 1187-88 (11th Cir. 2003) (concluding that a civil investigative demand violated the Fourth Amendment and "that an investigation predicated solely upon legal activity does not pass muster under any standard.") (emphasis omitted). Bonta's subpoena does not come close to meeting the "scrupulous exactitude" standard that applies. *Stanford*, 379 U.S. at 485.

## B. Immediate Judicial Intervention Is Necessary To Protect ACC From Irreparable Harm.

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quotation marks and citations omitted); *see Quaker Action Grp. v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969) (finding the right to assemble and petition the government "so basic to our society that any deprivation might well be found to constitute irreparable injury"); *Cuviello v. City of Stockton*, No. CIV. S-07-1625, 2008 WL 4283260, at *6 (E.D. Cal. Sept. 16, 2008) ("[I]mpairment of [the United States and California Constitutions] would constitute an irreparable injury.").

For this reason, likelihood of success on the merits in First Amendment cases "will often be the determinative factor in the preliminary injunction analysis." *Pursuing Am.'s Greatness*, 831

F.3d at 511 (internal quotation marks omitted). "[I]n the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits." *W.V. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *Martinez v. City of Fresno*, No. 1:22-cv-00307, 2022 WL 1645549, at *13 (E.D. Cal. May 24, 2022). "Only injunctive relief will prevent the ongoing deprivation of [ACC's] free speech rights." *Media Matters for Am.*, 2024 WL 1773197, at *19 (internal quotation marks, citations omitted).

ACC has already limited its public advocacy due to Bonta's actions. Based on its meeting with the FTC on September 28, 2023, ACC believes that providing additional empirical evidence to the FTC related to the FTC's consideration of the Green Guides would be helpful, and has considered commissioning a companion survey to the Environmental Claims Survey to provide additional empirical evidence to the FTC.[87] In light of Bonta's subpoena, ACC has forgone commissioning the survey for fear of additional retaliatory action. ACC's inability to participate further in the administrative process is a significant harm in itself. The notice and comment procedure "helps ensure that regulated parties receive fair treatment, a value basic to American administrative law." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 87–88 (D.C. Cir. 2014). ACC is now hindered in its ability to effectively advocate for that fair treatment for its members. ACC has also been reluctant to engage fully on other policy issues important to its members' California interests because it fears further retaliation from Bonta.[88] And ACC has been reluctant to engage

---

[87] Ex. F at ¶¶ 12–14, 16–17.
[88] *Id*. at ¶¶ 18–20.

additional staff in its advocacy with the FTC out of concern that such staff would be burdened with subpoena obligations or other retaliatory measures.[89]

ACC's ability to freely associate with its members has also suffered. ACC's members are less willing to transmit their views in writing,[90] a vital aspect of ACC's engagement with members.[91] ACC members also fear retaliation should their involvement in ACC's comments on the Green Guides revisions become known.[92] And if the documents are disclosed, ACC's members will be less willing to participate in future associational activities for similar fears.[93]

Bonta's access to ACC's documents would also result in an immediate and irreversible constitutional harm. "One injury to [ACC's] First Amendment rights is the disclosure itself." *Perry*, 591 F.3d at 1158. Even if ACC later prevails, "this injury will not be remediable." *Id.* "[I]rreparable injury is frequently found when a movant seeks to prevent the disclosure of privileged documents pending litigation. That is generally because the holders of the privileges will, themselves, be irreparably harmed by release." *Trump v. Thompson*, 20 F.4th 10, 47 (D.C. Cir. 2021); *see also In re Burlington N., Inc.*, 822 F.2d 518, 522–23 (5th Cir. 1987) (finding that disclosure of privileged materials would be irreparable).

---

[89] *Id.* at ¶ 21
[90] *See* Mot. To Partially Seal Ex. J at ¶ 10; Mot. To Partially Seal Ex. I at ¶ 25; Mot. To Partially Seal Ex. K at ¶ 7; Ex. F at ¶ 20.
[91] Ex. F at ¶ 7.
[92] *See* Mot. To Partially Seal Ex. J at ¶¶ 9–10; Mot. To Partially Seal Ex. I at ¶¶ 20–21; Mot. To Partially Seal Ex. K at ¶ 9.
[93] *See* Mot. To Partially Seal Ex. J at ¶¶ 8–10; Mot. To Partially Seal Ex. I at ¶¶ 22–25; Mot. To Partially Seal Ex. K at ¶ 10; Ex. F at ¶ 23. Compelled disclosure of ACC member identities and the development of advocacy constitutes irreparable harm both to ACC and its members, who lack the opportunity to protect their identities and non-public communications from disclosure. The irreparable harm to otherwise powerless third parties weighs heavily in consideration of the public interest factor. *See Jones v. D.C.*, 177 F. Supp. 3d 542, 546 n.3 (D.D.C. 2016).

