**Exhibit F**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CHEMISTRY COUNCIL, INC.,

    *Plaintiff*,

v.

ROB BONTA, in his Official Capacity as Attorney General of California,

    *Defendant*.

Case No. 1:24-cv-01533-APM

## DECLARATION OF ROSS EISENBERG

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Ross Eisenberg and I serve as an employee of the American Chemistry Council ("ACC"). I am competent to testify to the following matters, and I make this declaration based on my personal knowledge in my capacity as Vice President, Plastics Division.

2. ACC is a non-profit trade association headquartered in Washington, D.C. ACC represents over 190 members engaged in the business of chemistry.

3. ACC collaborates extensively with its member companies in identifying policy issues of importance to its members, forming member working groups, and working with its members to develop public advocacy positions and strategies.

4. As Vice President of the Plastics Division, I regularly engage with senior executives and subject matter experts of ACC's Plastics Division member companies which include many of the leading global manufacturers of plastics resins and other companies in the plastics value chain, including advanced recyclers. I have a primary role in the development, management, and implementation of the Plastics Division's most significant advocacy initiatives and represent our

1

membership's positions before Members of Congress and the Administration on ACC's issue priorities and policy objectives. As Vice President of the Plastics Division, members of my senior leadership team provide regular updates on their staff activities and operations.

5. ACC does not, as a matter of practice, make public the identities of particular members engaged in any particular working group or engaged in developing particular public advocacy positions and strategies.

6. ACC does not, as a matter of practice, make public working papers or communications related to the development of its public advocacy positions and strategies.

7. Written communication with ACC's membership is a vital method of communication ACC uses to work with its members in developing public advocacy positions and strategies.

**ACC Provides Comment to the FTC**

8. On December 14, 2022, the United States Federal Trade Commission ("FTC") requested public comments regarding updates to its Guides for the Use of Environmental Marketing Claims ("Green Guides").

9. At the urging of its members, ACC along with a consortium of its members worked to respond to the FTC's requests for comments. As part of this effort, ACC commissioned a national survey of consumer perceptions and labelling preferences (the "Environmental Claims Survey") to address the FTC's questions about consumer perceptions of recyclable claims.

10. ACC submitted public comments as well as the results of the Environmental Claims Survey to the FTC on April 20, 2023.

11. On May 23, 2023, ACC supplemented its comments by communicating its views on the meaning of "recyclable", federal caselaw on the subject, and appropriate government recycling policy during a public workshop hosted by FTC. Raissa Lerner, Deputy Attorney General

with the California Attorney General's Office, shared contrasting views on these same legal and policy issues during the same public workshop.

12. On September 28, 2023, members of my staff attended a meeting with the FTC to discuss ACC's comments on the Green Guides including the Environmental Claims Survey. During the meeting, The FTC staff indicated that they would appreciate additional empirical information in connection with revising the Green Guides.

13. The FTC emphasized that consumer research data was especially helpful in the development of informed and responsible government policies.

14. Through my experience in governmental advocacy, as well as based on comments in the September 28, 2023, meeting, I appreciate that the FTC is a data-driven organization, valuing empirical information to assist rulemaking and other policy decisions.

15. I understand that ACC received an Investigative Subpoena from the Office of the California Attorney General seeking documents and communications related to ACC's survey on December 6, 2023 ("Investigative Subpoena").

16. Motivated by the September 28, 2023 meeting with the FTC, ACC considered in February 2024 commissioning another survey to provide additional information to the FTC. Due to the Investigative Subpoena, ACC decided to forego commissioning another consumer research survey for fear of being singled out by California Attorney General Rob Bonta for expressing views that are contrary to his, incurring further retaliation.

17. Without data from this new survey, ACC has had to modify its advocacy with the FTC, degrading its ability to speak and associate with its members in furtherance of its objectives.

**ACC Has Foregone Other Speech And Associational Activities In Light Of The Investigative Subpoena**

18. ACC has been reluctant to engage fully on policy issues important to its members' California interests for fear that its advocacy strategies and communications on those topics may be subject to additional singling out and retaliation from California Attorney General Rob Bonta.

19. ACC is fearful that California Attorney General Rob Bonta will single out ACC because it has expressed viewpoints contrary to those of his office by requiring ACC to produce documents related to as yet unstated policy positions, drafts, and similar documents, which could be taken out of context or made public before ACC and its member had reached member consensus and decided to advance those positions publicly.

20. ACC has experienced decreased member participation in advocacy efforts due to member hesitation in communicating with ACC in writing for fear that those communications would be subject to production to Attorney General Bonta, resulting in additional adverse process and premature public revelation. ACC has refrained from fully developing its advocacy positioning and associated strategy on Extended Producer Responsibility policies based on concern that such communications may be subject to production and thus negatively impact ACC's negotiating positions and advocacy in upcoming policy debates.

21. ACC has been forced to alter its staff engagement practices following receipt of the subpoena. Based on fear of having additional staff subjected to subpoena burdens and retaliation by the Attorney General, ACC refrained from having staff, including its President and Chief Executive Officer, advocate on these Green Guides issues before FTC.

**Consequence of Production of Withheld Materials**

22. I understand that ACC withheld from production certain documents in response to the Investigative Subpoena to the extent those documents relate to associational and expressive

activities.

23. If these materials are required to be produced, the likelihood of ACC's and its members' advocacy success will be compromised as the California Attorney General will be able to adapt its advocacy strategies to advance its own policy agenda to the detriment of ACC's objectives. In addition, ACC members will be more reluctant to participate in ACC advocacy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: June 11, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　Ross Eisenberg
　　　　　　　　　　　　　　　　　　　　　　Vice President, Plastics
　　　　　　　　　　　　　　　　　　　　　　American Chemistry Council