**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC.,<br><br>*Plaintiff*,<br><br><br>ROB BONTA, in his Official Capacity as Attorney General of California,<br><br>*Defendant*. | Civil Action No. 24-cv-01533-APM |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 3

    I.     The Attorney General's Investigation Into The Fossil Fuel And
         Petrochemical Industries .......................................................................... 3

    II.    Service Of Investigative Subpoena On ACC In California ...................... 4

STANDARD OF REVIEW .................................................................................. 7

ARGUMENT ....................................................................................................... 8

    I.     Abstention Principles Compel This Court To Dismiss This Dispute ........ 8

    II.    This Court Lacks Personal Jurisdiction Over The Attorney General ...... 13

         A.    When Sued In His Official Capacity, The Attorney General
              Is Not A "Person" Under The Long-Arm Statute ........................ 15

         B.    The Attorney General Has Not Purposefully Availed
              Himself Of Washington D.C. ....................................................... 15

    III.   ACC Cannot Establish That The Criteria For A Preliminary
         Injunction Are Met .................................................................................. 18

         A.    The Attorney General's Lawful Ongoing Investigation Is
              Not Retaliatory ........................................................................... 18

             1.    The Attorney General's Motive In Issuing The
                   Subpoena Was Not Retaliatory ....................................... 20

             2.    ACC Cannot Meet The Objective Elements Of A
                   Retaliation Claim ............................................................ 24

          B.    ACC Is Not Likely To Establish That The First
              Amendment Applies To Protect The Withheld Documents
              Under The Circumstances Here, Where The Government
              Interest In The Documents Is Relatively Significant .................. 27

         C.    The ACC Will Not Suffer Irreparable Harm While The
              Merits Of Its Claims Are Being Litigated In State Court ........... 30

         D.    The Balance Of Equities And The Public Interest Disfavor
              ACC's Request For An Injunction ............................................... 34

CONCLUSION .................................................................................................. 37

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Fed. Election Comm'n*
   333 F.3d 168 (D.C. Cir. 2003) ............................................................3, 4, 27

*Aref v. Holder*
   774 F.Supp.2d 147 (D.D.C. 2011) .................................................................26

*Arnett v. Dal Cielo*
   14 Cal.4th 4 (1996) .................................................................................4, 11

*Atkinson v. Grindstone Cap., LLC*
   12 F.Supp.3d 156 (D.D.C. 2014) ...................................................................9

*Brovelli v. Super. Ct. of L.A. County*
   56 Cal.2d 524 (1950) .......................................................................4, 30, 35

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*
   892 F.3d 434 (D.C. Cir. 2018) .....................................................................21

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ....................................................................................34

*Colorado River Water Conservation Dist. v. United States*
   424 U.S. 800 (1976) ....................................................................................13

*Crane v. N.Y. Zoological Soc'y*
   894 F.2d 454 (D.C. Cir. 1990) .....................................................................14

*Crawford-El v. Britton*
   523 U.S. 574 (1998) ....................................................................................19

*Dana Point Safe Harbor Collective v. Superior Court*
   51 Cal.4th 1 (2010) .....................................................................................12

*Davis v. Pension Benefit Guar. Corp.*
   571 F.3d 1288 (D.C. Cir. 2009) .....................................................................8

*Doe v. District of Columbia*
   796 F.3d 96 (D.C. Cir. 2015) ............................................................18, 24, 25

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Edgar v. Haines*
   2 F.4th 298 (4th Cir. 2021) ..................................................................32, 35

*ExxonMobil Corp. v. Schneiderman*
   316 F.Supp.3d 679 (S.D.N.Y. 2018)...............................................19, 22, 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*
   592 U.S. 351 (2021)..................................................................................14

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
   564 U.S. 915 (2011)..................................................................................13

*Google, Inc. v. Hood*
   822 F.3d 212 (5th Cir. 2016) ......................................................................9

*H.C. ex rel. Gordon v. Koppel*
   203 F.3d 610 (9th Cir. 2000) ....................................................................10

*Handy v. Shaw, Bransford, Veilleux & Roth*
   325 F.3d 346 (D.C. Cir. 2003) ..................................................................13

*Hartman v. Moore*
   547 U.S. 250 (2006)..................................................................................19

*Hoia v. Sun Ref. and Mktg. Co., Inc.*
   866 F.2d 1515 (D.C. Cir. 1989) ..................................................................9

*Huffman v. Pursue, Ltd.*
   420 U.S. 592 (1975)...........................................................................8, 9, 12

*In re KAHEA*
   150 Haw. 43 (Haw. 2021).........................................................................19

*JMM Corp. v. Dist. Of Columbia*
   378 F.3d 1117 (D.C. Cir. 2004) ..................................................................9

*Juidice v. Vail*
   430 U.S. 327 (1977)..................................................................................11

*Karem v. Trump*
   960 F.3d 656 (D.C. Cir. 2020) ..............................................................7, 34

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Klayman v. Fox*
  No. CV 18-1579 (RDM), 2019 WL 2396538 (D.D.C. June 5, 2019) ........................12

*Laird v. Tatum*
  408 U.S. 1 (1972)..................................................................................................32, 24

*Maryland v. King*
  567 U.S. 1301 (2012) ................................................................................................35

*\*Media Matters for Am. v. Paxton* (*"Media Matters"*)
  No. 24-CV-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024).................. *passim*

*Middlesex Cnty. Ethics Comm. v. Garden State Bar. Ass'n.*
  457 U.S. 423 (1982)..........................................................................................1, 9, 12

*Nat'l Rifle Assoc. v. Vullo*
  602 U.S. 144 S. Ct. 1316 (2024)................................................................................22

*Nieves v. Bartlett*
  139 S. Ct. 1715 (2019)........................................................................................19, 23

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
  477 U.S. 819 (1975)....................................................................................................9

*Reisman v. Caplin*
  375 U.S. 440 (1964)..................................................................................................31

*Reno v. American–Arab Anti–Discrimination Comm.*
  525 U.S. 471 (1999)............................................................................................10, 21

*Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*
  593 F.2d 1030 (D.C. Cir. 1978)................................................................................33

*Riggs Inv. Mgmt. Corp. v. Columbia Partners, L.L.C.*
  966 F. Supp. 1250 (D.D.C. 1997).............................................................................25

*Safari Club Int'l v. Salazar*
  852 F. Supp. 2d 102 (D.D.C. 2012)..........................................................................34

