**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN CHEMISTRY COUNCIL, INC.,

        *Plaintiff*,

v.

ROB BONTA, in his Official Capacity as
Attorney General of California,

        *Defendant*.

Case No. 1:24-cv-01533-APM

HON. AMIT P. MEHTA

**REPLY IN SUPPORT OF AMERICAN CHEMISTRY COUNCIL'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 3

     A.   ACC Will Likely Prevail On The Merits of Its Claims. ................................... 3

         1.   Bonta's Actions Are Prohibited Under the U.S. and California Constitutions Because They Constitute Retaliation. ................................................................................. 3

             i.    ACC's Speech, Association, and Participation in the FTC Comment Process Are Constitutionally Protected. ................................................ 4

             ii.   Bonta's Actions Would Deter A Person of Ordinary Firmness From Speaking Again. ...................................................................................... 7

             iii.  Bonta Subpoenaed ACC Because of ACC's Protected Advocacy and Petitioning. ............................................................................................... 9

         2.   Bonta Cannot Compel ACC to Produce Constitutionally Privileged Documents. ....... 12

         3.   No Threshold Issue Precludes This Court From Reaching The Merits. ...................... 15

             i.    *Younger* Abstention Does Not Apply To State Court Actions That Merely Seek to Enforce an Investigatory Subpoena ......................................... 15

                 (a)   The Middlesex Factors Weigh Against Abstention. ................................. 16

                 (b)   The Bad Faith Or Harassment Exceptions Apply. .................................... 17

             ii.   All of the *Colorado River* Factors Weigh Against Abstention ............................ 18

             iii.  Consistent With *Media Matters*, The Court Has Personal Jurisdiction Over Bonta. .............................................................................................. 20

     B.   Preliminary Injunctive Relief Is Necessary To Protect ACC From Irreparable Harm. ........ 22

     C.   The Balance Of Equities And Public Interest Considerations Strongly Support Preliminary Relief. ....................................................................................... 24

III.  CONCLUSION ...................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACT-UP v. Walp*,
 755 F. Supp. 1281 (M.D. Pa. 1991) ............................................................24

*AFL-CIO v. FEC*,
 333 F.3d 168 (D.C. Cir. 2003) ............................................................9, 12

*\*Ams. for Prosperity Found. v. Bonta*,
 594 U.S. 595 (2021) ........................................................2, 13, 15, 18

*Atkinson v. Grindstone Cap., LLC*,
 12 F. Supp. 3d 156 (D.D.C. 2014) ............................................................19

*Buckley v. Valeo*,
 424 U.S. 1 (1976) ............................................................9

*Citizens United v. FEC*,
 558 U.S. 310 (2010) ............................................................5

*Clark v. Libr. of Cong.*,
 750 F.2d 89 (D.C. Cir. 1984) ............................................................23

*Constantine v. Rectors & Visitors of George Mason Univ.*,
 411 F.3d 474 (4th Cir. 2005) ............................................................7

*CTS Corp. v. EPA*,
 759 F.3d 52 (D.C. Cir. 2014) ............................................................18

*Dempsey v. McQueeney*,
 387 F. Supp. 333 (D.R.I. 1975) ............................................................18

*Edgar v. Haines*,
 2 F.4th 298 (4th Cir. 2021) ............................................................8

*\*Edge Inv., LLC v. D.C.*,
 927 F.3d 549 (D.C. Cir. 2019) ............................................................18, 19

*ExxonMobil Corp. v. Schneiderman*,
 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ............................................................11

*FEC v. Machinists Non-Partisan Political League*,
 655 F.2d 380 (D.C. Cir. 1981) ............................................................13

ii

*In re Grand Jury Subpoena (Miller)*,
  438 F.3d 1141 (D.C. Cir. 2006) ....................................................................9

*Greatness v. FEC*,
  831 F.3d 500 (D.C. Cir. 2016) ....................................................................22

*GSS Grp. Ltd v. Nat'l Port Auth.*,
  680 F.3d 805 (D.C. Cir. 2012) ....................................................................18

*Harris v. Quinn*,
  573 U.S. 616 (2014) ......................................................................................6

*Hartman v. Moore*,
  547 U.S. 250 (2006) ....................................................................................10

*Karem v. Trump*,
  960 F.3d 656 (D.C. Cir. 2020) ..............................................................17, 24

*Laird v. Tatum*,
  408 U.S. 1 (1972) ................................................................................7, 8, 23

*Lozman v. City of Riviera Beach*,
  585 U.S. 87 (2018) ........................................................................................9

*M&A Gabaee v. Cmty. Redevelopment Agency of L.A.*,
  419 F.3d 1036 (9th Cir. 2005).......................................................................6

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) ....................................................................................14

*Media Matters for Am. v. Paxton*,
  No. 24-CV-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024)....................*passim*

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ..............................................................................15, 17

*NAACP v. Ala. ex rel. Patterson*,
  357 U.S. 449 (1958) ............................................................................*passim*

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010)................................................................13, 24

*Playboy Enters., Inc. v. Meese*,
  639 F. Supp. 581 (D.D.C. 1986) ...................................................................8

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
  No. 22-C-1322, 2024 WL 36982 (N.D. Ill. Jan. 3, 2024) .............................6

*Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*,
    593 F.2d 1030 (D.C. Cir. 1978) ...................................................................23

*Safari Club Int'l v. Salazar*,
    852 F. Supp. 2d 102 (D.D.C. 2012) .........................................................23

*Show-World Ctr., Inc. v. Walsh*,
    438 F. Supp. 642 (S.D.N.Y. 1977).............................................................18

*Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*,
    27 F.4th 886 (3d Cir. 2022).......................................................................16

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .....................................................................................5

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ......................................................................15, 16, 17

*United Presbyterian Church in the U.S.A. v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984) ..............................................................8, 23

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) .....................................................................................5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000).....................................................................8

*Younger v. Harris*,
    401 U.S. 37 (1971) ..............................................................................*passim*

*Youssef v. Schuette*,
    No. 19-1225, 2019 WL 11753787 (6th Cir. Sept. 17, 2019) .....................16

## Other Authorities

FTC, *Talking Trash at the FTC: Recyclable Claims and the Green Guides* (May 23,
    2023), https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-
    Recyclable-Claims-and-the-Green-Guides.pdf ........................................19

Press Release, Cal. OAG, *Attorney General Bonta Petitions Court to Compel Plastics
    Indus. Ass'n & Am. Chem. Counsel to Fully Comply with Outstanding Investigative
    Subpoenas* (May 28, 2024), https://oag.ca.gov/news/press-releases/attorney-
    general-bonta-petitions-court-compel-plastics-industry-association-and .....14

## I.     INTRODUCTION

ACC's participation in the FTC's comment process lies at the heart of the First Amendment's protections. Bonta does not contest this. Nor does he contest that the documents he seeks are First Amendment privileged because disclosing them would discourage the exercise of ACC's First Amendment rights, revealing the identities of the ACC members who participated in the FTC process, as well as private communications between ACC and its members concerning political strategy on an unsettled issue of public importance (on which ACC and Bonta disagree). In other words, this is a case in which weighty First Amendment interests are undoubtedly at stake, and Bonta offers no sufficiently important counterweight.

