**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

AMERICAN CHEMISTRY COUNCIL,                )
                                           )
    **Plaintiff,**                        )
                                           )
           v.                   )    **Civil No. 24-cv-1533 (APM)**
                                           )
ROB BONTA,                                 )
*Attorney General of the State of California,*   )
                                           )
    **Defendant.**                       )
_____   )

_____

PLASTICS INDUSTRY ASSOCIATION,             )
                                           )
    **Plaintiff,**                        )
                                           )
           v.                   )    **Civil No. 24-cv-1542 (APM)**
                                           )
ROB BONTA,                                 )
*Attorney General of the State of California,*   )
                                           )
    **Defendant.**                       )
_____   )

## MEMORANDUM OPINION AND ORDER

### I.

On April 28, 2022, Defendant Rob Bonta, the Attorney General of the State of California, announced an investigation into the fossil fuel and petrochemical industries, their representations about the viability of plastics recycling, and their role in the plastics pollution crisis for possible violations of California law. As part of that investigation, Defendant sent preservation letters and then subpoenas to multiple companies and entities, including Plaintiffs American Chemistry

Council ("ACC") and Plastics Industry Association ("Plastics").  Both ACC and Plastics are industry groups based in Washington, D.C.

Defendant issued a subpoena to Plastics on July 27, 2022, and served it via Federal Express on Plastics' counsel in Washington, D.C., on August 15, 2022.  The subpoena sought, among other records, documents housed at the Hagley Museum and Library, an institution dedicated to the study of business and technology in Wilmington, Delaware, where Plastics has deposited 20-years-worth of records for historical research.  After a series of document productions and disputes over privilege, on May 24, 2024, Plastics filed the instant suit ("Plastics Action") under 42 U.S.C. § 1983 to enjoin Defendant from enforcing the subpoena and further pursuing his investigation against Plastics.

Meanwhile, the Federal Trade Commission ("FTC") had requested public comment on updates to its Guides for the Use of Environmental Marketing Claims, known as the "Green Guides," a publication whose purpose is to help marketers avoid misleading environmental claims. On April 20, 2023, ACC provided comments to the FTC and included a study on consumer perceptions and labeling preferences ("Study") in support of a chemical-based recycling method known as "advanced recycling."  Defendant also participated in the FTC's notice-and-comment process and opposed amending the Green Guides to recognize "advanced recycling" as a form of recycling, unless shown to be as efficient as mechanical recycling methods and have "an actual environmental benefit."

Over seven months later, on December 6, 2023, Defendant issued an investigative subpoena to ACC seeking documents and communications regarding the funding, proposal, planning, and execution of the Study and related follow-up.  Defendant served the subpoena on ACC's counsel in San Francisco by email.  In response, ACC produced some documents but also

raised objections.  ACC eventually filed suit under § 1983 ("ACC Action") on May 24, 2024, after the parties were unable to resolve the privilege disputes.

Four days later, on May 28, 2024, Defendant moved in California state court to enforce the subpoenas served on both Plastics and ACC.

Both ACC and Plastics are now before the court seeking orders preliminarily enjoining Defendant from enforcing the investigative subpoenas.   ACC's primary claims are that (1) Defendant retaliated against it for its speech, petitioning, and associational activity in connection with its participation in the FTC's notice-and-comment process, in violation of the First Amendment, and (2) the subpoena demands records protected by First Amendment privileges.  Plastics contends only that its subpoena seeks documents that are privileged, including under the First Amendment.  Defendant responds that the requested relief should be denied for a host of reasons, including (1) the court should abstain from exercising jurisdiction, (2) the court lacks personal jurisdiction over Defendant, and (3) Plaintiffs fail to satisfy the criteria for injunctive relief.   The court heard argument on the motions on August 28, 2024.

For the reasons that follow, the court denies both motions.  The court holds that Plaintiffs have not shown a likelihood of success in establishing that Defendant is subject to the jurisdiction of this court.

## II.

The court first sets out the factual and procedural background of the ACC Action and then the Plastics Action.

### A.    *ACC v. Bonta* Background

ACC is a non-profit trade association, whose Plastics Division promotes plastics recycling and recovery programs.   Compl., *Am. Chemistry Council v. Bonta*, No. 24-cv-1533 (APM),

ECF No. 1 [hereinafter ACC Compl.], Ex. B, ECF No. 1-5, at 1.   ACC is headquartered in

Washington, D.C.   ACC's Mot. for TRO & Prelim. Inj., ECF No. 16 [hereinafter ACC's Mot.],

Ex. F, Decl. of Ross Eisenberg, ECF No. 16-3, ¶ 2 [hereinafter Eisenberg Decl.].   Its member

companies collaborate to identify policy issues and "develop public advocacy positions and

strategies." *Id.* ¶ 3.

