## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC.,<br>    700 2nd Street, NE<br>    Washington, DC 20002<br><br>                        *Plaintiff,*<br><br>v.<br><br>ROB BONTA, in his Official Capacity as<br>Attorney General of California<br>    1300 "I" Street<br>        Sacramento, CA 95814-2919<br><br>                        *Defendant.* | Case No. 1:24-cv-01533-APM<br><br><br>**FIRST AMENDED COMPLAINT<br>FOR DECLARATORY AND<br>INJUNCTIVE RELIEF** |

### <u>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff the American Chemistry Council, Inc. ("ACC") brings this action for declaratory and injunctive relief against Defendant Rob Bonta, in his official capacity as Attorney General of the State of California, and alleges as follows:

### <u>PRELIMINARY STATEMENT</u>

1.      This action involves an attempt by a state attorney general to use the powers of his office to punish a trade association based in Washington, D.C. for presenting views to a federal agency, also based in Washington, D.C., that conflict with the policy positions that the state official has advocated in the very same federal regulatory proceeding occurring in D.C. That effort is an affront to the freedom of speech, the freedom to associate, and the right to petition the government to adopt the policy that the speaker believes is best. All of those cornerstone First Amendment rights are ultimately dependent on the ability of private parties to speak "without…fear of subsequent punishment" from powerful government officials who have a different view of optimal policy.[1] Where, as here, government officials lose sight of those

---

[1] *Roth v. United States*, 354 U.S. 476, 488 (1957) (quoting *Thornhill v. State of Ala.*, 310 U.S. 88,

principles, it falls to the courts to rein in their excesses and safeguard the rights to political expression that lie at the very heart of a free society and representative governance. And, where (1) the challenged government action targeted a D.C. trade association; (2) by presenting the trade association with a subpoena demanding disclosure of constitutionally-protected information from the District; (3) the information demanded relates to information that the trade association submitted to a federal agency in the District, both in writing and at an in-person workshop also attended by the state agency; (4) the state agency overtly stated that it was investigating the trade association's regulatory submission to the federal agency in the District; (5) the state agency then, changing its story, claimed that the investigation relates to a press release that the trade association issued from the District about the regulatory submission made the same day in the District; (6) the state agency furthered its demands by serving the trade association, within the District, with a state-court petition to compel enforcement of the subpoena; and (7) the state official and his subordinates regularly travel to and participate in events in the District, both related and unrelated to the conduct that injured and continues to daily injure the D.C. trade association, the courts of D.C. may exercise jurisdiction over the state official consistent with the D.C. long-arm statute and the Due Process Clause.

2.      Plaintiff, the American Chemistry Council ("ACC"), exercised its freedom to speak on behalf of a select group of its members by answering a Federal Trade Commission request for public comment. Defendant Rob Bonta, the Attorney General for the State of California, advocated a contrasting policy position. He then subpoenaed documents from ACC in order to ascertain its advocacy strategies and hinder its political engagement on the same policy issue that his office and ACC and its members disagree. These documents, however, are First Amendment privileged communications. To justify his subpoena and sidestep the privilege, Defendant Bonta posits that the documents represent speech that is false and thus unprotected, whereas if they reflected truthful speech, they concededly would be protected. This theory, if followed, would grant the

---

101–02 (1940)).

government broad license to treat disfavored associational speech as unprotected, and as has happened here, that government officials may bully their adversaries into curtailing their speech and public advocacy.

3.      Politicized investigations undermine public confidence. Defendant is using his investigative power to intimidate ACC and its members, to silence speech, and to undermine the federal government's request for public comment on matters of public concern. The Court should intervene to halt those abuses.

## **INTRODUCTION**

4.      This dispute arises from an event common to the political life of the District: a federal agency's call for public comment on a matter under consideration by the agency. Specifically, after the United States Federal Trade Commission ("FTC") issued a public request for comment on updates to its Guides for the Use of Environmental Marketing Claims (the "Green Guides") in 2022, ACC, a Washington, D.C.-based trade association, exercised its freedom of speech and to petition the government, bringing together a select group of its members and submitting a comment to the FTC—supported by consumer data compiled by a third party—on ACC's views about how consumers understand plastics recyclability claims. Based on survey evidence, ACC also issued a press release stating that "Advanced Recycling is Recycling, 88% of Americans Say in Survey."[2]

5.      Defendant Bonta also submitted comments to the FTC, staking out an opposing position—this comment was signed by Elizabeth Rumsey, the same Deputy Attorney General who has appeared for Defendant Bonta in this litigation.[3] Without citation to any source, or any consumer survey data, Defendant Bonta offered his view that "advanced recycling" and certain

---

[2] Exhibit 1, *Advanced Recycling Is Recycling, 88% of Americans Say in Survey*, ACC (Apr. 20, 2023),                https://www.americanchemistry.com/chemistry-in-america/news-trends/press-release/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey (Exhibits cited in this Amended Complaint are attached hereto).

[3]      R.      Bonta,      et      al.,      *Green      Guides      Review*      (Apr.      24,      2023), https://oag.ca.gov/system/files/attachments/press-docs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf.

other types of recycling "should not qualify as recycling" unless these processes met certain stringent criteria which run counter to ACC's advocacy perspectives and will hinder potential growth and use of advanced recycling technologies.[4] The FTC thus had before it the competing views of ACC and Defendant Bonta, as well as others, just as the Commission had requested. ACC and Defendant Bonta also expressed their competing views during "Talking Trash at the FTC," an in-person public workshop hosted by the FTC on May 23, 2023 in the District, where representatives from ACC and Defendant Bonta's office were present.[5]

6.      Leading the workshop, an associate director of the FTC's enforcement division emphasized the importance of survey data to the FTC's process: "If you have evidence of how consumers interpret your claim, and the gold standard in that area is survey evidence. We'd love, if you don't have survey evidence, if you'd go out and get it. There's a lot of information online at the FTC on how to conduct a really good survey. You can look at the surveys that we've conducted in the past, but that is the most influential piece of evidence we can have." *Id.* at 2.

7.      The same associate director also sought to underscore the purposes of the workshop and of the Green Guides: "Let's start with what the Green Guides are not. The Green Guides aren't environmental policy. So you may have really good ideas about how to further environmental policy. We have neither the mandate nor the power to do that. What we are about is making sure that claims are not deceptive, and we'll talk about that in a second. If you have environmental policy considerations, those are best addressed to the much larger building down the street at the EPA or to the even larger building up on the hill on the other side of the FTC."[6]

8.      More broadly, the same associate director emphasized that the FTC wanted to make sure it had the benefit of competing viewpoints, stating: "this is not just a proforma exercise. We are open to being influenced. This is not like maybe many of the other government

---

[4] *Id.*

[5] *See* FTC, *Talking Trash at the FTC: Recyclable Claims and the Green Guides* 45–61 (May 23, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf (transcript of proceedings, noting in-person attendance in D.C. and extensive comments from a California Deputy Attorney General).

