**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC., | |
| *Plaintiff*, | |
| v. | Case No. 1:24-cv-01533-APM |
| ROB BONTA, in his Official Capacity as Attorney General of California, | |
| *Defendant*. | HON. AMIT P. MEHTA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   ARGUMENT ...................................................................................................... 3

    A.    This Case Is Not Moot. ............................................................................ 3

    B.    The Court May Exercise Personal Jurisdiction under Subsections (a)(1),
        (a)(3), or (a)(4) of the D.C. Long-Arm Statute. ...................................... 7

        i.    Bonta has repeatedly transacted business in the District to satisfy
            jurisdiction under Section (a)(1) of the long-arm statute ............................ 8

        ii.   ACC's constitutional harm is a "tortious injury" for purposes of
            Section (a)(3) and (a)(4). .......................................................................... 9

        iii.  Hiring a process server is an act or omission in the District for
            purposes of Section (a)(3) ........................................................................ 13

        iv.   Bonta misunderstands the contours of a "persistent course of
            conduct" under (a)(4) ............................................................................... 13

        v.    Jurisdiction over Bonta in D.C. does not violate due process. ................. 17

        vi.   The Court should permit ACC to take discovery of Bonta's ties to
            the District ................................................................................................ 18

III.  CONCLUSION ................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akhmetshin v. Browder*,
  275 A.3d 290 (D.C. Cir. 2022) ...................................................................................2, 14

*Already, LCC v. Nike, Inc.*,
  568 U.S. 85 (2013) ........................................................................................................3, 4

*Americans for Prosperity Found. v. Bonta*,
  594 U.S. 595 (2021) ...........................................................................................................1

*Ass'n for Molecular Pathology v. U.S. PTO*,
  669 F. Supp. 2d 365 (S.D.N.Y. 2009) ............................................................................13

*Blumenthal v. Drudge*,
  992 F. Supp. 44 (D.D.C. 1998) .......................................................................................15

*Brunson v. Kalil & Co., Inc.*,
  404 F. Supp. 2d 221 (D.D.C. 2005) ................................................................................12

*Citizens for Resp. & Ethics in Wash. v. SEC*,
  858 F. Supp. 2d 51 (D.D.C. 2012) ....................................................................................6

*DL v. Dist. of Columbia*,
  187 F. Supp. 3d 1 (D.D.C. 2016) ...................................................................................5, 6

*El-Fadl v. Cent. Bank of Jordan*,
  75 F.3d 668 (D.C. Cir. 1996), *abrogated on other grounds by*
  *Samantar v. Yousuf*, 560 U.S. 305 (2010) ......................................................................17

*Etchebarne–Bourdin v. Radice*,
  982 A.2d 752 (D.C. 2009) ...............................................................................................12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ......................................................................................................1, 3

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) .........................................................................................................13

*Gibson v. Fla. Legis. Investigation Comm.*,
  372 U.S. 539 (1963) .........................................................................................................10

*Halkin v. Helms*,
  690 F.2d 977 (D.C. Cir. 1982) ...........................................................................................7

*Harris v. Quinn,*
  573 U.S. 616 (2014) ........................................................................................11

*Int'l Union, UAW v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*,
  590 F.2d 1139 (D.C. Cir. 1978) ......................................................................11

*Jackson v. U.S. Parole Comm'n,*
  806 F. Supp. 2d 201 (D.D.C. 2011) ..................................................................6

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
  567 U.S. 298 (2012) ..........................................................................................3

*Lake Pilots Ass'n, Inc. v. U.S. Coast Guard,*
  257 F. Supp. 2d 148 (D.D.C. 2003) ..................................................................5

*Lewy v. S. Poverty L. Ctr., Inc.*,
  723 F. Supp. 2d 116 (D.D.C. 2010) ...........................................................13, 15

*Media Matters for Am. v. Paxton,*
  No. 24-CV-147 (APM), 2024 WL 1773197 (D.D.C. Apr. 12, 2024)........................ 7, 8, 9, 12

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  641 F.3d 470 (10th Cir. 2011) ....................................................................11, 12

*Mwani v. bin Laden,*
  417 F.3d 1 (D.C. Cir. 2005).................................................................................8

*Perry v. Schwarzenegger,*
  591 F.3d 1147 (9th Cir. 2010) .........................................................................10

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981) ....................................................................................15, 16

*Sharp v. Rosa Mexicano, D.C., LLC,*
  496 F. Supp. 2d 93 (D.D.C. 2007) .................................................................4, 5

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ........................................................................................15

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ........................................................................................11

*Steinberg v. Dist. of Columbia,*
  901 F. Supp. 2d 63 (D.D.C. 2012) .....................................................................5

*United Presbyterian Church in the U.S.A. v. Reagan,*
  738 F.2d 1375 (D.C. Cir. 1984) .......................................................................10

*WE Charity v. Canadian Broad. Corp.*,
    679 F. Supp. 3d 1 (D.D.C. 2023) ........................................................................... 16