Bonta has already petitioned a California court to compel ACC's production of the withheld documents. Absent urgent action from this Court, Bonta has demonstrated his intent to press ahead in California state court, undermining this Court's ability to issue effective final judgment and institute appropriate remedies.

### C. The Balance Of Equities And Public Interest Considerations Strongly Support Preliminary Relief.

The remaining equitable factors also favor ACC. "[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional" state action. *Pursuing Am.'s Greatness*, 831 F.3d at 511. "[E]nforcement of an unconstitutional law is always contrary to the public interest." *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). And because ACC is "likely to succeed on the merits of [its] Fourth Amendment claim, the public interest weighs heavily in [its] favor." *See Klayman v. Obama*, 142 F. Supp. 3d 172, 196 (D.D.C. 2015).

The Court need not presume that Bonta's interest and the public interest are the same, "as federalism considerations may create some daylight" between those interests. *Media Matters for Am.*, 2024 WL 1773197, at *20 n.10. Here, there is clear daylight because a state official's investigatory process threatens to interfere with federal petitioning activity. The national public undoubtedly has a strong interest in encouraging participation in federal notice and comment processes, which "foster public participation and facilitate[s] reasoned decisionmaking." *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 568 (D.C. Cir.), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022). That process "helps to prevent mistakes, because agencies receive more input and information before they make a final decision." *Ivy Sports Med.*, 767 F.3d at 87-88. And it "helps ensure that the agency maintains a flexible and open-minded attitude towards its own rules." *N.C. Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 763 (4th Cir. 2012) (citation

31

omitted). There is also clear daylight between state and federal interests because the First, Fourth and Fourteenth Amendments together limit the power that a California official might otherwise have to pursue constitutionally privileged information.

Bonta's retaliatory investigation is discouraging participation in the notice and comment process and in broader governmental advocacy. If this were acceptable, it would place intolerable burdens on participation in administrative processes: "associations that support or oppose initiatives [would] face the risk that they w[ould] be compelled to disclose their internal campaign communications," a risk that would apply "to the myriad social, economic, religious and political organizations that publicly support or oppose [regulatory action]." *Perry,* 591 F.3d at 1158. "The potential chilling effect on political participation and debate is therefore substantial, even if the … error were eventually corrected." *Id.* Granting temporary relief would thaw the chill on ACC's participation in the public process, serving the public interest.

Bonta's interests are comparatively minor and limited. He has no proper role to play in regulating public processes initiated by the FTC. Further, Bonta has already received many ACC documents. As Bonta has well demonstrated, Bonta already has the information he needs to assess ACC's advocacy in the public materials ACC submitted to the FTC on April 20, 2023. That he has been unable to establish any legal violation does not remotely justify his efforts to intrude into ACC's constitutionally-protected materials.

Balancing these interests shows that preliminary relief will function exactly as intended, maintaining the status quo while the case is fully litigated. *See Coachella Music Festival, LLC v. Johnson*, No. 23-288, 2024 WL 1485947, at *2 (D.D.C. Apr. 4, 2024); *Newrez, LLC v. Francis*, No. 22-cv-00561, 2023 WL 4223749, at *1 (D.D.C. June 26, 2023).

V.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant a temporary restraining order and preliminary injunction, enjoining Bonta from further pursuing enforcement of his subpoena.

Dated:  June 13, 2024                                    Respectfully submitted,

                                                        /s/ *Kwaku A. Akowuah*

                                                        Kwaku A. Akowuah (D.C. Bar No. 992575)
                                                        Jillian S. Stonecipher (D.C. Bar No. 1030214)
                                                        Anna F. Boardman (D.C. Bar No. 90015086)
                                                        (admitted *pro hac vice*)
                                                        SIDLEY AUSTIN LLP
                                                        1501 K Street NW
                                                        Washington, D.C. 20005
                                                        Telephone: 202 736-8000
                                                        kakowuah@sidley.com
                                                        jstonecipher@sidley.com
                                                        aboardman@sidley.com

                                                        David L. Anderson (CA Bar No. 149604)
                                                        (admitted *pro hac vice*)
                                                        Sheila A.G. Armbrust (CA Bar No. 265998)
                                                        (admitted *pro hac vice*)
                                                        David Goldenberg (D.C. Bar No. 1602274)
                                                        (admitted *pro hac vice*)
                                                        SIDLEY AUSTIN LLP
                                                        555 California Street, Suite 2000
                                                        San Francisco, CA 94104
                                                        Telephone: 415 772-1200
                                                        dlanderson@sidley.com
                                                        sarmbrust@sidley.com
                                                        dgoldenberg@sidley.com

                                                        *Counsel for Plaintiff American Chemistry
                                                        Council, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: June 13, 2024

Respectfully submitted,

*/s/ Kwaku A. Akowuah*
Kwaku A. Akowuah (D.C. Bar No. 992575)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
kakowuah@sidley.com

*Counsel for Plaintiff American Chemistry Council, Inc.*