*Schlagler v. Phillips*
  166 F.3d 439 (2d Cir. 1999)......................................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Sherley v. Sebelius*
     644 F.3d 388 (D.C. Cir. 2011) ....................................................................................7

*U.S. News & World Rep., L.P. v. Chiu*
     No. 24-CV-00395-WHO, 2024 WL 2031635 (N.D. Cal. May 7, 2024) ....................11

*United Presbyterian Church v. Reagan*
     738 F.2d 1375 (D.C. Cir. 1984) ..............................................................................34

*United States v. Edge Broad. Co.*
     509 U.S. 418 (1993).................................................................................................24

*United States v. Ferrara*
     54 F.3d 825 (D.C. Cir. 1995) .................................................................................15

*United States v. Morton Salt Co.*
     (1950) 338 U.S. 632 ................................................................................................29

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*
     425 U.S. 748 (1976)...........................................................................................30, 35

*Walden v. Fiore*
     571 U.S. 277 (2014)......................................................................................14, 17, 18

*Wayte v. United States*
     470 U.S. 598 (1985).................................................................................................21

*Will v. Michigan Dep't of State Police*
     491 U.S. 58 (1989).............................................................................................15, 32

*\*Younger v. Harris*
     401 U.S. 37 (1971)......................................................................................... *passim*

**STATUTES**

Cal. Bus. & Prof. Code
     § 17200 et seq. ........................................................................................................16
     § 17500 et seq. ........................................................................................................16

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Gov't Code
    § 11180 *et seq.* ........................................................................................4, 16, 35
    § 11181 .........................................................................................................5
    § 11188 ........................................................................................................11
    § 12511 ........................................................................................................10

Cal. Code of Civil Procedure § 1005(b) ...........................................................12

**CONSTITUTIONAL PROVISIONS**

First Amendment ....................................................................................... *passim*

Cal. Const. Article V
    § 1.................................................................................................................35
    § 13.........................................................................................................10, 19

**OTHER AUTHORITIES**

American Chemistry Council, *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, available at https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey ..............................................................5, 24, 30

Justice, Office of the Attorney General, Attorney General Bonta Announces Investigation into Fossil Fuel and Petrochemical Industries for Role in Causing Global Plastics Pollution Crisis (April 28, 2022) (available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-investigation-fossil-fuel-and-petrochemical) ..........................................................................................................................3

## INTRODUCTION

Plaintiff American Chemistry Council ("ACC") seeks a preliminary injunction against the enforcement of an investigative subpoena ("Subpoena") served on ACC by Defendant Rob Bonta, Attorney General of the State of California (hereinafter, and together with his office, "the Attorney General"). The injunction should be denied for several reasons.

As an initial matter, the request for an injunction (and this action generally[1]) faces at least two jurisdictional problems. First, this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* reflects a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar. Ass'n.*, 457 U.S. 423, 431 (1982). There is a currently pending California state court proceeding to enforce the underlying subpoena, during which the ACC will have a full and fair opportunity to litigate the constitutional claims that it presents here. Because this dispute meets all criteria for abstention, this Court lacks subject matter jurisdiction. Second, the Court lacks personal jurisdiction over the Attorney General. ACC has not established that the Attorney General is a "person" within the meaning of the District's long-arm statute, or that there are sufficient minimum contacts between the Attorney General and this forum.

In any event, ACC has failed to establish the prerequisites to injunctive relief. Even if subject matter and personal jurisdiction lie, ACC still cannot establish that it is likely to succeed on the merits of its claims. First, ACC cannot establish retaliation, which underlies ACC's claims that the Attorney General has violated its constitutional rights. The Attorney General issued its Subpoena as part of an ongoing investigation into whether the plastics industry has intentionally

---

[1] The Attorney General will present arguments for dismissal of this action in full in a forthcoming motion due July 18, 2024.

deceived consumers regarding the viability of recycling, to encourage and promote the consumption of plastic in furtherance of the industry's commercial interests. The Subpoena relates to a consumer survey ("Study") that ACC commissioned that purports to reflect consumer attitudes towards technologies described by the industry as "advanced recycling". The ACC first publicized the study in connection with comments that it submitted to the Federal Trade Commission (FTC), but that is incidental: The Subpoena does not mention or reference those comments and was issued seven months after the comments were submitted. The Subpoena is about the Study, which may relate to ongoing unlawful consumer deception. The fact that ACC attached the Study to its comments to the FTC does not change the fact that the Study has been used to support public claims that further the commercial interests of ACC's members, and the Attorney General would have issued the Subpoena even if the Study had not been submitted to the FTC. Second, ACC does not have any independent First Amendment right against disclosure of the requested information given the balance between the potential burdens on individuals and the significance of the government's interest. *See Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 333 F.3d 168, 176 (D.C. Cir. 2003). For similar reasons, ACC has not shown that the preliminary injunction considerations of irreparable harm or the balance of equities are in their favor. The injunction should be denied.

## BACKGROUND

I.    **THE ATTORNEY GENERAL'S INVESTIGATION INTO THE FOSSIL FUEL AND PETROCHEMICAL INDUSTRIES**

In April 2022, the Attorney General made public an investigation to determine whether and to what extent the plastics industry has known yet may be actively deceiving the public

about the infeasibility of plastics recycling, in violation of California law. *See* Press Release.[2]

That investigation actually began even earlier, after public reporting in 2020 revealed internal

documents "warning industry executives that recycling was 'infeasible' and that plastic recycling

'can ever be made viable on an economic basis.'" *See id.* The investigation includes an inquiry

into allegations that the plastics industry and its trade associations misled consumers regarding

the recyclability of plastics, including through false representations regarding advanced

recycling. *See id.*

In connection with his announcement of the investigation, the Attorney General sent

preservation letters to several entities asking them to preserve specified documents potentially

relevant to the investigation. *See* Decl. of Justin J. Lee (Lee Decl.) at ¶ 2. ACC was one such

entity. *Id*. In the ensuing months, the Attorney General issued several subpoenas in connection

with the investigation, pursuant to his authority under state statutes to investigate suspected

violations of the law. *Id*. at ¶¶ 3–5.; *see* Cal. Gov't Code § 11180 *et seq*.; *Brovelli v. Super. Ct. of

L.A. County*, 56 Cal.2d 524, 529 (1950) (investigative subpoenas can issue "merely on suspicion

that the law is being violated, or even just because [the government] wants assurance that it is

not") (quoting *United States v. Morton Salt Co.* (1950) 338 U.S. 632, 642-643); *Arnett v. Dal

Cielo*, 14 Cal.4th 4, 8 (1996) (investigative subpoenas may be issued without a formal accusation

or a formal adjudicative hearing).