In fact, Bonta's response does not take ACC's First Amendment interests seriously. First, he tries to avoid ACC's claim of retaliation by saying that, despite his prior statements, his subpoena to ACC was not based on ACC's FTC submission, but on ACC's "public claims" about its FTC submission. Opp. 2. Bonta's new contention (undermined by his prior statements) is that he decided to pursue ACC once ACC spoke publicly about its participation in the political process; at that point, he claims, ACC's internal documents relating to its participation became fair game. That's a radical position that is flatly inconsistent with decades of precedent making clear that public advocacy about the political process is no less protected than participation in the process. If Bonta meant to retaliate for a press release rather than a comment letter, the First Amendment also bars that retaliation.

Bonta also says the Court should refuse to enter an injunction because when he wields his official position in an attempt to force an organization to turn over its members' identities and communications the burden he imposes is "*relatively weightless.*" Opp. 21–22. Bonta argues that this is so because a compelled "disclosure of documents"—even First Amendment privileged

ones—"does not purport to restrain or control ACC or its members' activities" and therefore imposes no "objectively significant" burdens on an association. *Id.* Again, this is remarkable. As the Supreme Court recently reminded Bonta in rejecting another of his attempts to compel non-profit organizations to disclose member identities, it is well-established that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quoting *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958)). That is why courts have recognized that in cases like this one, the chill on speech, association, or petitioning activity caused by retaliatory or unlawful compulsory government action is a matter of urgent and significant concern. *See Media Matters for Am. v. Paxton*, No. 24-CV-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024). Every day that ACC's First Amendment rights are burdened matters.

Bonta points to no real interest on the other side of the scales. This is dispositive on at least ACC's First Amendment privilege claim. Bonta makes almost no effort to explain how the communications targeted by his subpoena—focused on the identities of those involved in creating the constitutionally protected petitioning activity and public advocacy that he opposes— could conceivably advance a "sufficiently important governmental interest" or how the subpoena is "narrowly tailored" to that interest. *Ams. for Prosperity Found.*, 594 U.S. at 608–09. Instead of attempting to clear that demanding bar, Bonta claims "the bar is relatively low for [him]," and invokes the word "investigation" as if it gives him unfettered power to subpoena First Amendment privileged documents "merely on suspicion that the law is being violated" or "even just because [he] wants assurance that it is not." Opp. 3, 22. As Bonta must know, that is not the standard. *Ams. for Prosperity Found.*, 594 U.S. at 610. If it were, *NAACP* would have turned out

2

differently. The Alabama Attorney General too professed an interest in enforcing the requirements of state law. *Id.* at 464.

Bonta does not argue that ACC's speech was false or misleading, apparently abandoning his prior position (and statements to the press) that ACC's speech and petitioning activity is not entitled to First Amendment protection because it is false. He offers no evidence of any legal violation by anyone, much less ACC. And he fails to articulate any specific reason to believe the documents he seeks would tend to prove such a violation. Instead, he offers only that ACC's Survey "*may* relate to ongoing unlawful consumer deception." Opp. 2; *see also* Opp. 2–3 (Bonta is investigating "*whether* and to what extent the plastics industry … *may be* actively deceiving the public about the infeasibility of plastics recycling." (emphases added)). Bonta's interest in a fishing expedition cannot justify his intrusion into ACC's undisputedly privileged documents.

Without a persuasive response to ACC's claims on the merits, Bonta throws up procedural speed bumps in an attempt to keep the Court from reaching the merits: According to Bonta, the Court should abstain from considering the case and lacks personal jurisdiction. As explained below, those arguments lack substance.

ACC is likely to prevail on the merits, and the remaining injunction factors all favor ACC. The Court should enter a preliminary injunction to protect ACC's First Amendment rights and preserve the status quo while this case is litigated.

## II.   ARGUMENT

### A.   ACC Will Likely Prevail On The Merits of Its Claims.

#### 1.   Bonta's Actions Are Prohibited Under the U.S. and California Constitutions Because They Constitute Retaliation.

The parties agree that to prevail on a claim of retaliation for First Amendment activity, ACC "must show that (1) [it] engaged in conduct protected under the First Amendment; (2) 'the

defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action.'" *Media Matters*, 2024 WL 1773197, at *17 (quoting *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016)); Opp. 14. Bonta's opposition does not disturb ACC's showing that it is likely to establish each factor.

> **i.    ACC's Speech, Association, and Participation in the FTC Comment Process Are Constitutionally Protected.**

ACC's speech, association, and petitioning are protected by the First Amendment, as Bonta does not dispute. Opp. 18. Instead, Bonta claims that his subpoena does not "invade or frustrate" ACC's "protected right to petition the government" because it does not target ACC's participation in the FTC process. Bonta says "the focus of the subpoena was the Study," and ACC's reliance on that Study "to support public claims that further the commercial interests of ACC's members," not just its comments to the FTC. Opp. 2; *id.* at 17 ("ACC touts the study in a press release on its website."); *id.* at 18 ("ACC … has publicly promoted the Study in furtherance of its members' commercial interests."); *id.* at 18–19 (noting that ACC "promotes 'Advanced Recycling'" on its website and links to its "press release touting the Study").

Bonta's change of tack is not credible, given his explicit statements linking the subpoena to ACC's participation in the FTC process. In his state court pleadings, Bonta asserted that "ACC put the Study into issue when it submitted the Study and 'data' ***to the FTC***."[1] He emphasized that "***ACC submitted the results of an ACC funded study ... to the FTC*** in an attempt to modify the existing definition of recycled content" in his attempt to enforce the subpoena in state court.[2] He criticized the "conclusion[s]" ACC drew from the Survey in its FTC

---

[1] Dkt. 16, Ex. E at ¶¶ 46, 28; *see also id.* at ¶ 27.