When the FTC announced its request for public comment on the Green Guides, ACC hired

an independent group, Heart+Mind Strategies, "to conduct a national survey of consumer

perceptions and labelling preferences . . . to address the FTC's questions about consumer

perceptions of recyclable claims." *Id.* ¶ 9; ACC Compl., Ex. D, ECF No. 1-7, at 1.   ACC submitted

its comments, including the Study, to the FTC on April 20, 2023.   Eisenberg Decl. ¶ 10.   ACC also

issued a press release about the Study on its website.[1]   Defendant, along with a group of other

states, submitted comments to the FTC regarding the Green Guides as well.   ACC Compl. ¶¶ 32–

33 (citing R. Bonta, et al., *Green Guides Review* (Apr. 24, 2023)).   The parties took opposing

positions on whether "advanced recycling" should qualify as a "recycling program."   *See id.*

On December 6, 2023, Defendant issued an investigative subpoena pursuant to his

authority under California law, Cal. Gov't Code § 11180 *et seq*.   Def.'s Opp'n to ACC's Mot. for

a Prelim. Inj., ECF No. 22 [hereinafter Def.'s Opp'n to ACC], Decl. of Katherine Schoon, ECF No.

22-1, ¶ 2 [hereinafter Schoon Decl.]; ACC's Mot., Ex. C., ECF No. 1-6 [hereinafter ACC

Subpoena].   The subpoena demanded that ACC produce:

- "All DOCUMENTS and COMMUNICATIONS RELATED TO the ENVIRONMENTAL CLAIMS STUDY, including, but not limited to, the proposal, planning, execution, and follow-up regarding the ENVIRONMENTAL CLAIMS STUDY."

---

[1] *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, AMERICAN CHEMISTRY COUNCIL, https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey (last visited Aug. 29, 2024).

- "All DOCUMENTS and COMMUNICATIONS RELATED TO the funding of the ENVIRONMENTAL CLAIMS STUDY."

ACC Subpoena at 8. A declaration attached to the subpoena stated that Defendant's office had

> received information that [ACC's] promotion and marketing of recycling plastic may have resulted in legal violations. These violations include potential common law and statutory violations, such as products liability, public nuisance, and violations of the California Unfair Competition Law (Bus. & Prof. Code, §§ 17200 et seq.), California False Advertising Law (Bus. & Prof. Code, §§ 17500 et seq.), and other laws regarding environmental protection, public health, and consumer protection.

*Id.* at 10. The subpoena called for ACC to produce responsive records to Defendant's office in Sacramento, California. *Id.* at 3.

ACC accepted service of the subpoena by email to its outside counsel, David Anderson, a lawyer in Sidley Austin LLP's office in San Francisco, California. *Id.* at 11. Between January and March 2024, ACC produced some documents responsive to the subpoena. Schoon Decl. ¶ 3. ACC withheld other records, however, and provided Defendant with a log asserting privilege over 550 documents based on the U.S. and California Constitutions. *Id.*; ACC Compl., Ex. A, ECF No. 1-4 [hereinafter ACC's Ex. A], at 1. Apparently unmoved, on May 3, 2024, Defendant sent a demand letter to ACC's outside counsel—again, based in San Francisco—rejecting the privilege claims, stating that non-compliance would result in an enforcement action, and requesting production by May 17, 2023. Schoon Decl. ¶¶ 4–5; ACC's Ex. A. Over the next few weeks, the parties engaged in a series of meet-and-confers to resolve the privilege issues. Schoon Decl. ¶¶ 6–7. This too was done with ACC's California-based counsel. *See* ACC's Mot., Ex. G, Decl. of Sheila A.G. Armbrust in Supp. of ACC's Mot., ECF No. 16-4 [hereinafter Armbrust Decl.], ¶¶ 7–8.