[6] *Id.* at 1–2.

functions you may have attended. We want to be influenced, so let me tell you how to influence us, and that starts with the framework that we have for the Green Guides."[7] He added, with respect to the workshop format and the panel of speakers who would be most prominently featured: "We also want to hear from everybody. We realize that the panel slots are limited. We tried to get an array of people who would represent the kind of panoply of views out there, but of course they don't represent every single view. If you hear things that you have different views on or important pieces of information, you have until June 13th right now to comment on those. We take those comments every bit as seriously as anything that's said on this stage, so please take good notes and comment if you agree, if you disagree, if you have additional information."[8]

9.      Apparently unsatisfied with being a mere participant in the public comment proceeding initiated by federal officials under federal law, Defendant Bonta then sought to wield his investigative power to ascertain ACC's internal advocacy strategies, bully ACC, and to discourage ACC and its members from exercising their freedom to petition the federal government. Defendant Bonta subpoenaed ACC, seeking information about the Environmental Claims Study that formed the basis for ACC's comments to the FTC – the same comments that Bonta had lined up to oppose in the regulatory proceeding.

10.     Acting in good faith, ACC produced certain documents responsive to the subpoena. ACC did not produce certain responsive documents that are subject to United States and California constitutional privileges because the disclosure of such documents would discourage ACC and its members from exercising their First Amendment rights to speak, associate, and petition the government on matters of public concern. ACC withheld those documents from production, providing a log with information ACC believed sufficient for Defendant Bonta to assess the constitutional privilege claims.

11.     In a letter dated May 3, 2024, Defendant Bonta challenged ACC's constitutional privilege claims. Tellingly, the letter attacked ACC's Environmental Claims Study, referring to it

---

[7] *Id.* at 1.
[8] *Id.* at 2.

as "'survey data'" with quotation marks, suggesting that Defendant Bonta questioned whether ACC had performed an appropriate survey.[9] Rather than identifying additional information that Defendant Bonta believed would find helpful in assessing ACC's constitutional privilege claims, Defendant Bonta accused ACC and its members of attempting to "fraudulently sway the government and public" through the public comment process.[10] Defendant Bonta characterized ACC's speech as untruthful and, therefore, unprotected by the United States and California constitutions.

12.     The May 3, 2024 letter makes clear that, far from constituting a neutral investigative process, Defendant Bonta pre-judged the outcome of his investigation. His investigation is merely a means to obtain ACC's internal advocacy strategies to advantage his own engagement on an on-going Federal policy issue and to punish ACC for speech with which Defendant Bonta disagrees.

13.     On May 28, 2024, Bonta filed a Petition to Enforce the subpoena in the Superior Court of the State of California. The petition accuses ACC and its members of perpetuating a "deceptive recycling campaign," and asserts that Bonta "need not merely stand by as the plastics industry and ACC … intentionally and knowingly make untruthful and fraudulent statements to the public, the government, and the legislature in order to increase their profits." Bonta appeared to concede that, absent purported fraud, the types of documents he seeks would be protected by ACC's constitutional rights. But Bonta had supposedly determined that ACC has engaged in "potentially unlawful and fraudulent speech," which "is not protected by the First Amendment."[11]

14.     Defendant Bonta's investigation is chilling further speech and association by

---

[9] ECF No. 1-4, Ex. A at 2.

[10] *Id.*

[11] Bonta appeared to retreat from that position at a subsequent hearing before this Court, conceding in a colloquy with the Court that all of ACC's relevant speech enjoys at least "qualified protection under the First Amendment" and further conceding that some of it concerns "petitioning of the government … a core activity under the First Amendment." ECF No. 28, Aug. 28, 2024 Hr'g Tr. at 49:21-54:1. To be clear, ACC's position is that no commercial speech is involved in this case and that all of ACC's relevant speech bears full First Amendment protection. *See*, *e.g.*, *id.* at 75:18–77:5.

ACC and its members by forcing ACC to divulge information that ACC and its members believed would remain anonymous, confidential, and private—thus violating free speech, associational, and petitioning rights. Revelation of the material Defendant Bonta seeks would make ACC and its members less likely to associate, speak freely, or petition the government on important national issues. Indeed, in reaction to the Investigative Subpoena, ACC has foregone further public advocacy and refrained from engaging in additional consumer research initiatives for fear of incurring additional demands from Defendant Bonta.

15.     Defendant Bonta's pernicious use of governmental power to punish speech with which he disagrees threatens the fundamental freedoms enshrined in the United States and California Constitutions.

16.     Defendant Bonta's Investigative Subpoena has already chilled ACC's speech, and a Petition to Enforce the Investigative Subpoena has further exacerbated those harms. This action seeks to shield ACC's constitutionally protected speech, associational rights, and petitioning conduct, and to enjoin Defendant from taking further actions to chill ACC's exercise of its constitutional rights.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction under Title 28, United States Code, Section 1331 over ACC's federal constitutional claims for declaratory and injunctive relief, which arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, Sections 1983 and 1988. The Court may also exercise supplemental jurisdiction over ACC's state-law claims, which derive from the same common nucleus of operative fact as ACC's federal claims.[12]

18.     ACC has Article III standing in its own right because ACC has suffered and will continue to suffer injuries-in-fact; there is a direct causal connection between Plaintiff ACC's injuries and Defendant Bonta's actions in pursuing the Investigative Subpoena. A favorable

---

[12] *See Coleman v. D.C.*, 794 F.3d 49, 56 n.1 (D.C. Cir. 2015).

decision from this Court granting ACC relief will redress those injuries. This dispute is ripe because Defendant is already violating ACC's rights, and ACC will suffer further imminent invasions of those rights in the absence of relief from this Court. ACC has an actual fear that Defendant will enforce the Investigative Subpoena, which has already chilled its speech.

19.     This Court has specific personal jurisdiction over Defendant Bonta in his official capacity as California Attorney General. For constitutional purposes, specific personal jurisdiction exists where the defendant has "purposefully established minimum contacts within the forum State."[13] Physical presence is not a prerequisite to jurisdiction: "A nonresident defendant need not have been physically present in the District for courts to exercise personal jurisdiction," but "[r]ather, the critical issue is whether the individual's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."[14]

20.     Further, Plaintiff alleges unlawful retaliation in violation of the First Amendment, an intentional tort. *See infra* Count I. In intentional-tort cases, "personal jurisdiction can be based upon: (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state."[15]

21.     Personal jurisdiction is appropriate under the District of Columbia's long-arm statute, D.C. Code § 13-423(a)(1), (3), and (4), because ACC's claims for relief arise out of Bonta "(1) transacting any business in the District of Columbia"; "(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or] … (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia [and] … engag[ing] in a[] … persistent course of conduct … in the District of Columbia." D.C. Code § 13-423(a).

---

[13] *Media Matters for Am. v. Paxton*, No. 24-CV-147 (APM), 2024 WL 1773197, at *9 (D.D.C. Apr. 12, 2024) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).
[14] *Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 242 (D.C. 2015) (internal quotations omitted).
[15] *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 29 (D.D.C. 2017) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)).

22.    ACC's claims arise from Bonta transacting any business in the District. Subsection (a)(1) is effectively congruent with the permissible limits of personal jurisdiction under the Due Process Clause.[16] "Even a single act may be sufficient to constitute transacting business, so long as the contact is voluntary and deliberate, rather than fortuitous."[17] The Court can exercise personal jurisdiction over Defendant Bonta under this standard.