*Young v. D.C. Hous. Auth.*,
    31 F. Supp. 3d 90 (D.D.C. 2014) ............................................................................. 5

*Zukerman v. USPS*,
    384 F. Supp. 3d 44 (D.D.C. 2019) ........................................................................... 3

**Statutes**

D.C. Code § 13-423(a) .................................................................................................. 7

**Other Authorities**

Gillian Brassil & David Lightman, *Cal. Attorney Gen. Won't Decide on Governor
    Run Until After Election, He Says*, Sacramento Bee (May 11, 2024).................... 13

NCL, *Nation's Oldest Consumer Advocacy Organization to Present Annual
    Awards* (Oct. 11, 2023) ......................................................................................... 14

## I.    INTRODUCTION

Plaintiff the American Chemistry Council, Inc. ("ACC") files this memorandum in opposition to the Motion to Dismiss filed by Defendant California Attorney General Rob Bonta. ECF No. 36 ("Motion").

It is telling that Bonta does not contest the sufficiency of ACC's complaint on the merits. Indeed, there should be no serious doubt that Bonta, through the aggressive actions of his office in attempting to obtain constitutionally privileged associational documents, has violated the First Amendment. Recall that the applicable First Amendment test allows the government to breach such privileges only when it demonstrates, through application of the "exacting scrutiny" standard, that the government has a powerful need to obtain the documents despite the First Amendment's protections. Just weeks ago, Bonta told this Court that he *did* have such a compelling need for ACC's documents. But now that he is seeking to evade judicial scrutiny, Bonta contends that he *does not need* the documents, at least for now, and that *he cannot tell* whether he will need them in the future. That is for all intents and purposes a confession that Bonta cannot satisfy the standard articulated by the Supreme Court in another case to which Bonta was a party. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021). And ACC has also made a strong preliminary showing that Bonta violated the First Amendment's protections against retaliation.

Rather than meet the merits, Bonta moves to dismiss on two non-merits grounds. First, he contends that this case is moot because he has withdrawn his investigatory subpoena–even as Bonta *expressly* reserves the right to use other legal instruments to seek compelled disclosure of the very same privileged documents. That is clearly incorrect: "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Here, Bonta has

explained that his wrongful conduct *might* recur – he might again retaliate against ACC, and might unlawfully seek ACC's privileged documents again. Bonta says he has not decided what he will do in the future. And that means the parties' dispute remains live, because Bonta's equivocation means it is not "absolutely clear" that he will not try again.

Second, Bonta contends that the Court lacks personal jurisdiction. Here, Bonta's argument fails to engage meaningfully with the well-pleaded allegations of the First Amended Complaint. Those allegations establish that the Court has jurisdiction over Bonta under Sections (a)(1), (a)(3), and (a)(4) of the D.C. long-arm statute by virtue of Bonta's actions taken prior to ACC's initial complaint, including his tortious conduct directed at ACC, likely hiring a process server to hand-deliver his petition to enforce, and his persistent course of conduct in DC. Rather than contend with the allegations in the First Amended Complaint, Bonta, once again, repeats his bare assertion that ACC's harm is "subjective" and therefore not a tortious injury. But, as ACC has explained before and does again below, based on specific allegations of harm pleaded in its complaint, ACC's chill is real, objective, and ongoing. Moreover, Bonta half-heartedly attempts to claim that some of the persistent business he does in D.C. should not be counted for jurisdictional purposes because the contacts are for the purpose of petitioning the federal government. But the D.C. Court of Appeals has made clear that federal petitioning contacts support jurisdiction under Section (a)(4). *See Akhmetshin v. Browder*, 275 A.3d 290, 292, 296 & n.3 (D.C. 2020) (relevant contacts included "meetings with members of Congress" and "testimony before governmental bodies"). And, even if they did not, Bonta does nothing to address his frequent non-petitioning-related conduct in the District.

Bonta's Motion to Dismiss ACC's First Amended Complaint should be denied as to ACC's federal claims.[1]

## II.    ARGUMENT

### A.    This Case Is Not Moot.

As with any defendant who argues that their voluntary cessation moots litigation, Bonta bears the burden of making "absolutely clear" that the challenged conduct will not reoccur. *Laidlaw*, the seminal Supreme Court case addressing voluntary cessation, holds that voluntary cessation of a challenged practice by the government, just like any other defendant, does not deprive a federal court of its power to determine the legality of the practice. 528 U.S. at 189. This is because the baseline rule is that "the voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). But "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Laidlaw*, 528 U.S. at 189 (cleaned up); *Zukerman v. USPS*, 384 F. Supp. 3d 44, 53 (D.D.C. 2019). Bonta's Motion to Dismiss falls far short of satisfying his burden to demonstrate mootness here.