## II.   SERVICE OF INVESTIGATIVE SUBPOENA ON ACC IN CALIFORNIA

---

[2] California Department of Justice, Office of the Attorney General, Attorney General Bonta Announces Investigation into Fossil Fuel and Petrochemical Industries for Role in Causing Global Plastics Pollution Crisis (April 28, 2022) (available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-investigation-fossil-fuel-and-petrochemical).

In 2023, the Attorney General learned of an "independent" study that ACC had commissioned ("Environmental Claims Study" or "Study") that purported to reflect consumers' embrace of advanced recycling—an alternative to "mechanical" recycling touted by the plastics industry in recent years. On April 20, 2023, ACC published a public press release, which continues to reside on its website today, titled "*Advanced Recycling Is Recycling, 88% of Americans Say in Survey*."[3] Together with a comment letter, ACC submitted this survey to the FTC in connection with the FTC's decennial revision of Guides for the Use of Environmental Marketing Claims, or "Green Guides".

On December 6, 2023, over seven months after ACC submitted its comments, the Attorney General issued the investigative Subpoena to ACC pursuant to California Government Code section 11181, to uncover the extent to which ACC and its members had been involved in the design and execution of the purportedly "independent" Study. The Subpoena consisted of two requests: "(1) All documents and communications related to the ENVIRONMENTAL CLAIMS STUDY, including, but not limited to, the proposal, planning, execution, and follow-up regarding the ENVIRONMENTAL CLAIMS SURVEY; and (2) All documents and communications related to the funding of the ENVIRONMENTAL CLAIMS SURVEY." The Subpoena defines "ENVIRONMENTAL CLAIMS SURVEY" to mean

> the survey conducted from January 30, 2023 through February 8, 2023, and all associated work product and COMMUNICATIONS, by the AMERICAN CHEMISTRY COUNCIL and Heart+Mind Strategies, as referenced in YOUR April 20, 2023 press release titled, 'Advanced Recycling is Recycling, 88% of Americans Say in Survey' published on YOUR website at https://www.americanchemistry.com/chemistry-in-america/news-

---

[3] See American Chemistry Council, *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, available at https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey (last visited June 23, 2024).

trends/pressrelease/2023/advanced-recycling-is-recycling-88-of-americans-say-in-
survey.
The Subpoena does not mention or reference the FTC or ACC's comments to the FTC.

Acknowledging the validity of the Subpoena, ACC submitted written responses and objections to it on January 19, 2024, and produced documents on a rolling basis thereafter. On March 15, 2024, ACC provided a 50-page privilege log, in which ACC listed approximately 550 documents withheld from production in response to the Subpoena based on "associational, petitioning and free speech privileges of the United States and California Constitutions."

On May 3, 2024, a Deputy Attorney General issued a letter to ACC, stating that the Attorney General had evaluated ACC's privilege claims and found them to be without merit. The Attorney General requested additional information to support ACC's claims, and indicated that the Attorney General would pursue enforcement of the Subpoena if ACC did not comply with it. *See* Decl. of Katherine Schoon ("Schoon Decl.") at ¶¶ 5–6. The parties met and conferred several times over the course of the next several weeks. *Id*. ¶ 4–8. During the course of those discussions, ACC refused to provide sufficient additional information to support its privilege assertions, and the parties were unable to resolve their dispute.

On May 24, 2024, ACC filed this lawsuit (ECF No. 1) in federal district court for the District of Columbia. Four days later, on May 28, the Deputy Attorney General filed the Attorney General's Petition to Enforce Investigative Subpoena ("Petition") in a California Superior Court. *People of the State of California v. American Chem. Council*, No. 24-CV-010509 (Sacramento County Super. Ct., filed May 28, 2024) ("*People v. ACC*"). Schoon Decl. at ¶ 10. ACC served its complaint on the Attorney General in Sacramento that same day (May 28). ECF No. 12.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 (2008)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. The balance of equities and the public interest factors "merge" when the government is the opposing party. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020).

This Court has acknowledged that the "sliding scale" approach advocated by ACC (see ACC's Memorandum of Points and Authorities (Mot.) at 16–17) "is, at a minimum, in tension with current Supreme Court jurisprudence requiring a persuasive showing on all four factors …." *Scottsdale Cap. Advisors Corp.*, 678 F. Supp. 3d at 100, n.5; *see also Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009) (Kavanaugh, J., concurring).

## ARGUMENT

Three independent reasons mandate denial of ACC's motion. First, this Court is jurisdictionally barred from issuing the requested injunction under *Younger v. Harris*, 401 U.S. 37 (1971), because there is a pending state court action related to the same Subpoena, in which ACC will have a full opportunity to litigate its constitutional claim.  *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 620 (1975) (noting that once the requirements of *Younger v. Harris* are met, abstention is *required* unless an exception applies). Second, this Court lacks personal jurisdiction over the Attorney General. Finally, even if these barriers could be overcome, ACC cannot establish that the requirements for preliminary relief are satisfied here.

## I.    ABSTENTION PRINCIPLES COMPEL THIS COURT TO DISMISS THIS DISPUTE

The *Younger* abstention doctrine directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Younger*, 401 U.S. at 41. Principles of federalism and comity underlie the doctrine. *Atkinson v. Grindstone Cap., LLC*, 12 F. Supp. 3d 156, 160–61 (D.D.C. 2014); *Google, Inc. v. Hood*, 822 F.3d 212, 226 (5th Cir. 2016) ("[C]omity should make [federal courts] less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court.").

Absent extraordinary circumstances, abstention is required where: (1) there are ongoing state court proceedings; (2) those proceedings implicate important state interests; and (3) the state court proceedings afford the parties an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *see also Hoia v. Sun Ref. and Mktg. Co., Inc.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989). While *Younger* was decided in the context of a criminal prosecution, abstention principles also apply to civil enforcement proceedings. *See Huffman*, 420 U.S. at 603; *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 819 (1975).

All of the requirements for *Younger* abstention are met here. First, there is a pending state court proceeding. The Attorney General filed a petition to enforce the underlying Subpoena on May 28, 2024. Further, no "proceedings of substance on the merits" have yet taken place in federal court. *Middlesex*, 457 U.S. at 436 (quoting *Hicks v. Miranda*, 422 U.S. 332, 350 (1975)); *see also JMM Corp. v. Dist. Of Columbia*, 378 F.3d 1117, 1126 (D.C. Cir. 2004). ACC filed its complaint on May 24, 2024. Discovery has not yet begun, and the Attorney General has not even yet answered ACC's complaint.