[2] *Id.*

comments.[3] And if any of that were unclear, Bonta made the connection express: "Although ACC is legally entitled to petition the FTC for changes to the Green Guides, *the law does not protect ACC's provision of false facts and data to the FTC. This potentially false and fraudulent speech is the speech to which the Attorney General is seeking access[.]*"[4]

Even now, Bonta continues to rely on the fact that ACC "chose to reference [the Survey] *in a public comment letter*" to the FTC. Opp. 14. And Bonta's newfound effort to separate the Survey from ACC's participation in the FTC process is puzzling. The Survey is a key component of ACC's contribution to that process. The FTC asked for evidence of the public's understanding. ACC commissioned the Survey to respond to the FTC's request. ACC's press release discussed the Survey in the context of that process.[5] And, as noted, Bonta himself identified the submission of the Survey to the FTC as a key reason for his subpoena.

Even if credited, Bonta's backpedal away from his earlier explicit focus on ACC's submissions to the FTC cannot resolve his First Amendment problem. ACC's public speech about the contents of its FTC comment is advocacy on a matter of public concern. And public speech about the political process is no less protected than participation in the process, given "the confidence and stability in civic discourse that the First Amendment must secure." *See Citizens United v. FEC*, 558 U.S. 310, 349, 355 (2010). Nor do the First Amendment's protections recede when speech comes from those "whose business and livelihood" are impacted by the outcome of the political process. *United States v. United Foods, Inc.*, 533 U.S. 405, 410 (2001); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (recognizing "a great deal of vital expression" protected by the First Amendment "results from an economic motive"); *NAACP*, 357 U.S. at

---

[3] *Id.* at ¶¶ 31–33.
[4] *Id.*
[5] *See* Press Release (with subheading "Consumer Survey Based on FTC Green Guides Questions, Serves as Basis for ACC Comments").

460–61 (First Amendment protects an association "whether the beliefs sought to be advanced by association pertain to political, *economic*, religious, or cultural matters" (emphasis added)); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, No. 22-C-1322, 2024 WL 36982, at *1 (N.D. Ill. Jan. 3, 2024) (holding the First Amendment right to association "applies to trade associations as well" and refusing to require trade association to produce protected materials).

Bonta suggests ACC's speech is entitled to lesser protection because it is "commercial speech." Opp. 19. That is flatly wrong for two reasons. ACC's speech on a matter of public concern, whether through a press release or in comments to a federal agency, is not "commercial speech." Commercial speech is "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (quotation omitted). ACC's Survey and its FTC comments and press release discussing the Survey do not propose a commercial transaction. They provide information the FTC requested on a contested public issue and lay out ACC's interpretation and advocacy based on the data. Indeed, ACC is a trade association organized to engage in public advocacy; it does not sell anything.[6]

And even if ACC's speech were commercial speech, commercial speech is protected by the First Amendment. *Sorrell*, 564 U.S. at 567. The First Amendment does not allow Bonta to retaliate against commercial speech, particularly where he has not even attempted to make a showing that the speech was in any way misleading, any more than it allows him to retaliate against political speech. *See id.* at 579 (state law restricting commercial speech violated the First Amendment when the state had not shown the speech was "false or misleading" and the state's

---

[6] Bonta says the Survey "appears to support potentially deceptive commercial speech." Opp. 19. He does not explain what this other potentially deceptive speech may be or why it may be deceptive. If Bonta is suggesting that ACC's speech is not protected by the First Amendment because it could be cited to support some *other* commercial speech that may be deceptive, that novel theory is entirely inconsistent with First Amendment principles. Practically any statement could be suppressed if that were the standard.

interest in burdening the speech "turn[ed] on nothing more than a difference of opinion"). And Bonta has made no attempt to show ACC's speech was misleading. He has no response to ACC's argument that its speech cannot be "false" when ACC provided the underlying data that allows readers to assess the Survey for themselves. Dkt. 16-1 at 19–20.

### ii.   Bonta's Actions Would Deter A Person of Ordinary Firmness From Speaking Again.

Bonta takes the extraordinary position that this element is not met because "the Subpoena does not purport to restrain or control ACC or its members' activities; rather, it requires the disclosure of documents." Opp. 22. It is ACC's "prerogative" to curtail its First Amendment activities because of the subpoena, Bonta asserts, "but the Subpoena does not require it." *Id.* Bonta's argument is way off the mark.

Courts have long recognized that the First Amendment is not nearly so limited. Even in 1958, it was "hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association" as direct governmental constraint. *NAACP*, 357 U.S. at 462. The First Amendment therefore restricts government retaliation that "chills," rather than outright bans, speech, petitioning, or associational activities. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). As even the cases Bonta relies on recognize, "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental [actions] *that fall short of a direct prohibition against the exercise of First Amendment rights*." *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (emphasis added). And "self-censorship is enough" to constitute First Amendment injury. *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021); *see also Media Matters*, 2024 WL 1773197 at *15 ("a chilling effect on speech can itself be the harm.").

Bonta relies largely on *Laird*, but, *Laird* "offers Defendant no help." *Media Matters*,

2024 WL 1773197, at *17. In *Laird*, plaintiffs claimed that the mere existence of "an Army data-gathering system chilled their First Amendment rights." *Id.* This "amounted to a 'disagree[ment] with the judgments made by the Executive Branch,' and [plaintiffs] had presented only an amorphous 'subjective chill' and not 'a claim of specific present objective harm or a threat of specific future harm.'" *Id.* (quoting *Laird*, 408 U.S. at 13–14); *see also United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) (*Laird* controlled when plaintiffs challenged a general policy that "issue[d] no commands or prohibitions to these plaintiffs"). That is not this case. ACC does not challenge a generally applicable public policy judgment. Bonta has directed a subpoena to ACC and is attempting to enforce it. As this Court has already recognized, "potential punitive consequences" like those ACC faces, "as well as possible judicial intervention to enforce the [subpoena], make [a] claim of chilled expression objectively reasonable." *Media Matters*, 2024 WL 1773197, at *18.