The parties were unable to resolve their differences, prompting ACC to file suit in this court on May 24, 2024, asserting two claims under § 1983. *See generally* ACC Compl. Four days

later, Defendant filed an enforcement petition ("ACC Petition") in the Superior Court in Sacramento County, California. ACC's Mot., Ex. E, ECF No. 16-2 [hereinafter ACC Petition]. Defendant personally served this Petition on ACC in Washington, D.C., on May 30, 2024. Reply in Supp. of Am. Chemistry Council's Mot. for a Prelim. Inj., ECF No. 25 [hereinafter ACC's Reply], at 21 n.18. Defendant alleged that ACC's submission of the Study to the FTC was part of an ongoing effort by the plastics industry to deceive the public about the efficacy of recycling. *See* ACC Petition ¶¶ 21, 28, 43. He further asserted that ACC had "put the Study into issue" by submitting it to the FTC, and he accused it of "potentially unlawful and fraudulent speech[.]" *Id.* ¶ 46. According to ACC, the subpoena and Petition have chilled its members' activities and hindered its advocacy work. Eisenberg Decl. ¶¶ 16–21; *see generally* Am. Chemistry Council's Mot. to Partially Seal Supp. Decls., ECF No. 17, Ex. I, ECF No. 17-1 & Ex. J, ECF No. 17-2.

### B.    *Plastics v. Bonta* Background

Plastics is a Washington, D.C.-based, non-profit trade association that represents companies in the plastics supply chain. Compl., ECF No. 1, ¶ 17 [hereinafter Plastics' Compl.].

Defendant issued a document preservation notice addressed to Plastics in Washington, D.C., on April 28, 2022, and an investigative subpoena three months later, on July 27, 2022. Plastics' Mot. for TRO & Prelim. Inj., ECF No. 10 [hereinafter Plastics' Mot.], Ex. 1, ECF No. 10-3, at 1 (ECF pagination) [hereinafter Plastics' Ex. 1]; Plastics' Mot., Ex. 2, ECF No. 10-3, at 6 (ECF pagination) [hereinafter Plastics Subpoena], at 1–11 (internal pagination). Defendant served the subpoena on Plastics' counsel in Washington, D.C., via Federal Express. Plastics' Mot., Ex. B, ECF No. 10-3, at 58 (ECF pagination). The subpoena sought:

- "All DOCUMENTS and COMMUNICATIONS that were at any time housed at, on loan to, or in possession of the Hagley Museum and Library, located in Wilmington, Delaware."

- "All DOCUMENTS titled 'Plastics Newsbriefs,' published by the Society of the Plastics Industry, Inc., including any iterations of "Plastics Newsbriefs" having a different title at any point in time."

- "All DOCUMENTS titled 'President's Report to the Members,' published by The Society of the Plastics Industry, Inc., including any iterations of 'President's Report to the Members' having a different title at any point in time."

- "All DOCUMENTS titled 'State Bulletin,' published by The Council for Solid Waste Solutions, including any iterations or versions of 'State Bulletin' having a different title at any point in time."

Plastics Subpoena at 10.  The subpoena directed Plastics to produce responsive records to Defendant in Sacramento, California.  *Id.* at 2.

Plastics disclosed records in September 2022, May 2023, and July 2023, subject to objections.  Plastics Compl. ¶¶ 36–40.  It submitted a privilege log on July 26, 2023, asserting a First Amendment privilege as to approximately 150 documents.  Plastics' Mot., Ex. 5, ECF No. 10-3, at 22 (ECF pagination).  Over eight months later, on April 5, 2024, Defendant sent a demand letter to Plastics' D.C.-based counsel, contesting its privilege claims.  *See id.*  The parties' efforts to meet and confer proved unsuccessful.  *See* Plastics' Mot., Ex. 6, ECF No. 10-3, at 26–27 (ECF pagination); Plastics' Mot., Ex. 7, ECF No. 10-3, at 29–30 (ECF pagination).

On May 24, 2024, Plastics filed this § 1983 action.  Plastics' Compl.  Four days later, on May 28, 2024, Defendant filed an enforcement petition in the Superior Court in Sacramento County, California.  Plastics' Mot., Ex. 8, ECF No. 10-3, at 32 (ECF pagination) [hereinafter Plastics Petition].  The petition mirrored the one filed against ACC, as it claimed that the plastics industry had deceptively marketed plastics products as recyclable.  *Id.* at 3–5 (internal pagination).  On June 14, 2024, Defendant filed an ex parte application asking the state court to order Plastics to show cause why it had not complied with the subpoena.  Plastics' Mot., Ex. 9, ECF No. 10-3, at 63–74 (ECF pagination).  Defendant attempted to personally serve the application on Plastics in

Washington, D.C., through a process server, but his attempts were unsuccessful.  Seaholm Decl. ¶ 32.  Plastics "ultimately accepted service [of the application] in the District through email" (the record does not identify who accepted service).  *Id.*

### III.

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks and citations omitted).  A court may grant such relief only "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