23.    Bonta served ACC, headquartered in the District, with a subpoena seeking communications relating to information that ACC provided to a federal agency, the FTC, that is likewise located in the District.[18] Defendant Bonta's subpoena defines ACC as "the non-profit trade association … with the address 700 Second Street, NE, Washington, DC 20002."[19] Bonta knew that ACC is headquartered in the District and that his subpoena would be received by ACC in the District. The documents at issue involve employees in ACC's office in the District and comments submitted to the FTC in the District. The District is where ACC would have to undertake efforts to further comply with the Investigative Subpoena; if Bonta sought to conduct interviews with ACC leadership or the employees involved, those individuals would be present in the District. By commanding production of such documents, Defendant Bonta has "directed" activity at and transacted business in the District. And Plaintiff's claims "arise" from those contacts because its claims challenge the constitutional propriety of Defendant Bonta's Investigative Subpoena. *See infra* Counts I–III. In sum, Defendant Bonta's conduct created a "substantial connection" to the District by targeting ACC's petitioning activity there.

24.    ACC's claims arise out of additional business Bonta transacted in D.C. Bonta filed a Petition to Enforce his subpoena in California State Court. On May 30, 2024, a process

---

[16] *See*, *e.g.*, *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016); *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1113 (D.C. 2012).

[17] *Media Matters for Am.*, 2024 WL 1773197, at *12 (internal quotation marks and citations omitted)).

[18] ACC agreed, at Defendant Bonta's request, to receive service of process, via e-mail, through its California-based attorneys. In making this request, Bonta made clear that his office was "prepared to personally serve the American Chemistry Council" if ACC did not agree to accept e-mail service on its attorneys.

[19] ECF No. 1-6, Ex. C at 2.

server who, upon information and belief had been hired by Bonta prior to that time, hand-served the Petition to Enforce on ACC at its headquarters in D.C. through ACC's General Counsel.

25.     Purportedly as part of the same investigation, Bonta served a "Preservation Notice" via process server he hired to serve the notice in D.C. on the Plastics Industry Association in the District on April 28, 2022.[20]

26.     Defendant Bonta also caused tortious injury in the District by an act or omission in the District, giving rise to jurisdiction under subsection (a)(3). The above actions, a number of which took place in the District, caused ACC injury here. ACC resides in D.C. and would be required to comply with the subpoena here. Further, ACC has experienced the chill on its speech, associational, and petitioning activities in D.C., where it resides, operates, and petitions the federal government.

27.     Even if Bonta's actions are not considered to be "in the District," jurisdiction exists under subsection (a)(4), which authorizes jurisdiction for "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia" when one or more additional "plus factors" is present. ACC's claims arise out of Bonta's actions that caused a tortious injury in D.C. And at least one such "plus factor" is present here because Bonta "engages in a [] … persistent course of conduct … in the District of Columbia."[21] First, Bonta has engaged in conduct in the District related to the FTC processes. As Bonta's counsel stated in a hearing in this action: "AG Bonta knows how to play the regulatory rule-making game. Yes, we contributed our own comments, submitted our own comments to the FTC, participated in their panels, and are playing an active role on that front[.]" ECF No. 28, Aug. 28, 2024 Hr'g Tr. at 61:5–9. That course of conduct alone is persistent.

---

[20] Pl's Suppl. Br. at 2 n.2, *Plastics Indus. Ass'n v. Bonta*, No. 1:24-cv-01542-APM (Aug. 30, 2024), ECF No. 18.

[21] Note that the "government contacts exception" does not apply to assertions of personal jurisdiction under the "persistent course of conduct" provision. *Akhmetshin v. Browder*, 275 A.3d 290, 296 (D.C. 2022). ACC acknowledges that the "government contacts exception" does apply to subsection (a)(1), *id.*, and thus that government contacts are not relevant to the Court's consideration of whether Bonta "transacts business" in the District.

28.     As part of his response to the FTC process, members of Bonta's office traveled to the District. For example, Deputy Attorney General Raissa Lerner was a panelist for a public workshop hosted by the FTC on the Green Guides; the workshop was held at the auditorium in the Constitution Center in the District.[22] On information and belief, when Raissa Lerner visited the District, she ate at restaurants and stayed at a hotel in the District.

29.     Second, Bonta and his officers, employees, and agents, regularly travel to the District to take part in events in which they communicate their own activities to the national audiences that are readily available in the District.[23] For example, media reports and press releases indicate that Bonta travels to the District to accept awards from advocacy organizations relating to his enforcement activities,[24] and to speak at events publicizing his official acts.[25] On information and belief, during the times that Defendant Bonta and his subordinates travel to the District for such activities, they eat at District restaurants, stay at District hotels, and use District transportation and other amenities. These actions, too, constitute a "persistent course of conduct" sufficient to support the exercise of personal jurisdiction under subsection (a)(4) over tortious activity outside the District that harms D.C. residents.[26]

30.     Finally, on information and belief, personal jurisdiction is also available under subsection (a)(4) because Bonta is a persistent participant in litigation and political activities. For

---

[22]    *See Talking Trash at the FTC*, *supra* note 5, at 45–61, https://www.ftc.gov/system/files/ftc_gov/pdf/Talking-Trash-at-the-FTC-Recyclable-Claims-and-the-Green-Guides.pdf (featuring in-person attendance in D.C. by California Deputy Attorney General).

[23]    *See, e.g.*, Rob Bonta, (@robbonta), *Instagram*, https://www.instagram.com/p/CogorEhr87m/ (Feb. 11, 2023).

[24]    NCL, *Nation's Oldest Consumer Advocacy Organization to Present Annual Awards* (Oct. 11, 2023), https://nclnet.org/nations-oldest-consumer-advocacy-organization-to-present-annual-awards-to-former-hhs-secretary-and-former-kansas-governor-kathleen-sebelius-california-ag-rob-bonta-and-child-marriage-survivor-and-activist-fraidy-reiss-on-wednesday-october-11.

[25]    *E.g.*, Gillian Brassil & David Lightman, *Cal. Attorney Gen. Won't Decide on Governor Run Until After Election, He Says, Sacramento Bee* (May 11, 2024), https://www.sacbee.com/news/politics-government/capitol-alert/article288436557.html.

[26]    *See Lewy v. S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 127 (D.D.C. 2010); *Blumenthal v. Drudge*, 992 F. Supp. 44, 57 (D.D.C. 1998).

example, Bonta regularly appears before courts in this district to advocate for his preferred outcomes in amicus briefs,[27] has submitted comments in connection with proceedings in front of federal agencies other than the FTC, and has even attended the State of the Union as the guest of a Member of Congress.[28]

31.    Venue is proper under 28 U.S.C. section 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Columbia. Defendant Bonta caused his Investigative Subpoena to be directed to ACC in the District; the documents at issue were created in the District; the public comments at the heart of the Investigative Subpoena were submitted to the FTC in the District; ACC's further compliance or noncompliance with the Investigative Subpoena will occur in the District; and the substantial chill to Plaintiff has been suffered, in substantial part, in the District, where ACC resides.