Far from being "absolutely clear" that he will not renew his efforts to obtain ACC's privileged documents, Bonta explicitly leaves open that very possibility. Bonta offers that "the Attorney General has stated he will not issue a similar *investigative subpoena* to ACC seeking documents related to the Study." Motion at 6 (emphasis added). But he then states that he "is not in a position to know with any certainty" whether he might need to seek ACC's privileged documents in his recent lawsuit against ExxonMobil or in some future proceeding, and so refuses

---

[1] ACC does not object to dismissal of its state law claims.

to set aside the possibility that he will use other legal tools to compel disclosure of the same documents. *Id.* at 6–7.

Sensibly, courts have held that a defendant cannot moot a case by simply ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In *Already*, Nike established mootness by proffering a binding covenant to not continue its activity. *Id.* at 86. Bonta offers no such assurance here. He instead offers a *non-binding* assurance that he will not do *the same thing* in *the same way.* And more importantly, he also makes clear that he might do the *same thing* in a *different way*. What Bonta fails to recognize is that it is not the *method* he uses to seek ACC's privileged documents that chills ACC's First Amendment rights. It makes no difference to ACC that Bonta retaliates against ACC by seeking its privileged document through an investigative subpoena as opposed to one issued in discovery. Rather, it is that Bonta has retaliated against ACC for its speech and may do so again, seeking ACC's privileged documents that chill's ACC's rights. Bonta's hollow concession is exactly the type of conduct the voluntary cessation exception to the mootness doctrine seeks to prevent, so as to not leave "a wily defendant free to return to his old ways" after a lawsuit is terminated. *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 98–99 (D.D.C. 2007) (quoting *Laidlaw*, 528 U.S. at 189 (internal quotations omitted)).

That Bonta may seek ACC's privileged documents in the Exxon litigation is far from mere speculation. Bonta professes an inability to determine what his evidentiary needs will be in the Exxon litigation because it is "less than ten days old." Motion at 6. While the *litigation* may be new, the *investigation* that underpins it is not—-Bonta concedes that the Exxon Complaint is born

out of the same years-long investigation that led Bonta to seek preservation of documents from ACC in 2022 and to make the original demand[2] for ACC's privileged documents. Declaration of Elizabeth Rumsey ¶ 3 (ECF No. 36-3) ("Rumsey Decl."). Indeed, Bonta's counsel represented this Court just two months ago that ACC was subpoenaed as a "witness[]" as "part of a larger ongoing investigation." [Aug. 28, 2024 Tr. at 70:7-11]. ACC would certainly welcome it if Bonta has now concluded, appropriately, that he will stand down from pursuing ACC's privileged communications. But since Bonta seemed to know in August why he wanted the documents, [Tr. at 71:21-72:2] it is not credible that 60 days later, he now has not had sufficient time to determine whether he wants them.

Moreover, ACC remains subject to the document preservation notice Bonta issued on April 28, 2022, directing ACC to preserve all documents relating to plastics and plastics recycling—Bonta has refused to withdraw it. Thus, while Bonta may have withdrawn his subpoena, he continues to prevent ACC from applying its typical document retention policies to any document subject to the preservation notice. And Bonta fails to explain why he continues to direct ACC to preserve documents if he "does not presently intend to make the same requests to ACC." Rumsey Decl. ¶ 7. Courts in this District have made it repeatedly clear that government Defendants must meet their burden to demonstrate voluntary mootness just like any other defendant. *See e.g.*, *DL v. Dist. of Columbia.*, 187 F. Supp. 3d 1, 6 (D.D.C. 2016) (not moot, as Defendant (City of D.C.) gave no fixed guarantee that could objectively be seen to prevent backslide concerning violations of the educational rights of students with disabilities); *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 98 (D.D.C. 2014) (held not moot, as the policy relief provided could easily be undone); *Lake*

---

[2] Bonta's December 6, 2023 subpoena to ACC is captioned "In the Matter of the Investigation of: The Plastics Industry." ECF No. 1-6.

*Pilots Ass'n, Inc. v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 157 (D.D.C. 2003) (case not moot, as defendants had not shown that it is absolutely clear there could be no reasonable expectation that the alleged violation would recur even after the defendants "conceded that they erred" and issued a temporary final rule designed to resolve plaintiffs' claims); *Steinberg v. Dist. of Columbia*, 901 F. Supp. 2d 63, 70 (D.D.C. 2012) (a letter reinstating the plaintiff did not moot plaintiff's request for injunctive relief, as the letter left several aspects of defendants' compliance open and contingent on plaintiff's future actions). Compare *Sharp*, 496 F. Supp. 2d at 98–99 (case held moot through voluntary cessation doctrine, as inaccessible bathroom facility at the heart of the suit had been permanently renovated to resolve ADA compliance issues).