Second, the California proceeding concerns undeniably important state interests, including the protection of California consumers from unfair and deceptive trade practices and the integrity of the Attorney General's investigatory tools under state law. The Attorney General, as California's chief law officer, has a duty under the state constitution "to see that the laws of the State are uniformly and adequately enforced."[4] The prosecutorial decisions the Attorney General makes in fulfilling his law enforcement duties are entitled to a presumption of regularity, and are not subject to judicial scrutiny. *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 489–490 (1999). That includes his decision here to investigate suspected violations of state laws enacted to protect human health, consumers, and the environment. Enforcement of the investigatory subpoena thus implicates the core of California's police power, a matter "over which federal courts have no general jurisdiction. . . and in which the state courts have a special expertise and experience." *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (citations omitted). The Supreme Court has also recognized the "important interest" of a state's "vindicat[ion] [of] the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it … ." *Juidice v. Vail*, 430 U.S. 327, 335 (1977).

The third factor is also satisfied, as ACC will have a full opportunity to present its constitutional claims in state court. Investigative subpoenas are not self-enforcing in California. *See Arnett v. Dal Cielo*, 14 Cal.4th 4, 8, (1996) (explaining that "[the] subpoena power, nevertheless, is judicially enforced: in the event that its subpoena is disobeyed, the [subpoenaing entity] may petition the superior court for an order compelling compliance"); *see also U.S. News & World Rep., L.P. v. Chiu*, No. 24-CV-00395-WHO, 2024 WL 2031635, at *3 (N.D. Cal. May

---

[4] Cal. Const. Art. 5, § 13; Gov't Code, § 12511.

7, 2024) (finding that investigative subpoenas in California "are not self-enforcing" and compelling a response requires a court order). There is no sanction for failing to comply with the Subpoena; rather, the only possibility of sanction comes if a state court orders compliance and the subpoenaed party subsequently violates that *court order*. *Id.* The procedure for enforcing the Subpoena (and obtaining such an order) resembles routine motion practice both in substance and procedure. It is initiated when the party issuing the subpoena (here, the Attorney General) files a petition to enforce. The superior court may then enter an order directing the subpoena recipient to appear at a hearing to show cause why the subpoena recipient has not complied with the Attorney General's subpoena. Cal. Gov't. Code § 11188. Here, the Superior Court in Sacramento will allow ACC to file an opposition to the petition pursuant to Code of Civil Procedure section 1005(b). Schoon Decl. at ¶ 12.  And if the court ultimately issues an order compelling compliance with the Subpoena, that order is appealable. *Dana Point Safe Harbor Collective v. Superior Court*, 51 Cal.4th 1, 11 (2010). Those procedures provide ACC adequate opportunity to raise the same objections to the Subpoena they assert here. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state processes . . . precludes any presumption that the state courts will not safeguard federal constitutional rights.").

Finally, no extraordinary circumstances exist to warrant the relief ACC seeks. ACC will likely contend that the "bad faith" exception applies to preclude application of the *Younger* doctrine. *See Huffman*, 420 U.S. at 611. The standard for the "bad faith" exception is "demanding," *Klayman v. Fox*, No. CV 18-1579 (RDM), 2019 WL 2396538, at *8 (D.D.C. June 5, 2019), *aff'd sub nom. Klayman v. Lim*, 830 F. App'x 660 (D.C. Cir. 2020), and will not be met by legal conclusions "couched as factual allegations." *Id*. (internal quotations and citations omitted). ACC has not shown that the state court action was filed in bad faith. The Attorney

General filed the Petition only after weeks of communications wherein the parties tried to, but could not, resolve a dispute regarding the merits of ACC's privilege claims. Schoon Decl. at ¶¶ 4–8. It is not "bad faith" to bring such legal disputes before a judge. Moreover, as discussed in this brief, the ACC has not shown that either the Petition or the underlying Subpoena were motivated by a retaliatory intent—in fact they could not be, given that the Attorney General's investigation commenced more than a year before ACC published the comment letter that purportedly incited the retaliation. *Younger* thus applies,[5] and "abstention is mandatory." *Schlagler v. Phillips*, 166 F.3d 439, 441 (2d Cir. 1999).

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE ATTORNEY GENERAL

A second bar to ACC's requested injunction is that the Court lacks both general and specific jurisdiction over the Attorney General.

General jurisdiction exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant is "essentially at home" in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Attorney General

---

[5] If the Court concludes that *Younger* abstention is not required, it should alternatively consider whether abstention is warranted under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court held that a court may also abstain from hearing a state court matter in its discretion, to "giv[e] regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817; *see also Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003). Factors to consider include (1) any inconvenience that might result from litigating in a federal forum; (2) which court first obtained jurisdiction over the case; (3) the desirability of avoiding piecemeal litigation; (4) whether federal or state law controls; and (5) whether the state law forum will adequately protect the interests of the parties. *Handy*, 325 F.3d at 352. Here, (1) the California Attorney General is inconvenienced by the federal forum; (2) the Subpoena issued in California under California law; (3) this federal lawsuit creates piecemeal adjudication; (4) the Subpoena compliance is primarily an issue of California law; and (5) the California Superior Court will protect the interests of the parties.

resides in California and represents the State of California as Attorney General with offices throughout California. There is no question, general jurisdiction does not lie.

Specific jurisdiction over a nonresident defendant is assessed by examining the connection between a defendant's conduct and the state. *Walden v. Fiore* 571 U.S. 277, 284 (2014). It is established where three requirements are met: (1) The defendant must have purposefully availed themself of the privilege of conducting activities in the state, invoking the benefits and protections of the laws of the forum; (2) the claim or controversy must relate to or arise out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction must be fair and reasonable and should not offend notions of fair play and substantial justice. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Plaintiff bears the burden of establishing a basis for personal jurisdiction. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990).

ACC alleges that this Court has specific jurisdiction over the California Attorney General because: (1) under Washington D.C.'s long-arm statute, the Attorney General has purposefully established minimum contacts with the forum; (2) the Attorney General committed an intentional tort aimed at ACC in Washington D.C.; and (3) ACC and the FTC are headquartered in Washington D.C., and ACC's subpoena compliance would partially occur in Washington D.C. Pl.'s Complaint at ¶¶ 6–7. None of these arguments is sufficient to grant this Court jurisdiction over the Attorney General in this case.