The Court's holding in *Media Matters* is consistent with the wealth of caselaw establishing that the mere "threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" can be sufficient to chill protected speech. *Playboy Enters., Inc. v. Meese*, 639 F. Supp. 581, 585 (D.D.C. 1986); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (government officials "unquestionably chilled the plaintiffs' exercise of their First Amendment rights" through investigation even though the officials "did not … seize the plaintiffs' materials, and … ultimately decided not to pursue … sanctions"). Here, like in *Media Matters*, ACC has "offered ample evidence of injury, so the fact that the [subpoena] is not self-enforcing is of no moment." *Media Matters*, 2024 WL 1773197, at *16.[7]

And, like in *Media Matters*, compelled production of ACC's communications with its

---

[7] *See* Dkt. 16, Ex. F at ¶¶ 16–21, 23.

members would "constitute a significant intrusion" that would undercut important First Amendment values. *Id.* at \*18. In *Media Matters*, the First Amendment protected against compelled production of a reporter's resource materials—materials which are not privileged under the First Amendment. *See In re Grand Jury Subpoena (Miller)*, 438 F.3d 1141, 1145 (D.C. Cir. 2006). Here, ACC's communications are clearly privileged under the First Amendment because they concern ACC's confidential associational discussions, which took place in service of its petitioning to the FTC and (per Bonta's new focus) ACC's subsequent speech to the public on the matter of public concern that is under consideration by the FTC. When the government "compels public disclosure of an association's confidential internal materials, it intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177–78 (D.C. Cir. 2003) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)). The Supreme Court has therefore "repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley*, 424 U.S. at 64. There is no basis to Bonta's argument that First Amendment problems recede because the subpoena simply "requires the disclosure of documents" rather than banning association outright. Opp. 22. And that is why Bonta cannot cite any supporting authority for that argument.

### iii.   Bonta Subpoenaed ACC Because of ACC's Protected Advocacy and Petitioning.

Bonta claims to have acted with a pure heart, but that claim is his to establish as a matter of proof—and in the face of evidence suggesting otherwise. Stepping back, the ultimate question on this factor will be whether Bonta would have taken the adverse action but-for ACC's constitutionally protected activity. It is ACC's burden to show "that the retaliation was a substantial or motivating factor" behind the adverse action. *Lozman v. City of Riviera Beach*, 585

U.S. 87, 97, 101 (2018). If ACC makes that showing, Bonta "can prevail only by showing that [he would have taken the adverse action] without respect to retaliation." *Id.*[8] ACC has shown that it is likely to carry its burden, and Bonta is unlikely to be able to carry his own.

At this early stage of litigation, the best evidence of a causal link between the subpoena and ACC's exercise of constitutional rights comes from Bonta himself. Bonta has said in California court filings that "[a]lthough ACC is legally entitled to petition the FTC for changes to the Green Guides, the law does not protect ACC's provision of false facts and data to the FTC. This potentially false and fraudulent speech is the speech to which the Attorney General is seeking access[.]"[9] That is the causal link right there, in black and white. "ACC's provision of [supposedly] false facts and data to the FTC" is, in Bonta's own words, "the speech" that Bonta is targeting with the subpoena.

While Bonta's deputy now claims that Bonta "would have issued the Subpoena even if ACC had not submitted the Study to the FTC[,]" Dkt. 24, Decl. of J. Lee ¶ 7 ("Lee Decl."), this conclusory and self-serving assertion is not sufficient to defeat ACC's showing. Mr. Lee's declaration does not acknowledge Bonta's contrary statements in the California action, let alone attempt to reconcile them with Mr. Lee's statements to this Court. Just as troubling, Mr. Lee's declaration does not claim that Bonta would have issued the subpoena but for ACC's equally protected public advocacy regarding the Survey. Bonta has made no meaningful attempt to show that the subpoena arose out of independent, good faith efforts to achieve non-retaliatory ends. The absence of evidence or reasoning supporting the subpoena confirms Bonta's retaliatory

---

[8] *Hartman v. Moore*, 547 U.S. 250, 256 (2006), which addresses retaliatory prosecutions, cannot govern, because there is no "probable cause" standard under California law for issuing a subpoena. Regardless, here, ACC would still prevail, because Bonta does not dispute that there was no probable cause supporting his subpoena.

[9] Dkt. 16, Ex E at ¶ 46.

motivation.

Bonta also makes a timing argument: he says the subpoena could not have been retaliatory because he opened his investigation into the plastics industry *before* ACC's FTC comments. Opp. 20–21. That is a red herring. The retaliation at issue here is not Bonta's overarching investigation. ACC's claim is that the retaliatory actions are Bonta's subpoena demanding ACC turn over its protected documents and his efforts to enforce it. Bonta has no timing argument for these actions. The subpoena issued *after* ACC submitted its comments to the FTC. The short period between ACC's FTC comments and issuance of the subpoena also does not suggest the subpoena was not motivated by ACC's speech and petitioning activity, especially because the subpoena itself and Bonta's subsequent enforcement efforts make explicit that it was the submission and public discussion of the Survey that prompted the subpoena.

Finally, Bonta relies heavily on *ExxonMobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 707 (S.D.N.Y. 2018). But there are significant differences between that case and this one. For one, the documents the state attorneys general sought in *ExxonMobil* were not First Amendment-protected associational materials. *See Id.* at 687. Further, Exxon did not point to specific speech or other First Amendment activity that it engaged in which the attorneys general were retaliating against; instead it pointed to what it perceived to be general animus on the part of the state attorneys general. And finally, the attorneys general in *ExxonMobil* articulated a legal theory with a connection to its demands—the "stranded assets theory"—rather than simple disagreement with the viewpoints Exxon expressed. *Id*.

While Bonta may have broad authority to investigate under California law, that authority does not allow him to override constitutional protections. He cannot issue a subpoena to retaliate for speech and petitioning activity. And there is no serious dispute that, but for ACC's

11

constitutionally protected participation in the FTC's notice-and-comment process and its public speech about that participation, Bonta would not have issued his subpoena or filed and served his enforcement petition seeking private, internal communications related to that political process.

### 2.    Bonta Cannot Compel ACC to Produce Constitutionally Privileged Documents.

Even if Bonta's pursuit of the documents were not motivated by a retaliatory intent, ACC would likely still prevail because the subpoena improperly intrudes into ACC's First Amendment rights against compelled disclosure, as recognized by a long line of precedent. *See* Dkt. 16-1 at 25–28; Chambers Amicus Br., Dkt. 21-1, at 5–11.[10] Bonta does not dispute that his demand that ACC hand over its documents burdens the exercise of ACC's First Amendment rights, because disclosure would reveal not only the identities of ACC members who participated in the FTC process but also ACC and its members' private communications concerning political strategy and messaging on an issue where they dissent from California's view.