The preliminary injunction factors are well established.  A plaintiff must show that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest."  *Id.* at 20 (citations omitted).  As part of the first factor, a plaintiff must establish a likelihood of success in establishing personal jurisdiction over the defendant, if challenged.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

### IV.

The court begins and ends with Defendant's contention that the court cannot exercise personal jurisdiction over him in either action.  To determine whether the court has personal jurisdiction over a non-resident, it engages in a two-part inquiry: "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citation omitted).  Both ACC and Plastics assert that the court has long-arm jurisdiction over Defendant under subsections (a)(1)

and (a)(3) of the D.C. long-arm statute, D.C. Code § 13-423(a)(1), (a)(3), and that the exercise of jurisdiction is consistent with due process.  Hr'g Tr., No. 24-cv-1533 (APM), ECF No. 28, at 11:10-13 (ACC identifying (a)(1) and (a)(3) as the relevant long-arm provisions); *id.* at 32:18–37:9 (Plastics discussing jurisdiction under (a)(1) and (a)(3)); Plastics' Reply in Supp. of Mot. for Prelim Inj. & TRO, ECF No. 17 [hereinafter Plastics' Reply], at 3 (Plastics citing (a)(3)).[2]

### A.    Timing of the Relevant Contacts

Before evaluating the sufficiency of Defendant's contacts with the District of Columbia, the court must tackle a threshold question: What contacts count?   At oral argument, the court pointed the parties to *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996), for the proposition that the court may consider only those contacts with the forum that existed as of the lawsuit's filing.  *See id.* at 1300–01 (stating, in a defamation action, that a publication "written after [the plaintiff's] complaint was filed" is "no basis for personal jurisdiction" under subsection (a)(4) (collecting cases)).  In other words, post-complaint contacts do not count.[3]

Plaintiffs urge the court to reject such a "bright line rule," with Plastics calling the time-of-filing text in *McFarlane* "stray language," Plastics' Suppl. at 6, and ACC characterizing it as "dicta," ACC's Suppl. in Supp. of ACC's Mot., ECF No. 27, at 4.  This court cannot be so dismissive of a D.C. Circuit opinion.  After all, the court in *McFarlane* did not simply make the statement in passing; it cited two other circuit court decisions to support the proposition.  *See McFarlane*, 74 F.3d at 1301 (citing *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52

---

[2] In its supplemental briefing, ACC attempts to establish personal jurisdiction under subsection (a)(4) for the first time. ACC's Suppl. at 8.  This argument comes too late and is thus forfeited.  *See Rollins Env't Servs. Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991).

[3] Plastics contends that Defendant forfeited this argument, as it was first raised by the court at oral argument.  Plastics' Suppl. in Supp. of Plastics' Mot., ECF No. 18 [hereinafter Plastics' Suppl.], at 1.  But what acts the court may consider is fundamentally part of the personal jurisdiction inquiry, which Defendant squarely has raised.  Moreover, the court afforded Plaintiffs a full opportunity to brief the issue after oral argument.  The court therefore declines to treat the timing question as forfeited.

(2d Cir. 1991) (explaining that "personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed" (citation omitted)), and *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990) (noting that "the relevant time for determining jurisdiction is the filing of the complaint")).  Just as the D.C. Circuit "generally . . . treat[s] as authoritative" "carefully considered language of the Supreme Court, even if technically dictum," *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) (citation omitted), this court likewise must treat as binding "carefully considered language" from the D.C. Circuit.  The D.C. Circuit's approving citation to *Klinghoffer* and *Asarco* was not mere happenstance.

Other courts in this District have not treated the language in *McFarlane* as dicta.  They consistently have applied the time-of-filing rule when evaluating the defendant's contacts with the District of Columbia.  *See, e.g.*, *Safex Found., Inc. v. SafeLaunch Ventures Ltd.*, 694 F. Supp. 3d 1, 14 (D.D.C. 2023) (collecting cases); *Gather Workspaces LLC v. Gathering Spot, LLC*, No. 19-cv-2669 (RC), 2020 WL 6118439, at *4 (D.D.C. Oct. 16, 2020) (same); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 193–94 (D.D.C. 2007).  So, too, has the D.C. Court of Appeals.  *See In re Orshansky*, 804 A.2d 1077, 1091–92 (D.C. 2002) ("In personam jurisdiction generally is determined as of the commencement of an action[.]").