## PARTIES

32.    Founded in 1872, ACC is a non-profit trade association, headquartered in

---

[27]Press Release, Cal. Dep't of Just., *AG Bonta Files Amicus Brief in Support of Washington D.C.'s Efforts to Hold Big Oil Accountable* (Apr. 7, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-files-amicus-brief-support-washington-dc%E2%80%99s-efforts-hold; Press Release, Cal. Dep't of Just., *AG Bonta Joins Bipartisan Amicus Brief to U.S. Supreme Court* (Dec. 18, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-joins-bipartisan-amicus-brief-us-supreme-court-defending; Press Release, Cal. Dep't of Just., *AG Bonta Joins Amicus Brief in Support of Washington, D.C.'s Large-Capacity Magazine Ban* (Oct. 27, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-joins-amicus-brief-support-washington-dc%E2%80%99s-large-capacity; Press Release, Cal. Dep't of Just., *AG Bonta Urges NLRB to Strengthen Protections* (Feb. 10, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-urges-national-labor-relations-board-strengthen; Press Release, Cal. Dep't of Just., *AG Bonta Supports HUD's Efforts to Fight Ongoing Housing Discrimination* (July 11, 2024), https://oag.ca.gov/news/press-releases/attorney-general-bonta-supports-hud%E2%80%99s-efforts-fight-ongoing-housing; Press Release, Cal. Dep't of Just., *AG Bonta Urges Court to Uphold Prohibitions of Firearms on Public Transit* (Sept. 26, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-urges-court-uphold-prohibitions-firearms-public-transit

[28] Press Release, Congressman Jim Costa, *Costa Introduces AG Rob Bonta as His State of the Union Guest* (Feb. 6, 2023), https://costa.house.gov/media/press-releases/costa-introduces-attorney-general-rob-bonta-his-state-union-guest; Rob Bonta, (@robbonta), *Instagram*, https://www.instagram.com/p/CoY6K9MOm43/ (Feb. 8, 2023); Rob Bonta, (@robbonta), *Instagram*, https://www.instagram.com/p/Coa2EJMLzHu/ (Feb. 8, 2023).

Washington, D.C. that represents its members—over 190 leading companies engaged in the business of chemistry. ACC employs 170 people in its Washington, D.C. office. ACC "advocate[s] for the people, policy, and products of chemistry that make the United States the global leader in innovation and manufacturing."[29] ACC's Plastics Division represents the leading resin manufacturers and partners in the United States' plastics value chain. The Plastics Division is an industry leader in promoting innovative plastics recycling and recovery programs. ACC has an interest in working with its members and regularly engaging in political speech and petitioning, including in submitting comments and engaging with policy makers at federal agencies. As part of its mission, ACC champions science-based policy solutions across all levels of government.

33.    Defendant, Rob Bonta, is the Attorney General for the State of California. Plaintiff brings this action against Mr. Bonta in his official capacity as Attorney General. California Government Code section 11180 *et seq*. grants Defendant Bonta powers in his capacity as Attorney General to make investigation concerning violations of any law or rule or order of the department.[30] California Government Code section 11180 also grants Defendant Bonta power to prosecute actions for violations of any law or rule or order of the department.[31]

## FACTS

### A.    Defendant Announces an Investigation into Global Plastics Pollution.

34.    On April 28, 2022, Defendant Bonta announced that he had initiated an investigation into the fossil fuel and petrochemical industries.[32] Defendant's press release stated that he planned to "target companies that have caused and exacerbated the global plastics pollution crisis, their role in perpetuating myths around recycling, and the extent to which this deception is still ongoing."

---

[29] ACC, *About ACC*, https://www.americanchemistry.com/ (last visited Sept. 19, 2024).
[30] Cal. Gov. Code § 11180(b).
[31] *Id.*
[32] *Attorney General Bonta Announces Investigation into Fossil Fuel and Petro Chemical Industries for Role in Causing Global Plastics Pollution Crisis*, Cal. OAG (Apr. 28, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-announces-investigation-fossil- fuel-and-petrochemical.

35.     Soon thereafter, Defendant Bonta sent a letter to ACC asking it to preserve certain documents. ACC, at great time and expense, took efforts to preserve potentially responsive documents and has agreed to continue preserving these documents.

36.     On information and belief, Defendant Bonta also engaged a process server in the District to serve documents upon the Industry for the Plastics Association ("PLASTICS").

**B.    The United States Federal Trade Commission Issues a Public Request for Comments, and ACC Answers that Call with Comments and Survey Data.**

37.     On December 14, 2022, the FTC requested public comment on its Green Guides. In that public announcement, the FTC specifically requested "information on consumer perception evidence of environmental claims."[33]

38.     Among other things, the FTC sought comment on whether the Green Guides should "be revised to provide guidance on making 'recycled content' claims based on alternative method(s), *e.g.*, mass balance calculations, certificate (*i.e.*, credit or tagging) systems, or other methods? If so, why, and what guidance should be provided? If not, why not?"[34] The FTC further asked: "What evidence supports your proposed revision?"[35]

39.     In line with its mission and at the urging of its members, ACC and a coalition of its members took up the federal government's call to provide comments, including the call to obtain survey data to address the questions raised by the FTC about consumer perspectives regarding recycling.

40.     On behalf of its members, ACC engaged Heart+Mind Strategies, an independent research and consulting firm, to conduct a national study of consumer perceptions and labelling preferences (the "Environmental Claims Study") to address the FTC's questions about consumer

---

[33] *FTC Seeks Public Comment on Potential Updates to its 'Green Guides' for the Use of Environmental Marketing Claims*, FTC (Dec. 14, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/12/ftc-seeks-public-comment-potential-updates-its-green- guides-use-environmental-marketing-claims.

[34] *Guides for the Use of Environmental Marketing Claims*, 87 Fed. Reg. 77,766, 77,769 (Dec. 20, 2022), https://www.federalregister.gov/documents/2022/12/20/2022-27558/guides-for-the-use-of-environmental-marketing-claims.

[35] *Id.*

perceptions of recyclable claims. Heart+Mind Strategies conducted this survey from January through February 2023, and analyzed more than 3,000 responses to the survey, to aid ACC's efforts to prepare comments for the FTC. To ensure that a variety of demographic groups were represented, the survey relied on U.S. Census data to establish metrics for age, gender, region, education, and race or ethnicity.

41.     ACC worked closely with some of its member companies to help ensure the survey focused on topics most relevant to FTC's scope of public inquiry. Although ACC's website identifies many of its members, including certain of its Plastics Division Members, ACC does not typically identify which individuals from its member companies engage in specific advocacy. Whether a member company stands or collaborates with ACC on a particular issue is not public. The identities of ACC members who participated in ACC's work to prepare the Environmental Claims Survey and provide comment on the Green Guides are not public.

42.     After receiving the Environmental Claims Study survey data, ACC and a working group of its members also collaborated in drafting comments to submit to the FTC.

43.     Both ACC's comments and the Environmental Claims Study pertain, in part, to technologies known as advanced recycling. Advanced recycling consists of a set of technologies that can help significantly increase the ability to recycle plastic materials. In simple terms, advanced recycling takes hard-to-recycle plastics—such as films, multi-layered pouches, tubes, — and turns the plastic polymers back into their original molecular components so that they can be processed (and used) again. Twenty-five U.S. states have enacted laws recognizing advanced recycling as a manufacturing activity.

44.     On April 20, 2023, ACC provided comments to the FTC, sharing the consumer perception data gathered in the survey.[36] ACC submitted its written comments, as well as the results of the Environmental Claims Study,[37] to the FTC at 600 Pennsylvania Avenue NW, Washington, DC 20580.