Bonta's claim that his statements are entitled to "great weight" does not change the analysis. Bonta is correct that courts may credit government commitments more readily than those of private actors. *Citizens for Resp. & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 62 (D.D.C. 2012). But what is critical is whether the government has committed, irrevocably, to stop. Bonta has not. He has promised only that *if* he resumes his efforts to secure ACC's privileged documents, he will use a different method. The Court should also give weight to that aspect of Bonta's statement. "[W]here [a] government actor expresses intent to reenact offending policy, [the] presumption would not apply." *Id.* (citing *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1284 (11th Cir. 2004)). By leaving the option to once again seek ACC's privileged documents during his Exxon litigation, or in other future litigation, Bonta has not made "it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Jackson v. U.S. Parole Comm'n*, 806 F. Supp. 2d 201, 205–06 (D.D.C. 2011) (cleaned up) (quoting *Laidlaw*, 528 U.S. at 189). Should Bonta make clear that he will not seek ACC's

privileged documents in the future, ACC agrees such a commitment would be afforded great weight and would likely moot this case. But Bonta has made no such assurance.

This means that ACC's First Amendment activity is still being chilled. ACC's First Amended Complaint ¶¶ 24, 26 (ECF. No. 31) ("Am. Compl."). Although Bonta has withdrawn his investigative subpoena, he has made clear that he does not consider ACC's privileged materials off the table. Absent judicial relief, ACC's internal operations will continue to be burdened by the threat that Bonta has demanded that ACC preserve privileged documents and may return to seek them at any time.

That chilling effect can be addressed through declaratory relief.  On the merits, the Court could declare that Bonta's subpoena was retaliatory and/or grant declaratory relief on ACC's First Amendment privilege claim. *See DL*, 187 F. Supp. 3d at 18 (finding that "declaratory judgment represents effective relief," in light of voluntary cessation of government action); *see also Halkin v. Helms*, 690 F.2d 977, 1007 (D.C. Cir. 1982). Such a declaration would provide effective relief because courts "have long presumed that officials of the Executive Branch will adhere to the law as declared by the court." *Committee on Judiciary of U.S. House of Representatives v. Miers*, 542 U.S. F.3d 909, 911 (D.C. Cir. 2008). Absent such relief, the possibility that Bonta will again demand access to ACC's privileged documents will chill ACC's exercise of First Amendment rights, keeping ACC in limbo through what has the potential to be extensive litigation against Exxon. ACC must be permitted to freely exercise its constitutional rights—and not only after Bonta decides that he does or does not want to demand ACC's privileged materials.

## B.     The Court May Exercise Personal Jurisdiction under Subsections (a)(1), (a)(3), or (a)(4) of the D.C. Long-Arm Statute.

D.C.'s long arm statute permits a court to exercise specific personal jurisdiction:

> as to a claim for relief arising from the person's…

(1) transacting any business in the District of Columbia; …

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or] …

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he … engages in a[] … persistent course of conduct … in the District of Columbia.

D.C. Code § 13-423(a).[3] Each prong supplies a separate basis for this Court's jurisdiction over Bonta.

      i.      Bonta has repeatedly transacted business in the District to satisfy jurisdiction under Section (a)(1) of the long-arm statute.

ACC alleges in the Amended Complaint, and Bonta does not deny, that he retained a process server to hand-serve ACC the petition to enforce *prior* to ACC filing its initial complaint. Am. Compl. ¶ 87. At the pleading stage, that allegation is sufficient to establish that this Court has personal jurisdiction under Section (a)(1) of the D.C. long-arm statute because, at the motion-to-dismiss stage, plaintiffs are "not limited to evidence that meets the standards of admissibility required by the district court, rather, they may rest their argument on their pleadings." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (cleaned up). The Court should accept ACC's allegations as true for purposes of assessing jurisdiction.

Rather than contest ACC's factual point, Bonta merely argues that ACC "does not allege that it was harmed by *personal service* of the petition." Motion at 10 (emphasis in original). It is odd that Bonta would make such a statement—ACC clearly alleges that the service of the petition injured ACC *in D.C.*, where ACC experienced the chill on its speech, associational, and petitioning activities. ACC spelled this out in the Amended Complaint. *See* Am. Compl. ¶¶ 24, 26. Even in

---

[3] Consistent with *Media Matters*, Bonta is a "person" under D.C.'s Long-Arm Statute. *Media Matters for Am. v. Paxton*, No. 24-CV-147 (APM), 2024 WL 1773197, at *5–8 (D.D.C. Apr. 12, 2024); ECF No. 24 at 11–12.

the first complaint (before Bonta effectuated service on ACC), ACC predicted that a petition to enforce the investigative subpoena would cause further constitutional harm and requested that the Court enjoin Bonta from further action. Compl. ¶ 12.

Bonta also transacted business in the District sufficient to satisfy Section (a)(1) of the long-arm statute by hiring a process server to hand-deliver a preservation notice on the Plastics Industry Association ("PLASTICS") on April 28, 2022. Am. Compl. ¶ 25. Bonta served this notice purportedly as part of the same investigation for which he sought to compel ACC's production of privileged documents. *See id.* at ¶¶ 9, 25. And Bonta's investigation is the generative mechanism that has chilled ACC's constitutional rights. Again, Bonta fails to offer any argument suggesting the hand service of PLASTICS is not an independent basis for this Court to exercise jurisdiction in this case.

    ii.    ACC's constitutional harm is a "tortious injury" for purposes of Section (a)(3) and (a)(4).