A.   **When sued in his official capacity, the Attorney General is not a "Person" Under The Long-Arm Statute**

ACC alleges that the Court retains personal jurisdiction over this matter under Washington D.C.'s long-arm statute. Pl.'s Complaint at ¶ 6. That is incorrect. Washington D.C.'s long-arm statute does not include a state Attorney General as a "person" when sued in their official

capacity. *See*, *e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is … no different from a suit against the State itself."); *United States v. Ferrara*, 54 F.3d 825, 831–32 (D.C. Cir. 1995) (D.C.'s long-arm statute does not apply to States). However, the Attorney General is aware that this Court recently rejected another state attorney general's similar argument in *Media Matters for Am. v. Paxton* (*"Media Matters"*), No. 24-CV-147 (APM), 2024 WL 1773197, at *1 (D.D.C. Apr. 12, 2024), so the Attorney General does not elaborate the same arguments further here.

### B.    The Attorney General Has Not Purposefully Availed Himself of Washington D.C.

The Attorney General has not purposefully availed himself of the District of Columbia in a way that could support specific jurisdiction. The Attorney General could not have anticipated being haled into court in Washington D.C. merely for seeking evidence from a potential witness who resides there and conducts significant business within the state of California, which directly impacts California residents. The California Attorney General, in his capacity as the state's chief law officer, issued a subpoena under California law, Cal. Gov't Code § 11180, seeking information relevant to violations of California law (*see* Subpoena at 9 (citing, in particular, the California Unfair Competition Law (Bus. & Prof. Code, §§ 17200 et seq.) and the California False Advertising Law (Bus. & Prof. Code, §§ 17500 et seq.)) to protect Californians from environmental, health, and consumer harms. The particular interest of the Attorney General here lies in industry marketing activities directed at California consumers and residents, and affecting California's environment. Moreover, the enforcement of the subpoena and scope of ACC's privileges are currently before the California Superior Court in Sacramento County in *People v. ACC*.

Moreover, the facts here are distinguishable from the facts in *Media Matters*, and do not support personal jurisdiction. In *Media Matters*, the defendant contracted with a Washington D.C.-based process server to serve the subpoena on the plaintiff. Here, in contrast, the Attorney General did not contract with a D.C.-based business to effect service; instead, he served the Subpoena on ACC by email to ACC's counsel in San Francisco. *See* Pl.'s Complaint, Attachment C. The Declaration of Service explains that:

> On December 6, 2023, I served the attached INVESTIGATIVE SUBPOENA FOR RECORDS AND DOCUMENTS by transmitting a true copy via electronic mail, addressed as follows:
>
>> David L. Anderson
>> SIDLEY AUSTIN LLP
>> 555 California Street, Suite 2000
>> San Francisco, CA 94104
>> E-mail Address: dlanderson@sidley.com

*Id.*

The court in *Media Matters* found service of the subpoena dispositive, stating "it is the act of service that caused the alleged injury" that gave rise to personal jurisdiction in Washington D.C. *Media Matters*, 2024 WL 1773197 at *13. Here, personal jurisdiction does not lie, because there is no basis for finding that the Attorney General availed himself of the privilege of conducting activities in Washington D.C.

ACC further alleges that the Court should find personal jurisdiction because ACC and the FTC are headquartered in Washington D.C., and ACC would conduct its subpoena compliance at least partially in Washington D.C. Pl.'s Complaint at 7. However, the Supreme Court has made clear that without more, a *plaintiff's* contacts with the forum State cannot be "decisive in determining whether the defendant's due process rights are violated." *Walden v. Fiore*, 571 U.S. 277, 279 (2014). This is because the personal jurisdiction inquiry does not focus on the plaintiff.

Instead, the relationship must arise out of contacts that the "defendant *himself* " creates with the forum State. *Id.* at 284 (emphasis in original). ACC's and FTC's headquarters and activities are not sufficient to establish personal jurisdiction. *Id.* ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

### III.   ACC CANNOT ESTABLISH THAT THE CRITERIA FOR A PRELIMINARY INJUNCTION ARE MET

Even if the jurisdictional problems discussed above did not exist, the Court should still deny the preliminary injunction motion. ACC is not entitled to an injunction because it has not established a likelihood of success on the merits or that the equitable considerations favor relief.

### A.   The Attorney General's Lawful Ongoing Investigation Is Not Retaliatory

The Attorney General issued the Subpoena to ACC in the course of an ongoing lawful investigation, seeking information regarding a study that ACC sponsored and published on its website, and chose to reference in a public comment letter. ACC's preliminary injunction motion—and this action, generally—rest on allegations that the Attorney General issued the Subpoena to ACC to retaliate against it for the comments ACC submitted to the FTC. *See* Mot. at 31–33. That is incorrect.

To establish a claim for First Amendment retaliation, a plaintiff must prove: "(1) that he engaged in protected conduct, (2) that the government took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) that there exists a causal link between the exercise of a constitutional right and the adverse action taken against him." *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (internal quotations and citations omitted); *Media Matters*, 2024 WL 1772197 at *19 (citing *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)).

Underlying any retaliation analysis is the question—framed by courts either as part of the second element, the third element, or as a standalone inquiry—whether the government action was "retaliatory" in nature, meaning motivated predominantly by an improper intent to deter speech, rather than by, in our context, a good faith intent to uncover evidence relevant to a legitimate investigation. *See*, *e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Hartman v. Moore*, 547 U.S. 250, 259-64 (2006); *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998).[6] Regardless of where courts fit this consideration into the analysis, it is a critical element: A plaintiff must show that the alleged adverse action "would not have been taken absent the retaliatory motive." *Nieves*, 587 U.S. at 399; *Media Matters*, 2024 WL 1772197 at *19. Because this question—whether the Attorney General issued his Subpoena to ACC with retaliatory motive—goes to the heart of ACC's claims, we begin there.