Instead, Bonta argues that California's interests in the subpoena outweigh the burdens on ACC's First Amendment rights. Bonta asserts that the burdens on ACC of being forced to turn over its documents are "not objectively significant," and in fact are "*relatively weightless*." Opp. 21–22 (emphasis added). Again, Bonta thinks that is so because "the Subpoena does not purport to restrain or control ACC or its members' activities; rather, it requires the disclosure of documents." *Id.* That has not been the law for more than half a century, since the Supreme Court explained in *NAACP v. Alabama* that "[t]he fact that Alabama … has taken no direct action to restrict the right of petitioner's members to associate freely, does not end the inquiry" as "compelled disclosure[s]: alone "may constitute as effective a restraint on freedom of association as [other] forms of governmental action." 357 U.S. at 461–62; *see also AFL-CIO*, 333 F.3d at

---

[10] ACC need not show a retaliatory motive for this claim. *NAACP*, 357 U.S. at 461.

177 (when government "compels public disclosure of an association's confidential internal materials, it intrudes on the privacy of association and belief guaranteed by the First Amendment, as well as seriously interferes with internal group operations and effectiveness" (cleaned up)). Official demands that associations reveal confidential internal materials therefore implicate "*significant* First Amendment interests in associational autonomy." *Id.* (emphasis added); s*ee also FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 388 (D.C. Cir. 1981) ("[R]elease of such information to the government carries with it a real potential for chilling the free exercise of political speech and association guarded by the [F]irst [A]mendment."). And there is nothing speculative about the burden on ACC here. ACC has supported its motion with substantial evidence of ongoing burden on its speech and association.[11]

On the other side of the scale, Bonta says "the bar is relatively low for [him]." Opp. 22. That's not right. Bonta relies on a case *that did not involve First Amendment privilege*. *Id.* (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). Because ACC's materials undisputedly *are* privileged, the apt standard is "exacting scrutiny." *Ams. for Prosperity Found.*, 594 U.S. at 607. So "the strength of [Bonta's] interest must reflect the seriousness of the actual burden on First Amendment rights." *Id.* And it is Bonta's burden to establish his interest is sufficiently strong. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). It is not. His interest boils down to an assertion that"[a]t issue is what is believed to be a decades-long campaign of deception." Opp. 22–23. Notably, this assertion comes without citation. Bonta implicitly concedes that that is because there is nothing to cite. He is relying on his power to issue subpoenas "on suspicion that law is being violated," or even for "assurance *that it is not*." Opp. 23 (emphasis added).

---

[11] *See* Dkt. 17, Ex. J at ¶¶ 6–8; *id.*, Ex. I at ¶¶ 13, 15–17; *id.*, Ex. K at ¶¶ 7–8; Dkt. 16, Ex. F at ¶¶ 22–23.

Unable to articulate any important interest in the documents he seeks, Bonta suggests ACC's invocation of its First Amendment rights may itself be evidence of wrongdoing, arguing "ACC presumably stands behind the integrity of this Study, and should be prepared to do so openly." Opp. 23. Bonta "seeks documents to hold ACC to that task." *Id.* Again, the Supreme Court rejected just such an argument in *NAACP*. *See* Resp. Br., *NAACP*, 1957 WL 87605, at *11 (U.S. Oct. 21, 1957) (Alabama arguing "[i]n these days of mass media, complex and subtle methods of influencing public opinion[,] the state and its people have a real interest in knowing the identity of those who would pool their powers as individuals in corporate form to achieve their ends. Those who act as a corporation must expect to be treated as a corporation."). It is not the law that an association which engages in advocacy sheds its First Amendment rights and must be prepared to disclose its member identities and contributions. Bonta's repeated treatment of ACC's invocation of its First Amendment rights as suspicious ("What are they trying to hide?")[12] underscores the point that Bonta is not acting with due regard for the First Amendment. Anonymous speech is "not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent," and "a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343, 357 (1995).

Finally, Bonta says his demands for ACC's documents "are precisely tailored to the needs of [Bonta's] investigation." Opp. 23. That is the problem, not the solution. Bonta's subpoena is directly and expressly targeting constitutionally protected activity—ACC's advocacy "not just to the FTC, but publicly," Opp. 23, and the associational activity that supported that advocacy. Nor is the subpoena in any way narrow as to that constitutionally

---

[12] Press Release, Cal. OAG, *Attorney General Bonta Petitions Court to Compel Plastics Indus. Ass'n & Am. Chem. Counsel to Fully Comply with Outstanding Investigative Subpoenas* (May 28, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-petitions-court-compel-plastics-industry-association-and.

sensitive subject. Bonta seeks "*All* documents and communications related to the [Survey], including, but not limited to, the proposal, planning, execution, and follow-up regarding the [Survey]; and (2) *All* documents and communications related to the funding of the [Survey]." Bonta has not attempted to justify the scope of this request and has not come close to meeting the "exacting scrutiny" standard that applies when First Amendment interests are stake, as they pressingly are here. *Ams. for Prosperity Found.*, 594 U.S. at 607.

**3.     No Threshold Issue Precludes This Court From Reaching The Merits.**

**i.     *Younger* Abstention Does Not Apply To State Court Actions That Merely Seek to Enforce an Investigatory Subpoena.**

Where jurisdiction exists, federal courts have a "virtually unflagging" "obligation to hear and decide a case" and "[p]arallel state-court proceedings do not detract from that obligation." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). *Younger* abstention trims only narrowly from that obligation, and only in circumstances far different from those presented here.

Bonta asserts without analysis that *Younger* "abstention principles also apply to civil enforcement proceedings." Opp. 14. That skips past the Supreme Court's admonition that *Younger* applies only to a narrow slice of civil enforcement proceedings—those "akin to a criminal prosecution in important respects." *See Sprint*, 571 U.S. at 79 (internal quotation marks omitted); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (*Younger* abstention appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature").

Bonta's state petition to enforce the subpoena does not qualify. Indeed, Bonta elsewhere concedes that the state court action he initiated, far from being quasi-criminal, is "ministerial"; it "merely brings both parties before the [state] Court, establishes a briefing schedule, and sets this matter for a hearing." Ex. L at 10. It is not, in other words, close to an action akin to a criminal

15

prosecution or similar to "state-initiated administrative proceedings to enforce state civil rights laws," or a "state-initiated proceeding to enforce obscenity laws." *See Sprint*, 571 U.S. at 79.

Recent Third Circuit precedent confirms that conclusion. In *Smith & Wesson Brands, Inc. v. Attorney General of New Jersey*, 27 F.4th 886 (3d Cir. 2022), Smith & Wesson sued in federal court seeking relief from an investigative subpoena that it believed violated its federal constitutional rights. The New Jersey Attorney General filed an action to enforce the subpoena in state court. The district court dismissed in light of the state court proceeding, and the Third Circuit reversed, holding that the state enforcement proceeding was not akin to a criminal prosecution and, therefore, not a "civil enforcement proceeding" for which *Younger* applies. *Id.* at 893. The mere "*threat* of contempt," did not implicate the "unique state civil proceeding" category of *Younger* abstention. *Id.* at 895. Because *Younger* did not apply, the Third Circuit held that the district court violated its duty to exercise its given jurisdiction. *Id.* at 888.