This rule comports with fairness principles.  "Pre-suit contacts by a defendant where they have purposefully directed activities at the forum in question (and where the litigation arises from or relates to those activities) serves as an appropriate 'fair warning' that they may be haled into court in the forum state."  *Gather Workspaces*, 2020 WL 6118439, at *4 (citing *Burger King*, 471 U.S. at 472).  "But a reliance on post-suit activities by a defendant means there would be no fair warning at all—after all, 'post-suit activities cannot serve to warn the defendant of an event that

has already occurred,' and 'by definition' cannot demonstrate a defendant's amenability to being haled into court in the specific forum." *Id.* (citation omitted).

Despite this caselaw, ACC urges the court to follow a nearly 40-year-old, out-of-Circuit decision, *Educational Testing Service v. Katzman*, 631 F. Supp. 550 (D.N.J. 1986). ACC Suppl. at 5–6. In *Katzman*, although recognizing that "us[ing] the date of the filing of a complaint" is ordinarily "appropriate," the court carved out a narrow exception for cases in which "the defendant has subsequent to the filing of a complaint established a continuous and systematic presence in the forum state." *Id.* at 556. That exception has no application here. Defendant personally served the enforcement petition on May 30, 2024, in Washington, D.C., a mere four days after ACC filed suit and two days after ACC left the complaint and summons with a security officer at Defendant's office in Sacramento. *See* Proof of Service, ECF No. 12; ACC's Reply at 21 n.18. Since then, the only contact Defendant has had with the District of Columbia is objecting to the court's authority to hear this case. That is a far cry from the "continuous and systematic" post-filing, in-forum presence that caused the court in *Katzman* to depart from the usual time-of-filing rule.

Both Plastics and ACC also cite two Supreme Court cases that they contend stand for the proposition that "defendants can be subjected to personal jurisdiction based on post-complaint conduct." Plastics' Suppl. Br. at 7; ACC's Suppl. Br. at 6. But those cases are inapposite. Both *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), and *Petrowski v. Hawkeye-Security Insurance Co.*, 350 U.S. 495 (1956), involved a defendant's actions during litigation after making an appearance and taking steps to defend the suit. In *Insurance Corp. of Ireland*, the post-filing conduct at issue was jurisdictional discovery violations,

456 U.S. at 707–08, and in *Petrowski*, it was a stipulation to jurisdiction, 350 U.S. at 496.  This case does not involve litigation conduct that is inconsistent with disputing the court's jurisdiction.

Accordingly, the court will consider only Defendant's established contacts with the District of Columbia at the time Plaintiffs filed their respective suits.  That means the court will not consider the post-filing efforts by Defendant to serve the state court enforcement petitions on each Plaintiff in the District.

### B.    Subsection (a)(1): the "Transacting Business" Prong

The court begins with subsection (a)(1) of the D.C. long-arm statute, which provides that "a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia."   D.C. Code § 13-423(a)(1).   Subsection "13-423(a)(1)[] covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause," *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981), and thus "has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause," *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  The Due Process Clause requires "minimum contacts" between the defendant and the forum such that the defendant "should reasonably anticipate being haled into court there[.]"  *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  "Such minimum contacts must show that 'the defendant purposefully avail[ed] [them]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Because the "transacting any business" clause has been interpreted to confer jurisdiction to the full

extent allowed by the Due Process Clause, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry[.]" *Ferrara*, 54 F.3d at 828.

Neither Plaintiff has shown that Defendant "transacted business" in the District of Columbia before filing suit.

### 1.    Plastics

As to Plastics, Defendant's only pre-suit contacts with the District were his mailing of the subpoena by Federal Express to D.C.-based counsel in August 2022 and his subsequent communications with D.C.-based counsel about compliance, productions, and objections.[4]  Those interactions with the District are "fortuitous." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).  They are the result not of Defendant's pursuit of contacts specifically with the District but instead Plastics' "unilateral" decision to retain counsel in the District of Columbia to handle the subpoena matter.  *Id.*; *see also Ferrara*, 54 F.3d at 829–31 (holding that the Disciplinary Board of New Mexico Supreme Court's association with the District of Columbia arose because of is member's "unilateral decision" to practice law and live in the District of Columbia).  Nor can the court find, based on those limited contacts, that Defendant availed himself of the "benefits and protections" of the District's laws.  Plastics does not even try to identify what local benefit or protection that Defendant might have invoked by his actions.

Plastics' focus on Defendant's mailing of the subpoena into the District is misplaced.  "It is clear that this single . . . mailing cannot constitute the 'meaningful' contact or 'substantial connection' between the defendant and the forum state that is required for jurisdiction." *Ferrara*,

---

[4] Plastics disclosed in its supplemental filing for the first time that Defendant had served his Preservation Notice via a process server on April 28, 2022.  Plastics' Suppl. at 5 n.2.  That disclosure comes too late.  As Plastics acknowledges, the court advised all parties at the oral hearing that the evidentiary record was closed with respect to the preliminary injunction motion.