---

[36] ECF No. 1-5, Ex. B.
[37] ECF No. 1-7, Ex. D.

45.     Also on April 20, 2023, ACC published a press release, issued from "Washington," where ACC is headquartered, that discussed ACC's comments to the FTC regarding the Green Guides and the results of the Environmental Claims Study. As supported by data from the Environmental Claims Study, the press release was headlined: "Advanced Recycling Is Recycling, 88% of Americans Say in Survey."[38] Immediately below that headline, the press release states: "Consumer Survey Based on FTC Green Guides Questions, Serves as Basis for ACC Comments." The press release further explained that "the full research report and the evidence-based recommendations from them will be submitted by the American Chemistry Council's (ACC) Plastics Division to the FTC as the Commission begins a multi-year effort to update the Green Guides." And the press release concluded with a section providing "Additional Context" concerning the FTC's regulatory process and the relevance of the survey to that process.

### C.     Bonta Also Answers the FTC's Call for Comments on the FTC's Green Guides.

46.     ACC was not alone in responding to FTC's Green Guides request. The FTC received more than 1,300 comments during the comment period. Among the commenters was Defendant Bonta, who submitted comments on April 24, 2023.[39] Defendant Bonta submitted his comments to Chair Lina M. Khan at 600 Pennsylvania Avenue, NW, Suite CC-5610 (Annex J) Washington, DC 20580.

47.     Defendant Bonta's comments state:

> advanced, chemical, or molecular recycling, using methods such as gasification, pyrolysis, chemical depolymerization, solvent-based processing, or other non-mechanical means, should not qualify as a recycling program unless and until those processes are proven to be as efficient as mechanical recycling in yielding a useable product, and are shown to have an actual environmental benefit.[40]

---

[38] Ex. 1, *Advanced Recycling Is Recycling, supra* note 2.
[39] *See Green Guides Review*, *supra* note 3.
[40] *Id.* at 31 (emphasis omitted).

Defendant Bonta's comments further propose revising the Green Guides to "require that an item marketed as 'recyclable' is of the type that is routinely and actually recycled through a mechanical process that reconstitutes it into a new item, or into raw material used to manufacture a new item."[41]

48.     Defendant Bonta participated in other public advocacy processes, advancing views regarding advanced recycling.[42] Among others, these comments are signed by a Deputy Attorney General and Supervising Deputy Attorney involved in the Investigative Subpoena.

**D.     Bonta Subpoenas ACC After His Comments to the FTC Conflict With ACC's Survey Data.**

49.     Within months of ACC's submission of comments to the FTC, on December 6, 2023, Defendant Bonta served an Investigative Subpoena to ACC pursuant to powers conferred on the California Attorney General.[43]

50.     The Investigative Subpoena identifies ACC as "the non-profit trade association for the chemicals industry, with the address 700 Second Street, NE, Washington, DC 20002 including subordinate or affiliated organizational units of any kind, such as parents, divisions, affiliates, partnerships, subsidiaries, predecessors including all present and former officers, directors, employees, agents, consultants, attorneys, representatives or other persons acting on behalf of the foregoing."

51.     The Investigative Subpoena's caption includes Attorney General of California Rob Bonta, and Defendant Bonta's assistants and deputies.

52.     The Investigative Subpoena commands that ACC produce:

---

[41] *Id.*

[42] *See* Comments on *Draft National Strategy to Prevent Plastic Pollution: Request for Public Comment*, Cal. AG (July 31, 2023), https://oag.ca.gov/system/files/attachments/press-docs/EPA%20Draft%20Plastics%20Strategy%20Comment%20Letter%20%28Final%2BBookm arks%29.pdf; Bonta, et al. *U.S. Environmental Protection Agency Proposed Rule; Significant New Use Rules on Certain Chemical Substances*, Cal. OAG (Aug. 18, 2023), https://oag.ca.gov/system/files/attachments/press-docs/Comments%20of%20the%20AGs%20of%20MD%20CA%20MA%20DC%20and%20other %20states%20on%20SNURs.pdf.

[43] *See* ECF No. 1-6, Ex. C at 1–2.

All DOCUMENTS and COMMUNICATIONS RELATED
TO the ENVIRONMENTAL CLAIMS STUDY, including,
but not limited to, the proposal, planning, execution, and
follow-up regarding the ENVIRONMENTAL CLAIMS
STUDY and All DOCUMENTS and COMMUNICATIONS
RELATED TO the funding of the ENVIRONMENTAL
CLAIMS STUDY.

53.     The Investigative Subpoena defines "Environmental Claims Study" as "the survey

conducted from January 30, 2023 through February 8, 2023, and all associated work product and

COMMUNICATIONS, by the AMERICAN CHEMISTRY COUNCIL and Heart+Mind

Strategies, as referenced in YOUR April 20, 2023 press release titled, 'Advanced Recycling is

Recycling, 88% of Americans Say in Survey' published on YOUR website at

https://www.americanchemistry.com/chemistry-in-america/news-

trends/pressrelease/2023/advanced-recycling-is-recycling-88-of-americans-say-in-survey."

54.     The Investigative Subpoena included a declaration from a Deputy Attorney General

stating that "[t]he Attorney General of California, pursuant to California Government Code section

11180, has authorized an investigation of possible violations relating to business practices and

subjects under the jurisdiction of the California Department of Justice."

55.     The declaration also provided that "[t]he Attorney General's Office has received

information that the AMERICAN CHEMISTRY COUNCIL'S promotion and marketing of

recycling plastic may have resulted in legal violations. These violations include potential common

law and statutory violations." Asserted violations include "potential common law and statutory

violations, such as products liability, public nuisance, and violations of the California Unfair

Competition Law (Bus. & Prof. Code sections 17200 *et seq*.), California False Advertising Law

(Bus. & Prof. Code sections 17500 *et seq*.), and other laws regarding environmental protection,

public health, and consumer protection."

56.     Both before and during the pendency of this litigation, the Office of the Attorney

General explicitly stated, including in a public press release, that ACC's comments to the FTC

were the impetus for the subpoena. Before the litigation began, Bonta's office sent ACC a

demand letter that states: "the Subpoena requests communications and documents related to the funding, proposal, planning, execution, and follow-up of the Environmental Claims Study (Study) *submitted by ACC to the Federal Trade Commission (FTC)*."[44] The demand letter further made clear Bonta's position that these communications were subject to disclosure because "ACC provided the Study's findings and attached 'survey data' in comments made to the FTC in an attempt to sway the FTC's decision-making as to the definition of recycling."[45] After this litigation commenced, Bonta responded by filing a petition in the California courts that seeks to enforce the Investigative Subpoena. Like the demand letter, the Petition to Enforce asserts that "ACC put the study into issue when it submitted the Study and 'data' to the FTC" and contends that "ACC's provision of false facts and data to the FTC … is not protected by the First Amendment."[46] Bonta also issued a press release trumpeting the filing of his petition to enforce the subpoena. Like the demand letter and the petition itself, the press release makes clear that the enforcement action was intended to investigate ACC's First-Amendment protected petitioning and advocacy: "The subpoena seeks specific documents containing information about an ACC-funded study, called the Environmental Claims Study (Study), *that ACC submitted to the Federal Trade Commission (FTC) in an attempt to modify the existing definition of recycled content and other definitions relevant to their campaign to expand chemical recycling*."[47] The California Attorney General's Office has since sought to play down those statements but does not deny that they were made.[48]

---

[44] ECF No. 1-4, Ex. A at 2 (emphasis added).