Government action chilling the exercise of constitutional rights is a tortious injury capable of satisfying Section (a)(3) and (a)(4) of D.C.'s Long-arm Statute. *See Media Matters*, 2024 WL 1773197, at *9–13. Bonta does not dispute this. Rather, Bonta once again dismisses ACC's constitutional harm as "purely speculative." Motion at 12. Not so. ACC has explained in detailed, sworn statements how Bonta's attempts to force ACC to turn over member identities and communications have chilled ACC's speech, associational, and petitioning activities.[4] For example, in a meeting between ACC and the FTC staff on September 28, 2023, the FTC indicated that it would appreciate additional empirical information in connection with revising the Green Guides.[5] ACC considered commissioning a second survey, similar to the Environmental Claims

---

[4] *See* Ex. F at ¶¶ 16–21, 23 (ECF No. 16-3).
[5] *Id.* at ¶ 12.

Survey, to provide additional data to the FTC.[6] ACC has decided not to pursue such a survey at this time because ACC fears further retaliation from Bonta.[7]

ACC has also chosen not to engage on certain policy issues important to its members' California interests in the way it otherwise would, for fear that its advocacy strategies and communications on those topics may be subject to additional singling out and retaliation from Bonta.[8] ACC and its members are fearful that Bonta would further target ACC and its members.[9]

ACC's members are also hesitant to send written communications to ACC, and have at times chosen not to engage in such communications for fear that Bonta will demand to see such communications as part of his wide-ranging investigation.[10] Written communication is a vital method ACC uses to work with its members and to develop public advocacy positions and strategies.[11] Bonta's efforts have diminished ACC's ability to fully associate with its members, exercise its freedom of speech, and petition the government.[12]

Bonta dismisses this as conclusory, but his challenge is perfunctory and obviously insufficient to defeat ACC's detailed allegations at the motion to dismiss stage.[13] ACC's allegations of harm must be taken as true for purposes of Bonta's Rule 12 motion. And moreover,

---

[6] *Id.* at ¶ 16.

[7] *Id.*

[8] *Id.* at ¶¶ 18–21.

[9] *Id.* at ¶ 19; Mot. To Partially Seal Ex. I at ¶¶ 16, 21–23 (ECF No. 17-1); Mot. To Partially Seal Ex. J at ¶¶ 9–10 (ECF No. 17-2); Mot. To Partially Seal Ex. K at ¶¶ 16–18 (ECF No. 17-3).

[10] *See* Mot. To Partially Seal Ex. I at ¶ 25; Mot. To Partially Seal Ex. J at ¶ 9; Mot. To Partially Seal Ex. K at ¶¶ 16–18; Ex. F at ¶¶ 18–21.

[11] Ex. F at ¶ 7.

[12] *Id.* at ¶¶ 16–21.

[13] *United Presbyterian Church*, which Bonta cites in his brief, is inapposite. *See* Motion at 12; *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984). There, the plaintiffs were not "either presently or prospectively subject to the regulations, proscriptions, or compulsions," the chill was, therefore, speculative and unlike the subpoena directed specifically at ACC. *Id.* at 1378 (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

the chilling effects that ACC has described are well rooted in the law. Courts have long recognized that "[c]ompelled disclosures concerning protected First Amendment political associations have a profound chilling effect on the exercise of political rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010); *Gibson v. Fla. Legis. Investigation Comm.*, 372 U.S. 539, 556–57 (1963).

Bonta also touts the fact that ACC's members names and the identity of 31 members of ACC's Plastics Division appear on ACC's website. *See* Motion at 11. But a list of member names unassociated with their individualized opinions is very different than communications that reveal the strategy, timing, focus, and policy perspectives of a specific member. ACC has explained, repeatedly, that "ACC does not typically identify which individuals from its member companies engage in specific advocacy." Am. Compl. ¶ 41. And that "[t]he identities of ACC members who participated in ACC's work to prepare the Environmental Claims Survey and provide comment on the Green Guides are not public." *Id.* Bonta cannot brush aside the well-pleaded concerns of ACC and its members on a motion to dismiss.

Bonta also falls back, once again, on the entirely misplaced suggestion that commercial speech is somehow involved here. More precisely, Bonta suggests ACC's speech is entitled to lesser constitutional protection because it is "entirely aligned with [] commercial interests." Motion at 11. That is flatly wrong for two reasons. ACC's speech on a matter of public concern, whether through a press release or in comments to a federal agency, is not "commercial speech." Commercial speech is "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (quotation omitted). ACC's Survey and its FTC comments and press release discussing the Survey do not propose a commercial transaction. They provide information the FTC requested on a contested public issue and lay out ACC's interpretation and

11

advocacy based on the data. Indeed, ACC is a trade association organized to engage in public advocacy; it does not sell anything. Bonta offers nothing to support his generalization that ACC's members "wear on their sleeves" the "commercial interests" contained in ACC's environmental survey. Motion at 11.