### 1.    The Attorney General's motive in issuing the Subpoena was not retaliatory

ACC asserts that there can be no motive for the Subpoena other than retaliatory animus on the part of the Attorney General for the comments ACC submitted to the FTC. *See* Mot. at 23 ("ACC's speech and petitioning activity is the reason Bonta issued the subpoena and has engaged in ongoing enforcement activities against ACC."); *Id*. at 24 ("Retaliation must be the basis for Bonta's subpoena, because there is no other basis for it."). These allegations are not only conclusory, but entirely unfounded. ACC cannot show there is any connection between the

---

[6] *See also ExxonMobil Corp. v. Schneiderman*, 316 F.Supp.3d 679, 707 (S.D.N.Y. 2018) (dismissing ExxonMobil's retaliation claim against a state Attorney General because "[i]t is not possible to infer an improper purpose from any of these comments; none of which supports Exxon's allegation that the NYAG is pursuing an investigation even though the NYAG does not believe that Exxon may have committed fraud."); *In re KAHEA*, 150 Haw. 43, 54 (Haw. 2021) ("KAHEA's First Amendment retaliation claim nonetheless fails because KAHEA has not shown that retaliatory animus was a substantial or motivating factor in the Subpoena's issuance.").

Subpoena and the comments ACC submitted to the FTC, and there is none. Nor is there any indicia of retaliatory motive.

To prove that the AG had a retaliatory intent, ACC would have to show, among other things, that the Attorney General did not have a *legitimate* basis for issuing the Subpoena. It cannot do this: The Subpoena was issued by the Attorney General in furtherance of an authorized investigation into suspected violations of state law, in the course of his duties as chief law officer. The Attorney General's investigation, including the Subpoena, is entitled to the "longstanding presumption of regularity accorded to prosecutorial decisionmaking." *American-Arab Anti-Discrimination Comm.,* 525 U.S. at 489–490; *Heckler,* 470 U.S. at 831; *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n,* 892 F.3d 434, 439 (D.C. Cir. 2018); *see also Wayte v. United States,* 470 U.S. 598, 607–608 (1985) (The presumption that a prosecutor has legitimate grounds for the action he takes is one federal courts should not "lightly discard."). As explained below, this presumption is well-founded here, where the Attorney General already has collected evidence in his investigation regarding whether violations were committed. The reason the Attorney General issued the Subpoena was to obtain additional evidence, not to retaliate against ACC. Lee Decl. at ¶¶ 6, 7.

The Subpoena was one of several subpoenas issued as part of an ongoing investigation into whether the plastics industry has intentionally deceived consumers regarding the viability of recycling to encourage and promote the consumption of plastic in furtherance of the industry's commercial interests. Further, ACC disregards relevant and incontrovertible facts that properly contextualize the Subpoena as part of a legitimate investigation that long predates the ACC's comments to the FTC and that has nothing to do with them. Those facts include that the focus of the Subpoena is the Study; the Subpoena does not once mention the FTC or ACC's comments;

the investigation began long before ACC submitted its comments to the ACC; and the Subpoena was issued long after that date. Moreover, ACC touts the study in a press release on its website. The Attorney General would have issued the Subpoena to obtain information regarding the Study even if the Study had not been submitted to the FTC because the Study presented potentially relevant industry information and deception concerning advanced recycling. Lee Decl. at ¶ 5.

As evidence of retaliatory motive, ACC generally relies on the fact that the Attorney General has taken a contrasting policy stance on plastics recycling. This is evident in the opening salvo of its motion, where it states, "[ACC] and Defendant California Attorney General Rob Bonta have opposing opinions on a matter of public policy." Mot. at 1. That fact alone cannot bear the weight ACC puts on it to establish that the Attorney General used his authority with the specific intent to "punish or suppress disfavored expression." *Nat'l Rifle Assoc. v. Vullo*, 602 U.S. ----, 144 S. Ct. 1316, 1326 (2024). The Southern District of New York considered a retaliation claim with facts very similar to those here. In *ExxonMobil Corporation v. Schneiderman*, 316 F.Supp.3d 679 (S.D.N.Y. 2018), the Attorneys General of New York and Massachusetts conducted an investigation into the fossil fuel and petrochemical company ExxonMobil ("Exxon"). That investigation centered on whether Exxon had misled investors and the public about its knowledge of climate change. *Id*. Rather than fully complying with subpoenas issued to it in connection with that investigation, Exxon sued in federal court alleging that the investigation amounted to government retaliation against Exxon for the company's views and policy advocacy related to climate change. *Id.* at 686.

The court noted that "each of the constitutional torts [Exxon] asserted require[d] a plausible inference that the AGs acted not based on a good faith belief that Exxon may have violated state laws, but to retaliate against Exxon for, or to deter Exxon from, speech that is

protected by the First Amendment." *Id.* at 704. The court concluded that "it [wa]s not possible to infer an improper purpose" from the public statements of the Attorneys General "none of which supports Exxon's allegation that the [Attorneys General are] pursuing an investigation even though [they do] not believe that Exxon may have committed fraud." *Id*. at 707. As explained above, the same is true here: The Subpoena was issued in the course of an authorized investigation for which there is a legitimate basis—potential deception by the plastics industry. ACC has not and cannot show that the Attorney General does not actually believe that industry deception has occurred; indeed, the Attorney General already has evidence related to its investigation of state law violations based on the numerous subpoenas it has issued.

The fact that ACC cannot establish that the Attorney General issued the Subpoena to ACC with the *motive* of retaliating against it for its submission to the FTC is fatal to ACC's retaliation claims. *Nieves*, 139 S. Ct. at 1722. But to put a point on it, ACC also cannot establish that the three enumerated elements of a retaliation claim are met.

### 2. ACC cannot meet the objective elements of a retaliation claim

As discussed above, in order to allege a retaliation claim, ACC must meet the three objective criteria explained in *Doe v. District of Columbia*. ACC has not done so. As to the first element, the Attorney General does not dispute that ACC, like everyone else, has a protected right to petition the government. But nothing about the Attorney General's Subpoena invades or frustrates that right. The focus of the Subpoena is the Study, not ACC's comments to the FTC. ACC commissioned and has publicly promoted the Study in furtherance of its members' commercial interests. (The portion of ACC's website that promotes "Advanced Recycling" on

behalf of the plastics industry links directly to ACC's own press release touting the Study.[7]) The Attorney General has asked for information and records that relate to the Study because the Study appears to support potentially deceptive commercial speech separate and apart from ACC's participation in an FTC comment process. The Constitution permits the Attorney General to investigate and regulate deceptive commercial speech. *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993) ("The Constitution … affords a lesser protection to commercial speech than to other constitutionally guaranteed expression."); *Riggs Inv. Mgmt. Corp. v. Columbia Partners, L.L.C.*, 966 F. Supp. 1250, 1268 (D.D.C. 1997) (A party can be constitutionally liable for statements that are "likely to mislead or confuse consumers," even if the statements are "literally true."); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748, 771–772 (1976) ("[T]he First Amendment … does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely."). Thus, the Attorney General does not concede that ACC has met the first element of the retaliation analysis here.