The same is true here. Because the second-filed California state court civil proceeding is not akin to a criminal proceeding, it is not an action that comes within *Younger*'s narrow scope. Properly understood, the *Younger* abstention analysis stops right there. This case falls squarely within the general rule that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not refuse to decide a case in deference to the States." *Sprint*, 571 U.S. at 73 (cleaned up).

(a)    The Middlesex Factors Weigh Against Abstention.

Should the Court reach them, none of the *Middlesex* factors favor Bonta. Two weigh heavily against abstention.[13]

---

[13] ACC agrees that there are ongoing state court proceedings, however, Bonta brought his action after this litigation had been filed and served. Circuits are split on how to handle later-filed state proceedings. *Compare Youssef v. Schuette*, No. 19-1225, 2019 WL 11753787, at *2 (6th Cir.

Bonta cannot articulate an important state interest. Bonta's state court proceeding is an attempt to enforce a retaliatory subpoena and compel production of constitutionally privileged material. The state has no cognizable interest in violating constitutional rights. *See Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) ("[E]nforcement of an unconstitutional law is always contrary to the public interest." (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013))).

The state court proceeding does not offer ACC adequate protection because it cannot provide ACC the preliminary relief available in this Court. *Younger* recognizes that abstention is inappropriate "where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (citation omitted). Bonta is chilling ACC's constitutional rights every day—that harm is ongoing and irreparable. And the state action cannot address this harm. At best, the state court could eventually decide that Bonta may not enforce his subpoena. Absent the preliminary relief available in this Court, ACC's constitutional rights will continue to be chilled until that moment. The state court is incapable of offering similar preliminary relief to remedy ACC's current, ongoing, and irreparable constitutional harm. *See Media Matters*, 2024 WL 1773197, at *15 (holding that because the Plaintiff was suffering an ongoing constitutional injury—the chilling of its First Amendment rights—relief in state court to merely set aside the subpoena would be insufficient relief).

(b)    The Bad Faith Or Harassment Exceptions Apply.

The Court may also decline to apply *Younger* on the ground that Bonta's state court proceeding was initiated in bad faith or as harassment, thereby rendering abstention

---

Sept. 17, 2019) ("*Younger* abstention applies if three factors are present. First, there must have been an ongoing state judicial proceeding when the complaint was filed."); *with M&A Gabaee v. Cmty. Redevelopment Agency of L.A.*, 419 F.3d 1036, 1042 (9th Cir. 2005) (Finding that the first filing of federal action did not preclude *Younger* abstention).

inappropriate. *Sprint*, 571 U.S. at 77. Courts narrowly construe the bad faith or harassment exceptions, but this is one of the rare cases where the exception applies. As explained above and in ACC's motion, Bonta issued his subpoena to retaliate against ACC's speech. He continues to pursue materials that the Supreme Court recently told him are off-limits, including the names of an association's members. *Ams. for Prosperity Found.*, 594 U.S. at 606. And he continues to disparage ACC for seeking to preserve the confidentiality of its members' names and participation in association discussions of public advocacy. His state court action continues that unlawful course. His recalcitrance underscores that he is operating in bad faith and to harass ACC. Courts have held that state action motivated by the desire to suppress First Amendment activity qualifies for the bad faith or harassment exceptions. *See Show-World Ctr., Inc. v. Walsh*, 438 F. Supp. 642, 651 (S.D.N.Y. 1977) ("[T]he principles of equity mandate federal adjudication of the issues raised in this case—which include the bad faith enforcement of the New York City building code in order to suppress plaintiff's First Amendment rights."); *Dempsey v. McQueeney*, 387 F. Supp. 333, 338 (D.R.I. 1975) (finding repeated police raids as punitive measure to constitute harassment, not requiring abstention).

### ii.  All of the *Colorado River* Factors Weigh Against Abstention

Nor does *Colorado River* abstention apply.[14] As with *Younger* abstention, *Colorado River* abstention only "permits deferral under 'exceptional' circumstances." *Edge Inv., LLC v. D.C.*, 927 F.3d 549, 551 (D.C. Cir. 2019). Application of *Colorado River* abstention is not susceptible to a "mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."

---

[14] As a preliminary point, the Court should find that Bonta has forfeited his *Colorado River* argument by raising it only in a conclusory footnote. *See GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) ("district court did not abuse its discretion in rejecting" argument raised only in footnote); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument.").

*Id.* at 553 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Key factors include: "which court first assumed jurisdiction over [the] property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; [] the order in which jurisdiction was obtained by the concurrent forums; … whether federal or state law controls[;] and whether the state forum will adequately protect the interests of the parties." *Edge Inv., LLC*, at 553 (cleaned up). Every *Colorado River* factor weighs against abstention here.

(1) Factor one weighs against abstention because this Court was the first to obtain jurisdiction. The state court action was filed four days after this one, after Bonta was served.[15]

(2) Factor two weighs against abstention because Bonta has not articulated any reason why litigating in this Court would be inconvenient. Bonta did not find submitting comments to the FTC in D.C. inconvenient. Nor did Bonta find dispatching one of his deputy attorneys general to attend an FTC workshop in D.C. to discuss his views on advanced recycling in connection with the Green Guides inconvenient.[16] And he is, right now, litigating this action in D.C., through an attorney in his office who is admitted to practice in this Court.

(3) Factor three weighs heavily against abstention because "in *Colorado River*, the Court explained that the principle of avoiding duplicative litigation does not generally govern parallel federal-state litigation," which is the setting here. *See id.* at 555. Moreover, "*Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally

---

[15] Bonta's "discussion" of this factor suggests that he views the issuance of his subpoena as equivalent to a state court obtaining jurisdiction. But, of course, an investigative subpoena is not akin to a state court action. No state court obtained jurisdiction over ACC by virtue of Bonta's subpoena. Bonta himself highlights that his subpoena is "not self-executing." Dkt. 24 at 31.

[16] *See* FTC, *Talking Trash at the FTC: Recyclable Claims and the Green Guides* 45–61 (May 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf (featuring in-person attendance in D.C. by California Deputy Attorney General).

excessive or deleterious," *id.* at 556, "such as when the parallel actions involve different parties or claims." *Atkinson v. Grindstone Cap., LLC*, 12 F. Supp. 3d 156, 164 (D.D.C. 2014). Nothing like that is present here where there is only "federal-state" litigation prompted by Bonta's decision to bring an enforcement action after ACC filed the instant lawsuit. "[T]he mere risk of duplicating efforts and different results is not what the Supreme Court meant by piecemeal litigation." *Edge Inv.*, 927 F.3d at 555.