54 F.3d at 831 (citation omitted).  To be fair, the mailing in *Ferrara* was "responsive," *id.*, whereas sending the subpoena here was a proactive step in furtherance of Defendant's investigation.  But that difference, the court believes, is not dispositive.  The one-time mailing of a subpoena from California to counsel in the District, seeking records that Plastics houses in Delaware and was required to produce in California, does not rise to a purposeful availment of the privilege of conducting activities within the District of Columbia.  *See Burger King*, 471 U.S. at 474–76.

### 2.    ACC

As to ACC, Defendant had no pre-suit contacts with the District.  ACC's San Francisco-based counsel accepted service of the subpoena by email and thereafter communicated with Defendant in California about compliance, production, and ACC's objections.  Armbrust Decl. ¶¶ 2, 4–8.  Indeed, Defendant's first contact with ACC's D.C.-based, litigating counsel appears to have been when ACC served its § 1983 suit on Defendant.  Zero contacts with the forum plainly cannot meet the requirement of minimum contacts.

### 3.    Plaintiffs' Counterarguments

Both Plastics and ACC insist that the subsection (a)(1) jurisdictional analysis in this case is on all fours with this court's recent decisions in *Media Matters for America v. Paxton*, No. 24-cv-147 (APM), 2024 WL 1773197 (D.D.C. April 12, 2024), and *Media Matters for America v. Bailey*, No. 24-cv-147 (APM), 2024 WL 3924573 (D.D.C. Aug. 23, 2024).  But there is a critical difference between the *Media Matters* cases and those presently before the court.  *Paxton* and *Bailey* were § 1983 actions asserting First Amendment violations arising from a State Attorney General's demand for records from a D.C.-based entity.  But unlike here, the State Attorney Generals in those matters had hired a process server in the District of Columbia to serve a civil investigation demand (*Paxton*) and a state petition to enforce a civil investigative demand (*Bailey*).

The court in those cases held that the defendants had created the requisite minimum contacts with the District of Columbia for purposes of subsection (a)(1) by contracting with an agent to personally serve process in the District. The court explained that numerous other courts had found that "the hiring of a process server creates an agency relationship between the attorney and process server, and that relationship establishes the attorney's presence in the jurisdiction to satisfy the 'minimum contacts' requirement." *Paxton*, 2024 WL 1773197, at * 10 (citation omitted). The court also reasoned that, because the service created a "future course of dealing with a D.C. resident," the defendants "should have reasonably foreseen that [they] would be called into court here." *Id.*

Both Plastics and ACC insist that the mode of service cannot be dispositive. In their view, it makes no difference that the service of process in *Bailey* and *Paxton* was accomplished by an agent hired by the defendants to effect personal service, whereas here Defendant transmitted the subpoenas by mail and email, respectively. Both Plaintiffs point out that the Supreme Court in *Burger King* stressed that a defendant could not avoid jurisdiction in an out-of-state forum simply "because the defendant did not *physically* enter the forum State." Plastics' Suppl. at 2 (quoting *Burger King*, 471 U.S. at 476); *see* ACC's Suppl. at 2. They also emphasize that, for purposes of due process, the commercial actor's efforts need only be "purposefully directed" towards District residents. Plastics' Suppl. at 2; ACC's Suppl. at 2.

These arguments miss the point. The court's reasoning in *Paxton* and *Bailey* did not depend on the mere fact of physical presence in the District. Instead, it turned on the fact that both defendants had established their presence in the District through a *business* activity—contracting with a process service—that was directed at a District resident. *See Paxton*, 2024 WL 1773197, at *10–11. It was through the creation of that agency relationship that the defendants "invoked

the benefits and protections of the District's laws." *Id.* at *10.  Neither Plastics nor ACC can establish such a relationship between Defendant and District of Columbia.

Plaintiffs also assert that, as in *Media Matters*, the exercise of personal jurisdiction under subsection (a)(1) is appropriate because of the consequences that the subpoenas have on District residents.  Plastics' Suppl. at 5; ACC's Suppl. at 2, 4.  That is, in their view, the subpoenas enmesh Defendant in ongoing dealings with District residents and cause injury in the District.  Plastics' Suppl. at 2, 5; ACC's Suppl. at 4.  They note that in *Paxton* and *Bailey*, the court found jurisdiction over the defendants because their conduct "established a future course of dealing with a D.C. resident." *Paxton*, 2024 WL 1773197, at *10.