[45] *Id.*

[46] Petition to Enforce, *California ex rel. Bonta v. The Am. Chemistry Council*, No. 24-cv-010509 (Cal. Super. Ct. May, 28, 2024), ECF No. 16, Ex. E. at ¶ 46 (emphasis added).

[47] Exhibit 2, Press Release, Cal. Dep't of Just., *AG Bonta Petitions Court to Compel Plastics Industry Association & ACC to Fully Comply with Outstanding Investigative Subpoenas* (May 28, 2024) https://oag.ca.gov/news/press-releases/attorney-general-bonta-petitions-court-compel-plastics-industry-association-and#:~:text=The%20state's%20petitions%20ask%20the,surrounding%20the%20recyclability%20of%20plastic (emphasis added).

[48] *See, e.g.*, ECF No. 24, Decl. of Justin Lee, Ex. 2; ECF No. 28, Aug. 28, 2024 Hr'g Tr at 49:19–51:24.

E.   **ACC Produces Documents to Bonta and Also Objects to Production of Documents Protected by Constitutional Privileges.**

57.   ACC timely objected to the Investigative Subpoena on the ground that, among other things, the Investigative Subpoena sought documents that are privileged from disclosure by the United States and California Constitutions.

58.   Notwithstanding its objections, ACC undertook a good faith effort to identify responsive materials located in its files.

59.   As part of its efforts, ACC identified employees and former employees who might have had materials related to the subject matter of the Investigative Subpoena.

60.   During the time frame of the Investigative Subpoena, these custodians worked in ACC's headquarters located in the District.

61.   ACC's outside counsel undertook a document-by-document review to assess whether documents were responsive to the Investigative Subpoena's commands.

62.   Acting in good faith, ACC produced documents on a rolling basis on January 19, 2024, February 2, 2024, and March 15, 2024.

63.   The document production included the Environmental Claims Study summary prepared by Heart+Mind Strategies, the Survey questions and responses, ACC's comments to the FTC, along with communications with third parties that did not discuss member comments.

64.   Along with its final production, on March 15, 2024, ACC submitted a log identifying 550 documents withheld from production on the basis of U.S. and California constitutional privileges ("ACC's Constitutional Privileges Log").

65.   These withheld documents consist of materials and communications generated by ACC working with its coalition of members to submit comments related to the Green Guides. The documents include information that would reveal the strategy, timing, focus, policy perspectives, viewpoints, identity, and preferences of ACC and its members engaged in petitioning the FTC and responding to the FTC's request for comment on the Green Guides.

66.   The withheld documents were not distributed publicly. ACC and its members

expected that these documents would remain confidential. ACC and its members expected that the withheld documents would not be disclosed to governmental actors engaging in public advocacy on the same topics. ACC's members expected that their decision to work with ACC to respond to the FTC's request for comment on the Green Guides would not be public.

67.     The information provided in ACC's Constitutional Privileges Log, in connection with the subject matter of the Investigative Subpoena, is sufficient to substantiate ACC's constitutional privilege claims. ACC's Constitutional Privileges Log included the following information for each withheld document: a unique identifying number, a number associated with the "parent" of any withheld attachment, the author or sender of the document, the recipients of the document, the carbon copy recipients of the document, the blind copy recipients of the document, the date range of the document, and a description of the constitutional privilege. ACC redacted the identities of member representatives to the extent they would otherwise have appeared on the log.

### F.     Bonta Issues a Demand Letter to ACC Maligning the Environmental Claims Study as an Attempt to "Fraudulently Sway the Government and the Public."

68.     On May 3, 2024, a Deputy Attorney General for Defendant sent to ACC's outside counsel a letter titled RE: American Chemistry Council: Petition to Enforce Investigative Subpoena ("Demand Letter").

69.     The Demand Letter states that "ACC's privilege claims lack merit" and "request[s] that ACC promptly produce the documents listed on the privilege log responsive to the [Investigative] Subpoena by May 17, 2024."

70.     The Demand Letter includes no citation to any case or any explanation of what information would need to be included in order to substantiate a constitutional privilege claim. Instead, the Demand Letter maligns ACC's speech as "untruthful," its productions "dismal," and characterized ACC's Environmental Claims Study as "an attempt to sway the FTC's decision-making as to the definition of 'recycling.'" The Demand Letter makes clear that Defendant disagrees with ACC's speech and denies that ACC has any constitutional right to submit the

Environmental Claims Study or its results to the FTC.

71.     The Demand Letter claims that ACC failed to provide information required by law to support its claims of privilege because "ACC has not shown any infringement on their First Amendment rights flowing from the Attorney General's demand for documents."

72.     The Demand Letter asserts: "ACC provided the [Environmental Claims] Study's findings and attached 'survey data' in comments made to the FTC in an attempt to sway the FTC's decision-making as to the definition of 'recycling.' The ACC, in this way, has put the [Environmental Claims] Study front and center as a fact and potentially as a defense; therefore, the Study itself, its credibility, purpose, and funding, are all at issue." In saying this, the Demand Letter explicitly advanced the view that ACC's advocacy to the FTC provided grounds for the California Attorney General to investigate ACC's internal, confidential communications relevant to that federal advocacy.

73.     The Demand Letter took that position even though Defendant has not filed litigation against any company or individual as part of his two-year old investigation into the fossil fuel and petrochemical industries.

**G.     Bonta's Demand Letter Violates ACC's Right to Petition and Exercise its Constitutional Rights on Behalf of Its Members.**

74.     The Demand Letter is a naked attempt to pinpoint which of ACC's members joined together to petition the federal government, acknowledging that the Environmental Claims Study was "formulated between a partnership of members and ACC" and cynically concluding that it "demonstrates the plastic industry's continued attempts to fraudulently sway the government and public into believing that they are creating solutions to the plastics waste and pollution crisis, while in reality, exacerbating the crisis." The Demand Letter's allegations demonstrate that Defendant Bonta has pre-judged the result of his investigation, determining before concluding the investigation that ACC and its members' speech is untruthful and relevant to a "defense," despite Defendant Bonta having filed no litigation for ACC to defend against. ACC and its members' speech is not "untruthful." Rather, it accurately describes the results of the Heart+Mind survey and

provides underlying survey information that readers may assess for themselves. ACC's speech is under attack because it reflects positions that the California Attorney General disagrees with.

75.     The Demand Letter and its unsubstantiated and incorrect allegations underscore exactly why Defendant Bonta's Investigative Subpoena—and efforts to force ACC to reveal the identity and undertakings of ACC's members related to government petitioning—chills speech and associational rights. Disclosure of the documents requested by the Demand Letter would cause irreparable damage to ACC and its members, revealing ACC and its members' strategy and goals in lobbying, drafting legislation, coordinating with interested members of the public, and managing membership. Additionally, disclosure of the documents requested by the Demand Letter would cause irreparable damage to ACC and its members by revealing to a hostile party the identities of those members who associated to petition the government with the understanding that their identities would remain anonymous and confidential.