And even if ACC's speech were commercial speech, commercial speech is protected by the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). The First Amendment does not allow Bonta to retaliate against commercial speech, particularly where he has not even attempted to make a showing that the speech was in any way misleading, any more than it allows him to retaliate against political speech. *See id.* at 579 (state law restricting commercial speech violated the First Amendment when the state had not shown the speech was "false or misleading" and the state's interest in burdening the speech "turn[ed] on nothing more than a difference of opinion"). And Bonta has made no attempt to show ACC's speech was misleading. There is no question that the right to association encompasses the freedom to engage in expressive association in pursuit of economic ends. *See Int'l Union, UAW v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1148 (D.C. Cir. 1978) (explaining that "economically motivated expression or association is not disqualified from protection under the first amendment"); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (holding that First Amendment protections applied to the member identities of a motor fuel trade group whose associational interests were economic in nature).

Bonta states that because the Environmental Claims study "purports to reflect *Americans'* views—not ACC or its member's views"—it cannot threaten the "vitality of *their* associational rights." Motion at 11–12. But the views of Americans in the study are already public—ACC provided both the questions and responses in its comments to the FTC. Bonta's argument does not

match what he has sought—ACC and its members' communications regarding comments to the FTC. Those internal communications are undeniably an expression of the associational rights of ACC and its members.

> iii. Hiring a process server is an act or omission in the District for purposes of Section (a)(3)

As this Court held in *Media Matters*, hiring a process server to serve process on a D.C. resident in D.C. is an act or omission in the District, sufficient for purposes of Section (a)(3) of the long-arm statute. *See Media Matters*, 2024 WL 1773197, at *9–13. Bonta does not seriously contest this and instead inappositely cites *Brunson v. Kalil*, which merely held that a contract that only "arguably" contemplates performance in the District does not create a substantial connection with the forum. *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 232 (D.D.C. 2005). That is not this case. Here, ACC's allegation is that Bonta contracted specifically for performance in D.C. Am. Compl. ¶ 87.

> iv. Bonta misunderstands the contours of a "persistent course of conduct" under (a)(4).

Bonta engages in a "persistent course of conduct" in D.C. in both his personal and official capacities. To constitute a "persistent course of conduct," a defendant need only have "more than a 'scant' connection to the forum." *Etchebarne–Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009). Bonta's connection to D.C. is substantial, not "scant" and easily satisfies the "plus factor" under (a)(4).[14] He engages process servers to effect in-person service. *See supra,* Section II(B)(i). He robustly participates in the notice and comment process at multiple federal agencies. Am. Compl. ¶ 30. He files amicus briefs in D.C. courts. He travels to the District to attend events and conducts press interviews in the District. *Id.* He attends the State of the Union. *Id.* And he enters D.C. to

---

[14] The plus factor contacts under (a)(4) are distinct from contacts assessed for purposes of due process . *Etchebarne-Bourdin*, 982 A.2d at 763.

accept awards for his performance in office. *Id.* at ¶ 29. This is more than enough. *See Lewy v. S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) ("[A] defendant's contacts need not be great to satisfy subsection (a)(4); they need only be sufficient to establish a real connection to the District of Columbia such that a party might expect to be subjected to jurisdiction here."). Further, the court can consider "the totality of defendants' contacts" even where they are unrelated to one another or to the subject matter of the action for purposes of the (a)(4) plus factors. *Id.* at 126.

Bonta's contacts with the District in his official capacity may properly be considered by the Court. ACC is suing Bonta in his official capacity. These contacts, therefore, are precisely the relevant inquiry for the personal jurisdiction analysis. *Ass'n for Molecular Pathology v. U.S. PTO*, 669 F. Supp. 2d 365, 394 (S.D.N.Y. 2009). He should expect to be brought into court *in his official capacity*, when *in his official capacity* he used his prosecutorial discretion to seek privileged documents from a D.C.-based organization.