Nor is the second element met. The evidence neither shows that the government "took some *retaliatory* action," nor that the action the Attorney General did take—issuing the Subpoena—was "sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again." ACC asserts that it and its members' activities have been chilled as a result of the Attorney General's actions. Mot. at 23. But as will be discussed below, those assertions are not objectively reasonable. *Media Matters*, 2024 WL 1773197 at *15 ("The chill must be

---

[7] See American Chemistry Council, *Advanced Recycling*, available at https://www.americanchemistry.com/better-policy-regulation/plastics/advanced-recycling (last visited June 24, 2024).

'objectively reasonable'"), citing *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2737 (2022).

Nor has ACC met the third element of the *Doe* analysis. To succeed on a retaliation claim, "a plaintiff must establish that there exists a causal link between the exercise of a constitutional right and the adverse action taken against him." *Doe*, 796 F.3d at 106 (D.C. Cir. 2015); *Media Matters*, 2024 WL 1773197 at *17. The standard is clear: "To satisfy the causation link, a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action." *Aref v. Holder*, 774 F.Supp.2d 147, 169 (D.D.C. 2011) (citing *Hartman v. Moore,* 547 U.S. 250, 256 (2006)).[8] To prevail under this analysis, then, ACC must show that its submission to the FTC was the "but for" cause of the Subpoena.

That conclusion is foreclosed not only by sworn testimony to the contrary (*see supra*, Lee Decl. at ¶ 7), but by indisputable facts: The Attorney General publicly announced the investigation on April 28, 2022, and issued a preservation letter to ACC on that date. Those events occurred eight months before the FTC announced that it was revising the Green Guides, and one year before ACC submitted its comments to the FTC, in April 2023. Further, the Attorney General did not issue the Subpoena until December 2023, seven months after ACC submitted its comments. These facts not only do not support but controvert any inference that

---

[8] The causation element is alternatively framed as requiring a nexus between the actor's *motive* and the claimant's *injury*. *See, e.g.*, *Media Matters*, 2024 WL 1773197 at *19 ("To establish causal link, '[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'") (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). That causation, too, is lacking here, because it assumes that retaliatory motive has been established. As discussed above, ACC cannot establish retaliatory motive here, nor has it established injury.

.

ACC's submission of comments to the FTC was the but-for cause of the Subpoena. This is in stark contrast to the facts at issue in *Media Matters*, in which the defendant official "opened an investigation in response to [the plaintiff's] protected media activities," and declined to provide any evidence "explain[ing] his reasons for opening the investigation," thus "conced[ing] the requisite causal link." *See* 2024 WL 1773197 at *19. Here, there is simply no indicia—subjective, objective, or otherwise—of retaliation. Instead, the Attorney General began the investigation into the industries' deceptions regarding plastic recycling before the Study was issued.

**B.    ACC is Not Likely to Establish that the First Amendment Applies to Protect the Withheld Documents Under the Circumstances Here, Where the Government Interest in the Documents is Relatively Significant**

Separate from the First Amendment retaliation claim, ACC asserts that the documents at issue are protected from disclosure by its First Amendment rights to free speech and free association. In support, ACC submits declarations purporting to attest that ACC and its members' speech and activities will be chilled if ACC is compelled to produce the documents. Whether compliance with the Subpoena would chill members' speech and association is only part of the analysis. This Court must also consider the government interest in the documents. "When facing a constitutional challenge to a disclosure requirement, courts … balance the burdens imposed on individuals and associations against the significance of the government interest in disclosure and consider the degree to which the government has tailored the disclosure requirement to serve its interests." *Am. Fed'n of Lab. & Cong. of Indus. Organizations*, 333 F.3d at 176. In that balancing test, the scale tips sharply in the Attorney General's favor.

On ACC's side of the scale, the "burdens" that would be imposed on ACC and its members by being required to comply with the Subpoena are not objectively significant. For one, the Subpoena does not purport to restrain or control ACC or its members' activities; rather, it

requires the disclosure of documents. Moreover, the documents regard a wholly past activity—ACC's commissioning of a study that purports to reflect consumer attitudes towards advanced recycling, and any input ACC or its members had into the study's design or execution.[9] The Study has concluded and ACC has promoted the Study to the public, so presumably communications regarding the Study's development and execution would not be continuing at any rate; it is a closed universe. There is no basis for ACC or its members to feel that they cannot continue to engage in lawful activities, and to communicate freely around those activities. Indeed, the Study remains on the ACC website. To the extent ACC and its members choose to limit their communications or activities going forward because of the Subpoena, that is their prerogative, but the Subpoena does not require it. Any "burdens" are thus voluntary and to an extent, illusory. It follows that they are relatively weightless in the analysis. *Media Matters*, 2024 WL 1773197 at *15 ("The chill must be 'objectively reasonable'").

Given that ACC's burden is light, the bar is relatively low for the Attorney General to establish the primacy of the government's interest in obtaining the requested information. Investigations by government agencies are presumed to be conducted in the public interest. "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

Starting from that position of relative consequence, the Attorney General's interests here are particularly "significant": At issue is what is believed to be a decades-long campaign of

---

[9] Any efforts to characterize or paraphrase the requests set forth in the Subpoena in this brief should not be interpreted to modify the Subpoena in any way.

deception and fraud perpetrated against the public that has resulted in myriad harms—the true magnitude of which we are only beginning to understand—to California's citizens and natural resources. The California Attorney General has not only an interest but a responsibility to police consumer deception and violations of other laws enacted to safeguard against such harms. *See* Cal. Const. art. V, § 13 ("It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced"). The Attorney General is well within his powers to issue subpoenas "on suspicion that the law is being violated," or even for "assurance that it is not." *Brovelli*, 56 Cal.2d at 529; *Virginia State Bd. of Pharmacy*, 425 U.S. at 771–772 (1976) ("[T]he First Amendment … does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely.").

Disclosure is all the more warranted in this case because the Attorney General's document requests are precisely tailored to the needs of the Attorney General's investigation. His requests relate to the events surrounding a single activity—the development and execution of the Study— that occurred over a finite period of time. ACC has relied on this "independent" Study to further its members' commercial interests—not just to the FTC, but publicly, as evidenced by its April 20, 2023 press release, which touts that "*Advanced Recycling Is Recycling, 88% of Americans Say in Survey.*"[10] ACC presumably stands behind the integrity of this Study, and should be prepared to do so openly. Through his Subpoena, the Attorney General seeks documents to hold ACC to that task. This is in stark contrast to the broad scope of materials demanded of the plaintiff in *Media Matters*, which related to the plaintiff's business operations as a whole.