(4) Factor four weighs heavily against abstention. Contrary to Bonta's unexplained assertion that the case turns on state law, ACC is asking this Court to determine that the U.S. Constitution precludes Bonta's conduct.

(5) Factor five, too, weighs sharply against abstention. As explained, the state forum cannot provide ACC with the interim, preliminary relief that is needed to adequately shield ACC from the ongoing and irreparable harm it suffers every day, pending final resolution of the constitutional claims presented to this Court.

### iii.   Consistent With *Media Matters*, The Court Has Personal Jurisdiction Over Bonta.

There is no reason for this Court to depart from *Media Matters* and reach any conclusion other than that it has personal jurisdiction over Bonta. 2024 WL 1773197, at *9. Consistent with *Media Matters*, Bonta is a "person" under D.C.'s long-arm statute. *Id.* at *5–8; Dkt. 24 at 11–12.

Moreover, Bonta has numerous contacts with D.C. related to the subject matter of this litigation. Bonta's subpoena clearly establishes—and has resulted in—a substantial course of dealing with ACC, a D.C. resident. *Id.* at *10. Bonta's own subpoena defines ACC as "the non-profit trade association … with the address 700 Second Street, NE, Washington, DC 20002."[17] It cannot come as a surprise, therefore, that Bonta's subpoena reaches and demands conduct in

---

[17] Dkt. 1, Ex. C at 3.

D.C. The documents at issue involve employees in ACC's D.C. office and comments submitted to the FTC in D.C. If Bonta sought to conduct interviews with ACC leadership or the employees involved, those individuals would be present in D.C. *See Media Matters*, 2024 WL 1773197, at *10. What the Court said in *Media Matters* holds true here: "By targeting a D.C.-based entity for investigation and demanding records from it, Defendant committed himself to a potentially long course of dealing in the District. In such circumstances, Defendant should have reasonably foreseen that he would be called into court here." *Id.*

Bonta caused his subpoena to reach ACC in D.C. through ACC's counsel, providing yet another contact with the District related to the underlying issue. Bonta attempts to distinguish *Media Matters* with regards to service of the subpoena because ACC permitted Bonta to serve it electronically through counsel, rather than force him to hire a process server in D.C. But the mere fact that ACC did not require Bonta to physically enter D.C. to cause his subpoena to be received here should not affect the Court's analysis of its personal jurisdiction. Bonta knew that ACC was headquartered in D.C. and that his subpoena would be received by ACC in D.C. Absent ACC accepting electronic service through its counsel, Bonta would have needed to enter D.C. to serve his subpoena. ACC's reasonableness in accepting service electronically through counsel does not change the ultimate effect: delivery of the subpoena to ACC in D.C.

And in any event, Bonta, just like the Texas Attorney General in *Media Matters*, has in fact served ACC with process in D.C., using an agent to serve ACC's general counsel at the organization's D.C. headquarters. He did so in order to serve ACC with the papers initiating his subpoena enforcement proceeding in the California.[18] Which all proves the point. To pursue his

---

[18] Bonta effected in-person service of his state court action on May 30, 2024, in D.C.

investigation of a D.C. organization, Bonta had to act in D.C.[19] And in doing so, he made himself amenable to suit in D.C. with respect to those actions, just like anyone else who directly and foreseeably projects his conduct into the Federal District.

**B.    Preliminary Injunctive Relief Is Necessary To Protect ACC From Irreparable Harm.**

ACC has offered specific testimonial evidence of the First Amendment injuries that ACC and its members suffer every day that Bonta's subpoena hangs over its head.[20] That testimony easily carries the irreparable harm burdens that ACC must show in this First Amendment context. In light of the importance of First Amendment rights, "likelihood of success on the merits in First Amendment cases will often be the determinative factor in the preliminary injunction analysis." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

Bonta scorns ACC's First Amendment injuries, but that is part and parcel of his unfortunate attitude toward the First Amendment. He does not meaningfully dispute ACC's factual showing. The cases Bonta cites do not help him either. *Reisman v. Caplin* is not a First

---

[19] Moreover, "asserting jurisdiction here is reasonable 'in the context of our federal system of government.'" *Media Matters*, 2024 WL 1773197, at *10 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

[20] Dkt. 16, Ex. F ¶¶ 16–21; Dkt. 17, Ex. I ¶ 25 ("[Redacted] has become more guarded in its communication with the ACC, limiting our support of advocacy of state and federal level advanced recycling legislation. We are also minimizing activity, engagement and participation in upcoming Plastics Sustainability Team, [redacted] meetings"); *id.*, Ex. J ¶ 10 ("Knowing that such information could be disclosed to the California Attorney General seriously chills my and my employer's willingness to provide input, share information and ideas, and participate in future activities—and thus undermines my employer's ability to participate fully in associational activities, the political process and interact with other trade association members"); *id.*, Ex. K ¶ 19 ("[t]he California Attorney General's investigation and subpoena to the ACC has already degraded the Company and its representatives' ability to associate with those like-minded entities on such matters of common interest …. As a result of the efforts by the California Attorney General seeking disclosure of internal associational communications, I and others in the Company have been more restrained, guarded, and limited in sharing our thoughts and views on public policy issues with trade associations like the ACC and its members. We have already adjusted how we engage in an effort to not invite any unwarranted scrutiny or criticism from outside of associations like the ACC.").

Amendment case at all, and did not involve First Amendment harms. 375 U.S. 440 (1964). And *U.S. News & World Rep., L.P. v. Chiu*, if anything, supports ACC's position. There, the plaintiff had "submitted no affidavits suggesting that it ha[d] changed its … habits in the slightest." No. 24-cv-00395, 2024 WL 2031635, at \*13 (N.D. Cal. May 7, 2024). Instead, it stated that it would *not* change its behavior in response to pending subpoenas. *Id.* The *U.S. News* court distinguished the case from this Court's decision in *Media Matters*, explaining that plaintiffs in *Media Matters* had established harm when, through "sworn affidavits, [they] demonstrated the profound chilling impact that the CID ha[d]" on operations. *Id.* The same is true here. ACC established through sworn affidavits that Bonta's subpoena has caused and is causing ACC to hesitate in speaking and petitioning the government and experience diminished participation from members.