This argument is likewise misplaced.  The Supreme Court has made clear that the "foreseeability of causing *injury* in another State" is not a "'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 295).  Instead, "the foreseeability that is critical to due process analysis . . . is that the *defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297 (emphasis added) (citation omitted).  Applying that principle in *Paxton*, the court explained that "Defendant reasonably should have anticipated being haled into court . . . because [his personal service of] the [civil investigative demand] established a future course of dealings with a D.C. resident," not that the future course of dealing itself created the requisite contacts.  2024 WL 1773197, at *10.  Here, on the other hand, Defendant engaged in no in-forum business activity that would have given him reason to believe that he would be haled into a District of Columbia court.  *See Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) ("The plain text of subsection (a)(1) . . . focuses on where the defendant undertook the challenged (business) actions, not where the plaintiff felt the injury,

and the Plaintiffs' argument does nothing to suggest that [the defendant] himself transacted his challenged legal (or any other) business in the District.").

Finally, Plaintiffs point to out-of-Circuit cases in which courts have found that a single mailing can satisfy the minimum requirements of due process. Specifically, they cite the Fifth Circuit's decision in *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020), as standing for the proposition that "a single cease-and-desist letter *may* be sufficient to establish personal jurisdiction over the sender," Plastics' Suppl. at 3 (quoting *Carbon Six Barrels, LLC v. Proof Rsch., Inc.*, No. 22-cv-90-SDD (RLB), 2022 WL 16727127, at *4 (M.D. La. Nov. 4, 2022), *aff'd sub nom.*, 83 F.4th 320 (5th Cir. 2023)). This court, in *Paxton*, found that *Grewal* provided a "close analogy" to the actions of Attorney General Paxton towards Media Matters in determining, for purposes of due process, that the exercise of jurisdiction would not offend "our federal system of government." *Paxton*, 2024 WL 1773197, at *10 (quoting *World-Wide Volkswagen*, 444 U.S. at 293).

But the unique factors present in *Grewal* and *Paxton* are absent here. In *Grewal*, the Attorney General did not merely seek to enforce New Jersey law. His cease-and-desist letter went further by attempting to "halt [the Texas-based company's] activity nationwide, including activity that had no connection to New Jersey property or residents." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels., Div. of Occupational Safety & Health of the State of Cal.*, 1 F.4th 346, 354 (5th Cir. 2021) (citing *Grewal*, 971 F.3d at 492). The Fifth Circuit also explained that "Grewal's conduct beyond sending the cease-and-desist letter confirm[ed] his intent to crush Defense Distributed's operations," his "enforcement actions [were] selective . . . . [as] [h]e ha[d] not targeted the many similarly-situated persons who publish[ed] Defense Distributed's files on the internet," and he had "projected himself across state lines and asserted a pseudo-national executive

17

authority." *Grewal*, 971 F.3d at 493.  Similarly, this court deemed Attorney General Paxton's actions as going beyond the enforcement of state law in a neutral manner.  "[W]ith no apparent connection to Texas," he vowed to "vigorously enforce" Texas law against Media Matters for its journalism, even though other news outlets had published similar stories.  *Paxton*, 2024 WL 1773197, at *11.  Moreover, his conduct had "national implications" as Paxton had "call[e]d upon other Attorneys General to investigate" the media company.  *Id.*

Here, by contrast, Defendant has not specifically targeted Plastics or ACC; instead, his subpoenas are part of a wider investigation of the plastics industry that has been ongoing since 2022.  ACC and Plastics are not the only entities that have received subpoenas.  What's more, Defendant has not called on other states to investigate Plastics or ACC.  Nor has he made public statements implying that his investigation is part of a national political battle over free speech and the 2024 election, or characterized Plaintiffs in purely partisan, ideological terms.  His actions appear to actually focus on violations of California law.  ACC Petition ¶ 11 (describing pervasiveness and high cost of plastics pollution in California and its impacts on the state's waterways and wildlife).  In this way, Defendant's actions as to both ACC and Plastics bear a closer resemblance to those cases from the Fifth Circuit where the court has held that the mere mailing of a cease-and-desist letter to enforce a state's laws *does not* confer personal jurisdiction over a state attorney general.  *See, e.g.*, *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482–86 (5th Cir. 2008) (explaining that the state officials did not create minimum contacts with Texas, the forum state, by enforcing violations of their own state's laws and that it did not matter if that enforcement involved conduct that took place in Texas); *Bulkley & Assocs.,* 1 F.4th at 353–55 (letter sent to Texas company threatening that a California agency would conduct an inspection was not sufficient to confer jurisdiction).