76.     ACC has members that provided comments on the Environmental Claims Study and ACC's submission to the FTC that do not agree to having their names disclosed to Defendant Bonta for fear of retaliation and intimidation.

77.     Disclosure of the documents requested by the Demand Letter would further chill ACC's members future speech and decision to associate to petition the government due to fear of similar forced-disclosure in the future.

**H.     Bonta Chilled, and Continues to Chill, ACC's Speech and Petitioning.**

78.     Defendant's investigation and Demand Letter have chilled ACC's speech and petitioning activities.

79.     In a meeting between ACC and the FTC staff on September 28, 2023, the FTC indicated that they would appreciate additional information related to their considerations about the Green Guides. The FTC is a data-driven organization, valuing empirical information to assist in rulemaking and other policy decisions.

80.     In response to the request from the FTC, in February 2024, ACC considered commissioning a second survey, similar to the Environmental Claims Study, to support further

education and advocacy efforts with the FTC. However, due to the Investigative Subpoena, ACC decided not to commission another survey for fear of being singled out by Defendant Bonta for expressing views that are contrary to his, including through additional subpoenas from Defendant Bonta to turn over documents and data related to that new survey. That fear is clearly reasonable, given the Demand Letter's claim that "an attempt to sway the FTC's decision-making as to the definition of 'recycling'" exposes to investigation not only the data submitted to the FTC but also internal associational "communications and documents related to the funding, proposal, planning, execution, and follow-up" of such public advocacy. Without data from the new survey, ACC has had to modify its advocacy efforts to the FTC, degrading its ability to speak, and preventing ACC from engaging in further public speech.

81.     ACC's speech has been further chilled in California where ACC has been reluctant to engage fully on certain policy issues important to its members' California interests for fear that its advocacy strategies and communications on those topics may be subject to additional singling out and retaliation from Defendant Bonta.

82.     ACC and its members are fearful that Defendant Bonta would single ACC out because it has expressed contrary viewpoints by requiring ACC to produce documents related to as yet unstated policy positions, drafts, and similar documents, which could be taken out of context or made public before ACC and its member had reached member consensus and decided to advance those positions publicly.

83.     ACC has also experienced hesitancy from members to send written communications to ACC for fear that those communications would be subject to production to Defendant Bonta. Written communication is a vital method ACC uses to work with its members and to develop public advocacy positions and strategies. Defendant Bonta's Investigative Subpoena and demand for the production of non-public communications that members expected would stay private has diminished ACC's ability to fully associate with its members, exercise its freedom of speech, and petition the government.

I.     **Through the Meet-and-Confer Process to Discuss Bonta's Demand Letter,**

**Bonta Makes Clear That He Will Require ACC to Provide the Names of Its Members Who Participated in the FTC Comments, A Further Effort to Retaliate Against and Chill Their Speech.**

84.     On May 16 and May 22, 2024, outside counsel for ACC met and conferred with California Deputy Attorneys General on behalf of the Defendant to discuss the Demand Letter. The Deputy Attorneys General asked that ACC provide the names and identities of the members currently redacted in ACC's privilege log. The Deputy Attorneys General also asked that ACC provide more detail about the content of the withheld documents, such as email subject lines.

85.     Revelation of the requested information would result in a similar chill that full disclosure of the withheld documents would effect.

**J.     Bonta Petitions A California State Court To Enforce His Subpoena And Hires A Process Server To Physically Serve ACC In D.C.**

86.     On May 28, 2024, four days after ACC initially filed this action, Bonta filed a Petition to Enforce his subpoena in California State Court.

87.     On May 30, 2024, a process server who, upon information and belief had been hired by Defendant Bonta prior to that time, hand-served the Petition to Enforce on ACC at its headquarters in D.C. through ACC's General Counsel.

## CLAIMS FOR RELIEF

### COUNT I

**K.     Violation of Plaintiff's Rights Under the First and Fourteenth Amendments of the United States Constitution (42 U.S.C. § 1983) and Plaintiff's Liberty of Speech Rights Under Article I Section 2 of the California Constitution and Plaintiff's Right to Assemble and Petition under Article I Section 3 of the California Constitution.**

88.     Plaintiff incorporates paragraphs one through 70 above as if set forth fully herein.

89.     Defendant Bonta violated, and continues to violate, Plaintiff's First Amendment rights by launching an investigation, serving an Investigative Subpoena in retaliation for Plaintiff's speech, petitioning, and associational activities, and filing a Petition to Enforce the Investigative Subpoena in order to force ACC to turn over materials protected by the First and Fourteenth Amendments of the United States Constitution, as well as by Article I Section 2 and Article I

Section 3 of the California Constitution. Defendant Bonta's use of the power of his office continues to discourage Plaintiff and its members from engaging in associational and petitioning activities. The chill imposed by Defendant Bonta's retaliatory actions injures Plaintiff's ability to associate with member organizations and petition the government. Absent relief from this Court, that chill will continue so long as Defendant Bonta's investigation remains active.

90.     "[T]he law is settled that . . . the First Amendment prohibits government officials from subjecting an individual to retaliatory actions."[49] "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."[50]

91.     The D.C. Circuit has long recognized First Amendment retaliation claims as "actionable because 'retaliatory actions may tend to chill individuals' exercise of constitutional rights."[51] That cause of action for First Amendment retaliation arises under 42 U.S.C. § 1983, which "has long [been] interpreted . . . to permit suits against officials in their individual capacities" for constitutional violations.[52] To prevail on its retaliation claim, Plaintiff must show: "(1) [Plaintiff] engaged in conduct protected under the First Amendment; (2) [Defendant Bonta] took some retaliatory action sufficient to deter a person of ordinary firmness in [Plaintiff's] position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action."[53] ACC satisfies each element.

92.     First, ACC's conduct is protected by the First Amendment: the freedom to associate—and to associate privately—is a bedrock of First Amendment jurisprudence.[54]

---

[49] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).
[50] *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).
[51] *Crawford-El v. Britton*, 93 F.3d 813, 846 (D.C. Cir. 1996) (Henderson, J., concurring) (quoting *ACLU of Md., Inc. v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993), *vacated by* 523 U.S. 574 (1998); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972).
[52] *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020).
[53] *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (citations omitted).
[54] *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161-62 (9th Cir. 2010) (holding that the First Amendment privilege applies to the identity of members and to internal campaign communications).

Defendant Bonta demands that ACC disclose the identities of members participating in the communications listed in the privilege log. But, the First Amendment does not take disclosure of member identities lightly, and "[t]he Supreme Court has long recognized that compelled disclosure of political affiliations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation."[55] There is no question that the right to association encompasses the freedom to engage in expressive association in pursuit of economic ends.[56] ACC and its members are within their First Amendment rights to collaborate on political activity that furthers their business interests. In addition to the freedom to associate, petitioning the government is "one of the most precious of the liberties safeguarded by the Bill of Rights," and this "right is implied by [t]he very idea of a government, republican in form."[57] ACC is an organization that enables its members to effectively exercise their right to petition the government by collaborating on shared political and economic interests. As established in the *Noerr-Pennington* doctrine, "parties exercise their right to petition when they advocate their causes and points of view respecting resolution of their business and economic interests."[58]

93.    California's constitutional right to liberty of speech, assembly, and petition are even more protective than the rights protected by the U.S. Constitution.[59]

94.    Second, Defendant Bonta has acted adversely to Plaintiff's protected activity of petitioning the FTC regarding the Green Guides. His investigation and intrusive Investigative

---

[55] *Am. Fed'n of Labor & Cong. of Indus. Org. v. Fed. Election Comm'n*, 333 F.3d 168, 175 (D.C. Cir. 2003).