The First Amendment does not shield Bonta from the jurisdiction of this Court. Bonta argues that his contacts, including his interactions with the FTC, are protected by the First Amendment and are thus "exempt from the jurisdictional analysis." Motion at 14. He cites no authority for this theory as to the plus factors for (a)(4). As an initial matter, the First Amendment does not protect government speech "made pursuant to official responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). Moreover, many of Bonta's connections to the District—such as hiring process servers—do not involve speech or petitioning the government.[15] Additionally, a

---

[15] Bonta has several such additional contacts. *E.g.*, Gillian Brassil & David Lightman, *Cal. Attorney Gen. Won't Decide on Governor Run Until After Election, He Says*, *Sacramento Bee* (May 11, 2024), https://www.sacbee.com/news/politics-government/capitol-alert/article288436557.html (interviewing at a downtown D.C. hotel and commenting on his potential run for California governor); NCL, *Nation's Oldest Consumer Advocacy Organization*

jurisdictional analysis is not the same as a privilege claim. The contact with D.C. can relate to privileged activity, but that does not exempt the contact from establishing ties for jurisdictional purposes under Section (a)(4) of D.C.'s long arm statute. In *Akhmetshin*, 275 A.3d at 295, the D.C. Court of Appeals found that contacts in D.C. related to engagement with the federal government support jurisdiction under (a)(4). In *Akhmetshin*, the defendant similarly argued that nonresidents who travel to the District to engage with or petition the federal government cannot expect to be haled into court there. *Id.* But the court held that "nothing in the text of § (a)(4) suggests that 'persistent course of conduct' refers only to conduct not associated with the government." *Id.* at 294. Bonta's reliance on *Akhmetshin* for the (a)(4) analysis is misplaced—the Court declined to read the government contacts exception into (a)(4) because first, as quoted immediately *supra*, the text and the case law do not require it; and second, defendants still have the opportunity "to show that the exercise of jurisdiction would violate their constitutional rights or implicate other existing doctrines such as *forum non conveniens*." *Id.* at 295 (citation omitted). In other words, the defendant must prove a constitutional violation, whether due process, First Amendment, or otherwise, to overcome jurisdiction under (a)(4). Bonta fails to do so.

Moreover, ACC has alleged that Bonta has contacts with D.C. that do not involve government contacts. As alleged in ACC's Amended Complaint, during the times that Defendant Bonta and his subordinates travel to D.C. for such activities, they eat at D.C. restaurants, stay at D.C. hotels, and use District transportation and other amenities. Am. Compl. ¶ 29. These actions, too, constitute a "persistent course of conduct" sufficient to support the exercise of personal

---

*to Present Annual Awards* (Oct. 11, 2023), https://nclnet.org/nations-oldest-consumer-advocacy-organization-to-present-annualawards-to-former-hhs-secretary-and-former-kansas-governor-kathleen-sebelius-california-agrob-bonta-and-child-marriage-survivor-and-activist-fraidy-reiss-on-wednesday-october-11 (accepting an award for his work as attorney general).

jurisdiction under subsection (a)(4) over tortious activity outside the District that harms D.C. residents. *See Lewy*, 723 F. Supp. 2d at 127; *Blumenthal v. Drudge*, 992 F. Supp. 44, 57 (D.D.C. 1998). To the extent the Court determines that the above does not sufficiently show that Bonta has engaged in a persistent course of conduct in the District, ACC requests that the Court permit it to engage in jurisdictional discovery to uncover additional facts to support the Court's jurisdiction here.

Bonta also attempts in passing to invoke the suggestion in *Akhmetshin* that *forum non conveniens* principles may limit the circumstances in which governmental contacts will lead to litigation in D.C. against a non-resident. But while Bonta nods at *forum non conveniens*, he does not offer any full-throated argument. In fact, he barely acknowledges the applicable standards—which soundly defeat his claim. For example, the Supreme Court has emphasized that for the most part, "*forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (cleaned up). It is only "*perhaps* in rare instances where a state or territorial court serves litigational convenience best" that the doctrine has any relevance at all in domestic U.S. litigation. *Id.* (emphasis added). Bonta acknowledges none of that, and so has forfeited any argument he might have offered for why this case is one of the "rare instances" where *forum non conveniens* applies at all to the choice between American litigation forums.

Further, Bonta does not acknowledge that his burden to overcome the plaintiff's choice of forum is "heavy," doubly so when, as here, the plaintiff has chosen its own home forum. *Id.*; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("[A] plaintiff's choice of forum should rarely be disturbed.").

Bonta also does not apply the actual test: "'In determining whether to dismiss a case on *forum non conveniens* grounds, the district court must decide (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal.'" *WE Charity v. Canadian Broad. Corp.*, 679 F. Supp. 3d 1, 13 (D.D.C. 2023) (quoting *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 947 (D.C. Cir. 2019)). Here, the alternative litigation forum that Bonta once touted is no longer available because Bonta voluntarily dismissed his petition to enforce the subpoena in the California courts. Further, Bonta ignores the well-established rule that "'[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'" *Piper Aircraft Co.*, 454 U.S. at 255 n.23 (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). Here, the conveniences to ACC of suing in its home jurisdiction are clear and essentially ignored by Bonta. ACC's headquarters are here; its documents are here; and its employees predominantly are here. And far from carrying his burden to show that "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience," *Piper Aircraft Co.*, 454 U.S. at 241 (cleaned up) (quoting *Koster*, 330 U.S. at 524), Bonta makes no showing at all that litigation in D.C. would be inconvenient for him.

    v.  Jurisdiction over Bonta in D.C. does not violate due process.