**C.    The ACC will not suffer irreparable harm while the merits of its claims are being litigated in state court**

---

[10] *See* ACC, *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, *supra*, n. 3.

Not only will ACC not suffer "irreparable" harm while the merits of its claims are being litigated in this forum, it will suffer *no* harm.

The ACC appears to believe that, without this Court's intervention, the Attorney General will run roughshod over ACC's and its members' constitutional rights. *See*, *e.g.*, Mot. at 13 ("… Bonta's demand letter and the subsequent meet and confer made clear that Bonta *would not respect ACC's constitutional privileges*," emphasis added.) More accurately, what ACC might have said is, "… Bonta's demand letter and the subsequent meet and confer made clear that Bonta *would pursue enforcement of the subpoena by filing a petition in state court so that the parties could litigate resolution of their dispute*." Again, giving ACC the benefit of the doubt, it must be that ACC simply misunderstands the subpoena enforcement process. ACC has objected to the Subpoena. On that basis, it need not produce the documents, unless and until the state court—after hearing the parties' respective arguments regarding the merits of ACC's objections—issues an order compelling production. Even then, ACC can appeal that order. In the meantime, the status quo prevails. In short, the Subpoena is not self-executing: ACC cannot and will not be punished for refusing to comply with it, it can only be sanctioned for refusing to comply with a court order compelling production. *See Reisman v. Caplin*, 375 U.S. 440 (1964) (dismissing pre-enforcement challenge to subpoena issued by the IRS because the subpoena was not self-executing); *see also U.S. News & World Rep.*, 2024 WL 2031635 at *12 (with respect to subpoenas that are not self-executing, "an entire set of legal procedures would be set in motion [. . .] in state court before they could be enforced").

In an effort to manufacture harm where there is none, and thus to obtain this Court's preliminary injunction of the enforcement proceedings in state court, ACC points first to *future* harm that might result *if* that court does order ACC to produce the documents. For example,

24

expressing concern that their comments might be "taken out of context," one declarant stated, "*If the ACC must produce non-public documents in connection with this subpoena, its members will be less willing to communicate with ACC in the future for fear of similar unjustified disclosures.*" The declarant further stated, "*Should* [redacted] identity be revealed in this matter, we *will* also rethink our participation in future ACC working groups developing advocacy for fear of similar disclosure-based threats." ACC disregards that the only reason a court would issue such an order—and thus the only reason these future speculative harms would come to pass—is because ACC's privilege claims *lack merit* and thus it is not entitled to withhold the documents in the first place.

Finally, to the extent ACC asserts harm on the basis that the activities of ACC and its members have already been chilled, such "chill" is objectively unreasonable. *Edgar*, 2 F.4th at 310; *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding allegations of a subjective "chill" are not an adequate substitute for "present objective harm or a threat of specific future harm"). Moreover, many of the assertions that ACC makes in support of its chill claim are not legally or factually supported.

ACC first asserts that the very existence of the Attorney General's investigation generates a chill on others, whomever and wherever they may be, who might wish to associate with ACC and participate in its advocacy free from government oversight. Mot. at 30; Decl. 16-3 at ¶ 20; Decls. 17-1 at ¶ 20, 17-2 at ¶ 10, and 17-3 at ¶ 16. Yet a cognizable chill effect does not arise "merely from the individual's knowledge that a governmental agency was engaged in certain [investigative and data-gathering] activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*,

593 F.2d 1030, 1052 (D.C. Cir. 1978). ACC cannot rely solely on this generalized yet speculative apprehension that the Attorney General may at some future date use information in some way that would cause harm to ACC.

ACC's next claim, simply stated, is that the mere issuance of the Attorney General's Subpoena caused ACC to self-censor. Mot. at 29; ACC Decl., 16.3, ¶¶ 16, 17, 18, 17.2, ¶ 6. ACC is unable to point to a single instance of retaliation or intimidation, and instead only refers to a subpoena issued pursuant to a lawful investigation, which as discussed above is not self-executing and will be fully litigated in state court. Again, ACC cannot manufacture harm "merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

Indeed, as the D.C. Circuit has recognized, "All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself." *United Presbyterian Church v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984); *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C. 2012) ("It is well-settled that a preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted.").

### D.   The balance of equities and the public interest disfavor ACC's request for an injunction

The balance of equities and the public interest—which "merge" when the government is the opposing party, *Karem*, 960 F.3d at 668—tip sharply in favor of the Attorney General.

Several of the factors that should go into this Court's consideration of this element have already been discussed. They include that the Attorney General, in issuing the Subpoena, has the

weight of the California constitution and California law behind him. *See* Cal. Const. art. V, § 1; Cal. Gov't Code § 11180; *Brovelli*, 56 Cal.2d at 529. The Attorney General issued the Subpoena in furtherance of his obligations under those authorities to investigate suspected violations of state law. His actions are presumptively in the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

These outweigh ACC's interests in preliminary relief. The Subpoena is not self-enforcing and ACC's rights are protected; ACC and its members cannot be compelled to disclose documents unless and until a state court issues an order to that effect, after ACC has had a full and fair opportunity to present its constitutional objections. And any present "chill" experienced by ACC and its members is self-inflicted and not objectively reasonable so as to present a First Amendment obstacle to the Attorney General's law enforcement actions. *Edgar*, 2 F.4th at 310; *Virginia State Bd. of Pharmacy*, 425 U.S. at 771–772. The First Amendment "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." In short, there is no harm—and no inequity—to ACC. The Court should deny this motion and allow the ongoing state court proceeding to address ACC's legal concerns.

//

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion for preliminary injunction.


Dated June 25, 2024                    Respectfully submitted,
                                       ROB BONTA
                                       *Attorney General of California*
                                       DANIEL A. OLIVAS
                                       ED OCHOA
                                       Senior Assistant Attorneys General
                                       VANESSA MORRISON
                                       Supervising Deputy Attorney General

                                       /s/ *Elizabeth B. Rumsey*
                                       ELIZABETH B. RUMSEY
                                       KATHERINE SCHOON
                                       *Deputy Attorneys General*
                                       *Attorneys for Defendant Rob Bonta, in his Official*
                                       *Capacity as Attorney General of California*

28