The caselaw is clear that this kind of chill justifies a preliminary injunction. The threat of "legal sanctions" stemming from an ongoing investigation are "sufficient to deter protected speech." *Media Matters*, 2024 WL 1773197, at 36; *cf. Clark v. Libr. of Cong.*, 750 F.2d 89, 93–94 (D.C. Cir. 1984) (contrasting *Laird* with the targeted investigation of an individual for exercising his associational rights, and finding justiciable injury).[21]

Bonta fundamentally misunderstands the nature of the harm at issue. Bonta says ACC is suffering "*no* harm" because the "Subpoena is not self-executing" and it may take some time for Bonta to obtain a state court order enforcing his subpoena. Opp. at 24. The Court already rejected this type of argument in *Media Matters*, finding "the fact that the [document demand] is

---

[21] In the other cases Bonta cites, the plaintiffs feared some future action, but had not been targeted by a subpoena or other legal action. *Laird* involved the mere "existence, without more, of a governmental investigative and data-gathering activity." 408 U.S. at 10. *United Presbyterian Church* involved only the mere "fear" and "threat" of being "targeted for surveillance." In *Reps. Comm. for Freedom of Press*, no subpoena had been issued, and the potential future subpoenas would be issued to third parties. *Reps. Comm. for Freedom of Press v. Am. Tel. & Tel. Co.*, 593 F.2d 1030, 1040 (D.C. Cir. 1978). In *Safari Club* the law that could cause plaintiff harm had not even come into effect. *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 118 (D.D.C. 2012).

not self-enforcing [wa]s of no moment," as the plaintiff offered evidence of injury. *Media Matters* at 33. Nor must ACC rely on Bonta's choice of a state court forum—which he selected after ACC filed this action—to protect ACC's crucial federal First Amendment rights.

But that is not all the harm ACC faces. Bonta is attempting to enforce the subpoena in a California state court. If he succeeded, the court could hold ACC in contempt, and order ACC to disclose privileged communications. "These potential punitive consequences, as well as … judicial intervention to enforce the [subpoena], make Plaintiffs' claim of chilled expression objectively reasonable." *Media Matters*, 2024 WL 1773197, at *37.

### C.    The Balance Of Equities And Public Interest Considerations Strongly Support Preliminary Relief.

Bonta cannot point to any concrete interest the public has in enforcement of the subpoenas—which is notable, given that the investigation he claims they are relevant to has lasted several years already. Instead he says his "actions are presumptively in the public interest." Opp. 34. He cannot rely on that presumption here. The public's overriding interest is in preventing powerful officials from violating the U.S. and California Constitutions. *See*, *e.g.*, *ACT-UP v. Walp*, 755 F. Supp. 1281, 1290 (M.D. Pa. 1991) ("The public has an abiding interest in seeing that state officials do not violate the constitution."); *Karem*, 960 F.3d at 668 ("[E]nforcement of an unconstitutional law is always contrary to the public interest.") (quoting *Gordon*, 721 F.3d at 653).

In fact, this Court declined to draw a presumption in favor of investigatory intrusion in *Media Matters*, for good reason. *Media Matters*, 2024 WL 1773197, at *20 n.10 (explaining that federalism creates daylight between the public's interest and the state attorney general's interest in cases like this one). An investigation by a state attorney general retaliating against an association for its participation in notice and comment rulemaking has far-reaching implications

24

that would apply "to the myriad social, economic, religious and political organizations that publicly support or oppose [regulatory action]." *Perry*, 591 F.3d at 1158. The national public has a powerful interest in having a well-functioning federal government that can take public comment on proposed agency actions without interference. That federal interest may frequently diverge from a state official's parochial interests. Moreover, as this Court has recognized, "there is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation." *Media Matters*, 2024 WL 1773197, at *10.

Bonta rests his balancing analysis on his view that ACC's harm is "self-inflicted and not objectively reasonable." Opp. 34. But, as discussed above, Bonta's subpoena is hindering ACC's speech, how it associates with its members, and how it petitions the government.[22] Bonta, on the other hand, has still failed to identify even a legitimate need for the documents, much less an important one. He already has much of the information he allegedly seeks: the "factual bases supporting the conclusions made in ACC's Study, [and] the methodologies employed to reach the findings in the Study," Lee Decl. ¶ 6. All of that was made public long ago in ACC's submission to the FTC, which ACC also separately provided to Bonta. More fundamentally, Bonta has not, and cannot, explain why equity would move this Court to permit him to continue violating ACC's constitutional rights.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction, enjoining Bonta from further pursuing enforcement of his subpoena.

---

[22] Bonta's citation to *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, is puzzling. 425 U.S. 748, 771 (1976). It is not simply commercial speech which Bonta seeks to dissuade through his subpoena, but the exercise of associative rights to petition the government and speak on issues of national importance.

Dated: July 3, 2024                              Respectfully submitted,


                                                 /s/ *Kwaku A. Akowuah*


                                                 Kwaku A. Akowuah (D.C. Bar No. 992575)
                                                 Jillian S. Stonecipher (D.C. Bar No. 1030214)
                                                 Anna F. Boardman (D.C. Bar No. 90015086)
                                                 (admitted *pro hac vice*)
                                                 SIDLEY AUSTIN LLP
                                                 1501 K Street NW
                                                 Washington, D.C. 20005
                                                 Telephone: 202 736-8000
                                                 kakowuah@sidley.com
                                                 jstonecipher@sidley.com
                                                 aboardman@sidley.com

                                                 David L. Anderson (CA Bar No. 149604)
                                                 (admitted *pro hac vice*)
                                                 Sheila A.G. Armbrust (CA Bar No. 265998)
                                                 (admitted *pro hac vice*)
                                                 David Goldenberg (D.C. Bar No. 1602274)
                                                 (admitted *pro hac vice*)
                                                 SIDLEY AUSTIN LLP
                                                 555 California Street, Suite 2000
                                                 San Francisco, CA 94104
                                                 Telephone: 415 772-1200
                                                 dlanderson@sidley.com
                                                 sarmbrust@sidley.com
                                                 dgoldenberg@sidley.com

                                                 *Counsel for Plaintiff American Chemistry*
                                                 *Council, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: July 3, 2024                               Respectfully submitted,

                                                  */s/ Kwaku A. Akowuah*
                                                  Kwaku A. Akowuah (D.C. Bar No. 992575)
                                                  SIDLEY AUSTIN LLP
                                                  1501 K Street, N.W.
                                                  Washington, D.C. 20005
                                                  (202) 736-8000
                                                  kakowuah@sidley.com

                                                  *Counsel for Plaintiff American Chemistry*
                                                  *Council, Inc.*

27