The court therefore concludes that neither ACC nor Plastics has established a likelihood of successfully establishing personal jurisdiction over Defendant under subsection (a)(1) of the D.C. long-arm statute.

### C.    Subsection (a)(3): the Tortious Injury Prong

Plaintiffs fare no better under subsection (a)(3).  That provision of the long-arm statute reaches a non-resident who "caus[es] tortious injury in the District of Columbia by an *act* or omission *in* the District of Columbia[.]"  D.C. Code § 13-423(a)(3) (emphases added).  Jurisdiction under subsection (a)(3) stops short of the outer limits of due process.  *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 48 (D.C. Cir. 2020).

Plastics and ACC suffer from the same problem under (a)(3) as they did under (a)(1): the absence of contacts with the District of Columbia.  Neither Plaintiff can point to an act committed by Defendant "in the District of Columbia."  Plastics relies solely on the "act" of serving the subpoena by mail from California and the subsequent demands for compliance over email. *See* Plastics' Reply at 2–3.  But it fails to cite a single case from the D.C. Circuit permitting the exercise of jurisdiction under subsection (a)(3) based on a such limited mailings and communications from outside the jurisdiction.  In fact, the D.C. Circuit has taken a restrictive view in an analogous context.  The court has held in libel actions that the mere mailing of a defamatory statement into the District does not satisfy subsection (a)(3) because there must be some distinction between the "injury" and the "act."  *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 220–21 (D.C. Cir. 1986) (holding that an allegedly libelous article printed and mailed from outside the District into the District fell far short of satisfying subsection (a)(3)); *see also Forras*, 812 F.3d at 1107; *McFarlane*, 812 F.3d at 1300.  The same is true here.  Defendant's "act" of mailing the

subpoena to Plastics is not sufficiently distinguishable from Plastics' claimed First Amendment "injury." The mailing thus cannot satisfy subsection (a)(3).[5]

As for ACC, it too has identified no pre-suit tort occurring "in the District of Columbia" whatsoever, as all of Defendant's relevant acts occurred in California. *See* ACC's Suppl. at 7–8. ACC urges the court to follow the decision in *Twitter, Inc. v. Paxton*, where the court ruled that it could exercise jurisdiction over Attorney General Paxton for serving a civil investigative demand on then-Twitter in California, which Twitter claimed chilled its First Amended protected expression. 2021 WL 1893140, at *1–2 (N.D. Cal. May 11, 2021).  The court's analysis in *Twitter* was quite cursory, however, so it carries little weight and does not compel a different outcome.

*        *        *

In sum, both Plaintiffs have failed to demonstrate a likelihood of success of establishing that Defendant has sufficient contacts with the district to satisfy subsections (a)(1) or (a)(3) and the requirements of due process.  Because the court finds at this stage that it does not have personal jurisdiction over Defendant, it does not consider the merits of Plaintiffs' claims.  *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510–14 (D.C. Cir. 2018) (holding that the court must determine whether it has personal jurisdiction over the defendant before reaching the merits).

### D.    Leave to Amend

Both Plaintiffs ask for leave to file amended pleadings to incorporate Defendant's post-complaint contacts with the District of Columbia to establish personal jurisdiction.  ACC's Suppl. at 7; Plastics' Suppl. at 8 n.3.  At least one court in this District has held, however, that amending

---

[5] By contrast, in *Paxton*, the court held that the tortious act in the District—the physical act of service through an agent—and the injury in the District—First Amendment chilled expression—were distinct.  *Paxton*, 2024 WL 1773197, at *13.

a complaint cannot cure the absence of personal jurisdiction at the time of the suit's filing. *See Allen*, 522 F. Supp. 2d at 193–94. Plaintiffs have identified no cases to the contrary. The court therefore is not prepared to say whether amending their complaints to include post-filing conduct might overcome the deficiencies the court has identified. Because Plaintiffs have not demonstrated a likelihood of success on that question, at this time the court denies them leave to amend without prejudice.

## V.

Because Plaintiffs have not demonstrated a likelihood of establishing personal jurisdiction over Defendant, the court denies both Plaintiff ACC's Motion for Preliminary Injunction, No. 24-cv-1533, ECF No. 16, and Plaintiff Plastics' Motion for Preliminary Injunction, No. 24-cv-1542, ECF No. 10.

Dated:  September 11, 2024

Amit P. Mehta
United States District Court Judge