[56] *See Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am., and its Locals 1093, 558 and 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1148 (D.C. Cir. 1978) (explaining that "economically motivated expression or association is not disqualified from protection under the first amendment"); *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470 (10th Cir. 2011) (holding that First Amendment protections applied to the member identities of a motor fuel trade group whose associational interest were economic in nature).

[57] *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 524–25 (2002) (citations omitted).

[58] *Venetian Casino Resort L.L.C. v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015) (citations omitted).

[59] *L.A. All. For Survival v. City of L.A.*, 22 Cal. 4th 352, 366 (2000); *Robins v Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 908 (1979).

Subpoena have already chilled Plaintiff's associational and petitioning activities and will continue to do so absent relief. Defendant Bonta's retaliatory conduct would "deter a person of ordinary firmness in [Plaintiff's] position from speaking again."[60]

95.   Third, Defendant Bonta's Investigative Subpoena is causally linked to Plaintiff's associational and petitioning privileges. The Investigative Subpoena and subsequent communications expressly state that Defendant Bonta commands production of "documents related to the funding, proposal, planning, execution, and follow-up of the Environmental Claims Study submitted by ACC to the Federal Trade Commission for the purpose of modifying the Green Guides."[61] Defendant Bonta has made his opinion about advanced recycling publicly known, and his difference in opinion from ACC is clearly linked to the investigation into ACC's petitioning activity. The Office of the Attorney General has already described ACC's Environmental Claims Study as a "continued attempt[s] to fraudulently sway the government and public."[62] This unsupported attack underscores the impermissible and biased nature of Defendant Bonta's investigation. The material sought by Defendant Bonta's Investigative Subpoena further confirms the causal connection, singling out documents and communications related to petitioning the FTC regarding the Green Guides.

96.   Fourth, Defendant Bonta seeks to further intrude upon ACC's rights by forcing ACC to turn over materials squarely shielded by the associational privilege. Documents ACC withheld from production on the basis of the associational privilege would reveal protected information, such as the strategy, timing, focus, policy perspectives, viewpoints, identity, and preferences of ACC and its members engaged in responding to the FTC's request for comment on the Green Guides.

97.   Defendant Bonta's retaliatory campaign against ACC has injured Plaintiff and will continue to do so absent relief from this Court. This harm will be redressed by an order declaring

---

[60] *Aref*, 833 F.3d at 258 (citations omitted).
[61] ECF No. 1-6, Ex. C at 8.
[62] ECF No. 1-4, Ex. A at 2.

Defendant Bonta's conduct to be unlawful and enjoining him from further investigating Plaintiff or enforcing his Investigative Subpoena. Such relief is appropriate under Section 1983.[63] Such relief is also appropriate for violations of California Constitution Article I Sections 2 and 3.[64]

## COUNT II

**L.** **Violation of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983)**

98.     Plaintiff incorporates paragraphs one through 80 above as if set forth fully herein.

99.     Defendant Bonta's issuance of the overbroad and retaliatory Investigative Subpoena and his filing a Petition to Enforce this Investigative Subpoena further violate ACC's First and Fourth Amendment rights by unreasonably requiring it to turn over privileged materials, including those that impinge upon ACC's association with its members in connection with petitioning activities.

100.     The Fourth Amendment limits the scope of administrative subpoenas.[65] The First Amendment provides Plaintiff a privilege against disclosure of materials that would chill their constitutional rights.[66] Where "the materials sought to be seized" by an administrative subpoena "may be protected by the First Amendment," the requirements of the Fourth Amendment are applied with "scrupulous exactitude."[67]

101.     Defendant Bonta has shown no such "scrupulous exactitude" in his Investigative Subpoena. Without any showing of cause or jurisdiction, Defendant Bonta has demanded that ACC produce documents related to ACC's petitioning activities and ACC's communications with member organizations.

---

[63] *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 n.3 (D.C. Cir. 2004); *Anderson v. Reilly*, 691 F. Supp. 2d 89, 92 (D.D.C. 2010).
[64] *Stewart v. City & Cty. of S.F.*, 608 F. Supp. 3d 902, 916 (N.D. Cal. 2022), *aff'd*, No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023); *In re Clearview AI, Inc. Consumer Privacy Litig.*, No. 21-CV-0135, 2022 WL 870637, at *2 (N.D. Ill. Mar. 23, 2022).
[65] *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–11 (1946).
[66] *See Perry*, 591 F.3d at 1160.
[67] *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

102.    Defendant Bonta seeks, for example, a privilege log that discloses the names of members who participated in communications about ACC's petitioning of the FTC—member identities are protected from compelled disclosure under the First Amendment.[68]

103.    This ongoing violation of Plaintiff's First and Fourth Amendment rights will be remedied by prompt injunctive relief from this Court setting aside the Investigative Subpoena.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

104.    Declare that Defendant Bonta's Investigative Subpoena constitutes a First Amendment retaliatory action in violation of Plaintiff's rights under the First and Fourteenth Amendments of the U.S. Constitution and Article I of the California Constitution.

105.    Declare that Defendant Bonta's Investigative Subpoena violates Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution and Article I of the California Constitution.

106.    Enjoin Defendant Bonta, his officers, agents, servants, and employees from initiating any action to enforce the Investigative Subpoena or further investigating Plaintiff in violation of its constitutional rights.

107.    Enjoin Defendant Bonta, officers, agents, servants, and employees, to withdraw the Petition to Enforce that is presently pending in the California courts and to refrain from initiating any new action to enforce the Investigative Subpoena.

108.    Award Plaintiff its costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. section 1988, and any other applicable law.

109.    Grant Plaintiff any and all other relief as the Court deems just and proper.

Dated: September 19, 2024                    Respectfully submitted,

                                             /s/ Kwaku A. Akowuah

---

[68] *E.g., Am. Fed'n of Labor*, 333 F.3d at 175–76; *Perry*, 591 F.3d at 1161–62; *In re Motor Fuel Temperature Sales*, 641 F.3d 470 (10th Cir. 2011).

Kwaku A. Akowuah (D.C. Bar No. 992575)
Jillian S. Stonecipher (D.C. Bar No. 1030214)
Anna F. Boardman (D.C. Bar No. 90015086)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, D.C. 20005
Telephone: +1 202 736-8000
kakowuah@sidley.com
aboardman@sidley.com

David L. Anderson (CA Bar No. 149604)
(admitted *pro hac vice*)
Sheila A.G. Armbrust (CA Bar No. 265998)
(admitted *pro hac vice*)
David Goldenberg (D.C. Bar No. 1602274)
(admitted *pro hac vice*)

SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
dlanderson@sidley.com
sarmbrust@sidley.com
dgoldenberg@sidley.com

*Counsel for Plaintiff American Chemistry
Council, Inc.*