As Bonta concedes, Motion at 15, n.11, a state is not a "person" within the meaning of the Due Process Clause. Accordingly, there cannot be any due process problem with exercising personal jurisdiction over a state official sued in his official capacity, in circumstances where the provisions of the D.C. long-arm statute are satisfied.

Even if the Due Process Clause did apply in this context, there is no serious argument that the exercise of personal jurisdiction over Bonta would violate due process if (as ACC contends)

D.C.'s long-arm statute is satisfied. Bonta's contacts with D.C. alone, discussed *infra*, make it reasonable for him to be haled into D.C. courts. And when the contacts specific to this litigation are accounted for, it is all the more reasonable for him to expect the related litigation in D.C. Bonta's subpoena defines ACC as "the non-profit trade association … with the address 700 Second Street, NE, Washington, DC 20002." Am. Compl. ¶ 23. Bonta knew that ACC is headquartered in the District and that his subpoena would be received by ACC in the District. *Id.* The documents at issue involve employees in ACC's office in D.C. and comments submitted to the FTC in D.C. The District is where ACC would have to undertake efforts to further comply with the Investigative Subpoena; if Bonta sought to conduct interviews with ACC leadership or the employees involved, those individuals would be present in the District. Further, Bonta knew that the effect of his conduct and the resulting chill would be felt in D.C. Also, as discussed, Bonta hired a process server in the D.C. before ACC filed its first complaint. As this Court held in *Media Matters* and reiterated in the Order, "because the service created a 'future course of dealing with a D.C. resident,' the defendants 'should have reasonably foreseen that [they] would be called into court.'" ECF No. 30 at 15 (quoting *Media Matters*, 2024 WL 1773197, at \*10).

> vi.    The Court should permit ACC to take discovery of Bonta's ties to the District

To the extent the Court is not yet persuaded that it may exercise personal jurisdiction over Bonta, ACC requests that the Court permit jurisdictional discovery, consistent with the general rule that "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), a*brogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010).

Discovery related to the Attorney General's motives in issuing the subpoena—as declared by Deputy Attorney General Justin Lee (*see* ECF No. 22-2)—could uncover Bonta's knowledge and intent of inflicting tortious harm on ACC in the District. Discovery could also provide additional information to test Bonta's contacts for purposes of sections (a)(3) and (a)(4). Discovery would show when Bonta retained the process server he engaged to serve ACC with his state court petition to enforce. Relatedly, Bonta has, at least on three recent occasions hired process servers to hand-serve process in the District. Discovery could uncover the frequency with which Bonta engages process servers in the district. Discovery would also test the assertion that he takes only "*infrequent* visits to the District for the purpose of attending *the occasional* event, dinner, or awards ceremony." Motion at 15. Bonta, meanwhile, is notably silent about the extent to which he sends his subordinates to the District on official business. Discovery, too, could reasonably test the frequency of those contacts with the District.

Bonta intimates that his prior contacts with the District are "completely unrelated" to this suit. Motion at 13. That could be tested in discovery. And Bonta suggests that he has no ties to the District akin to ACC's contacts to California. That factual assertion too, is fit for discovery.

These factual points are not intended to be and are not exhaustive. The broader point is that Bonta is resisting personal jurisdiction, in part, by asserting factual claims that have not been tested and that ACC has not had any opportunity to test. If Bonta wishes to contest personal jurisdiction, he may do so, but only after submitting to reasonable jurisdictional discovery that will probe the extent of his contacts with the District.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss this matter.

Dated: October 24, 2024                     Respectfully submitted,

*/s/ Kwaku A. Akowuah*

Kwaku A. Akowuah (D.C. Bar No. 992575)
Jillian S. Stonecipher (D.C. Bar No. 1030214)
Anna F. Boardman (D.C. Bar No. 90015086)
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, D.C. 20005
Telephone: 202 736-8000
kakowuah@sidley.com
jstonecipher@sidley.com
aboardman@sidley.com

David L. Anderson (CA Bar No. 149604)
(admitted *pro hac vice*)
Sheila A.G. Armbrust (CA Bar No. 265998)
(admitted *pro hac vice*)
David Goldenberg (D.C. Bar No. 1602274)
(admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: 415 772-1200
dlanderson@sidley.com
sarmbrust@sidley.com
dgoldenberg@sidley.com

*Counsel for Plaintiff American Chemistry
Council, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 24, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

Dated: October 24, 2024                    Respectfully submitted,

                                           <u>/s/ Kwaku A. Akowuah</u>
                                           Kwaku A. Akowuah (D.C. Bar No. 992575)
                                           Sidley Austin LLP
                                           1501 K Street, N.W.
                                           Washington, D.C. 20005
                                           (202) 736-8000
                                           kakowuah@sidley.com

                                           *Counsel for Plaintiff American Chemistry
                                           Council, Inc.*

21