# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CHEMISTRY COUNCIL, INC., | Civil Action No. 24-cv-01533-APM |
| *Plaintiff*, | |
| | Before The Honorable |
| ROB BONTA, in his Official Capacity as Attorney General of California, | Amit P. Mehta |
| *Defendant*. | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 5

ARGUMENT ......................................................................................................... 6

I.    This Case Is Moot ...................................................................................... 6

    A.    The Allegedly Wrongful Conduct Cannot Be Reasonably
Expected to Recur .......................................................................... 6

        1.    Third-Party Discovery in Pending Litigation is Not
the "Allegedly Wrongful Conduct" ACC Complains
about Here ......................................................................... 8

        2.    The Attorney General Has Not Taken, and Will Not
Take, Action Against ACC in Retaliation for its
Comments to the FTC ...................................................... 13

    B.    The Withdrawal of the Investigative Subpoena and Dismissal
of the Petition to Enforce Has Irrevocably Eradicated the
Effects of ACC's Alleged Harm .................................................. 15

II.   ACC Has Not Established Personal Jurisdiction Under the Long-
Arm Statute ............................................................................................ 16

    A.    ACC Fails to Establish Relevant Contacts and Harms under
Subsection (a)(1) .......................................................................... 16

    B.    ACC Fails to Establish Any "Tortious Injury" for Purposes of
Section (a)(3) ................................................................................ 17

    C.    ACC's Fails to Establish Any "Tortious Injury" or Relevant
Contacts for Purposes of Section (a)(4) ...................................... 20

    D.    Exercising Personal Jurisdiction in this Matter Would Violate
Due Process .................................................................................. 21

    E.    This Court Should Deny ACC's Request for Discovery ............. 22

CONCLUSION .................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Akhmetshin v. Browder*
    275 A.3d 290 (D.C. Cir. 2022) ...................................................................14

*Already, LLC v. Nike, Inc.*
    568 U.S. 85 (2013) ......................................................................................2

*Aref v. Lynch*
    833 F.3d 242 (D.C. Cir. 2016) ................................................................1, 6

*Atlantigas Corp. v. Nisource, Inc.*
    290 F.Supp.2d 34 (D.D.C. 2003) ...............................................................16

*Brovelli v. Superior Court*
    56 Cal.2d 524 (1961) ...............................................................................5, 14

*Calderon v. Ashmus*
    523 U.S. 740 (1998) ....................................................................................10

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*
    148 F.3d 1080 (D.C. Cir. 1998) .................................................................16

*Coal. For Mercury-Free Drugs v. Sebelius*
    725 F.Supp.2d 1 (D.D.C. 2010) .................................................................16

*Cnty. of Los Angeles v. Davis*
    440 U.S. 625 (1979) .................................................................................2, 10

*E & J Gallo Winery v. Encana Energy Servs., Inc.*
    No. CV-F-03-5412, 2005 WL 8172972 (E.D. Cal. Jan. 28, 2005) ..................9

*Foote v. Williams*
    No. 16-2530, 2017 WL 3836044 (D.D.C. Aug. 31, 2017) .............................12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167, 190 (2000) .............................................................................1

*GTE New Media Servs. Inc. v. BellSouth Corp.*
    199 F.3d 1343 (D.C. Cir. 2000) .................................................................13

*Hindu Am. Found v. Viswanath*
    646 F. Supp. 3d 78 (D.D.C. 2022) ..............................................................14

## TABLE OF AUTHORITIES
### (continued)

Page

*Laird v. Tatum*
    408 U.S. 1 (1972)...........................................................................................8

*Media Matters for Am. v. Paxton*
    No. 24-cv-147, 2024 WL 1773197 (D.D.C. Apr. 12, 2024)............................12

*Meeropol v. Meese*
    790 F.2d 942 (D.C. Cir. 1986) .......................................................................3

*Nat'l Ass'n of Realtors v. United States*
    97 F.4th 951 (D.C. Cir. 2024)........................................................................4

*People of the State of California v. Exxon Mobil Corp.*
    No. CGC-24-618323 (Cal. Super. Ct., Sept. 23, 2024) ..................................4

*People v. West Coast Shows, Inc.*
    10 Cal. App. 3d 462 (1970) ...........................................................................5

*Perry v. Schwarzenegger*
    591 F.3d 1147 (9th Cir. 2010) .......................................................................8

*Pinson v. U.S. Dep't of Just.*
    514 F. Supp. 3d 232 (D.D.C. 2021) ...............................................................3

*Row 1 Inc. v. Becerra*
    92 F.4th 1138 (D.C. Cir. 2024)...............................................................2, 3, 10

*Ruhrgas AG v. Marathon Oil Co.*
    526 U.S. 574 (1999)......................................................................................11

*Sossamon v. Lone Star State of Texas*
    560 F.3d 316 (5th Cir. 2009) ......................................................................3, 7

*Staley v. Harris Cnty.*
    485 F.3d 305 (5th Cir. 2007) .......................................................................10

*United Presbyterian Church in the U.S.A. v. Reagan*
    738 F.2d 1375 (D.C. Cir. 1984).....................................................................8

*United States v. Ferrara*
    54 F.3d 825 (D.C. Cir. 1995) .......................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*United States v. Morton Salt Co.*
338 U.S. 632 (1950)....................................................................................5, 6

*W. Virginia v. Capital One Bank (USA) N.A.*, No. 3:11-0492, 2011 WL
3516149 (S.D.W.V. Aug. 11, 2011) ................................................................5

**STATUTES**

42 U.S.C.
§ 1983....................................................................................................5

Cal. Code Civ. Proc.
§ 2016.010 et seq. ..............................................................................4, 6
§ 2017.010.............................................................................................6
§ 2070.010.............................................................................................9

Cal. Gov. Code
§ 11180 et seq. ....................................................................................4, 5
§ 11183................................................................................................12

D.C. Code
§ 13-423, subs. (a)(1)................................................................1, 11, 13
§ 13-423, subs. (a)(3)....................................................................1, 12
§ 13-423, subs. (a)(4)....................................................................2, 14

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment .......................................................................7, 8, 10, 13
Article III .......................................................................................2, 8
Due Process Clause..............................................................................15

**TABLE OF AUTHORITIES**
**(continued)**

Page

## INTRODUCTION

Plaintiff American Chemistry Council, Inc. ("ACC") filed this lawsuit to prevent

enforcement of a government-issued investigative subpoena. Defendant Rob Bonta, the Attorney

General of the State of California (hereinafter, and together with his office, "the Attorney

General"), has withdrawn the subpoena and has pledged not to issue another one. The Attorney

General took those actions despite already prevailing in prior stages of this case.[1] ACC

nevertheless contends that the case is not moot, because of the possibility that the Attorney

General will, in pending state-court litigation against one of ACC's members (ExxonMobil),

seek from ACC or another entity the same or similar documents as it sought in the investigative

subpoena. ACC contends that the exception for mootness under the voluntary cessation doctrine

therefore applies.

ACC is incorrect. Third-party discovery in the context of pending litigation is not the

"conduct" that ACC's First Amended Complaint ("FAC") objects to in this matter, and a remedy

against such discovery is not the relief their complaint seeks. Nor do federal courts generally

have jurisdiction over discovery disputes in pending state-court cases. Because there is no risk of

the "allegedly wrongful behavior" recurring, *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016),

the Attorney General's motion to dismiss this case based on mootness should be granted.

Second, ACC has also failed to rebut the Attorney's General's position that this Court

lacks personal jurisdiction. With respect to subsections (a)(1) and (a)(3) of the District's long-

---

[1] See ECF No. 30, Memorandum Opinion and Order (denying ACC's Motion for Preliminary Injunction, ECF No. 16) ("Order").

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

arm statute, D.C. Code section 13-423, there is insufficient nexus between the scant contacts that

ACC alleges and the harm that forms the basis of its claims. Nor has ACC established that the

Attorney General caused "tortious injury" for purposes of subsection (a)(3). Finally, ACC fails to

muster sufficient contacts to satisfy the "plus factor" of subsection (a)(4). Even if ACC could

satisfy the requirements of any section of the long-arm statute, and it cannot, it would still violate

notions of due process to subject the Attorney General to suit in this Court under these alleged

facts. Therefore, ACC's suit should be dismissed.

## ARGUMENT

## I.    THIS CASE IS MOOT

This case is moot for purposes of Article III, because "the issues presented are no longer

'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*

568 U.S. 85, 91 (2013). Although ACC contends that the voluntary cessation exception to

mootness applies, that exception does not apply where (1) it is "absolutely clear" that the

allegedly wrongful conduct could not reasonably be expected to recur, and (2) the interim event

has "completely and irrevocably eradicated the effects of the alleged violation." *Row 1 Inc. v.*

*Becerra*, 92 F.4th 1138, 1144 (D.C. Cir. 2024), *cert. denied*, No. 23-1326, 2024 WL 4529805

(U.S. Oct. 21, 2024), quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

U.S. 167, 190 (2000), and *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), respectively.

Those elements are established here.

### A.    The Allegedly Wrongful Conduct Cannot Be Reasonably Expected to Recur

**TABLE OF AUTHORITIES**
**(continued)**

This case is moot because the Attorney General's office has established that the alleged wrongful conduct—the investigative subpoena, which ACC alleges has "chilled ACC's speech," and the petition to enforce the subpoena, which ACC alleges has "further exacerbated those harms"—have been withdrawn and dismissed, respectively. FAC ¶ 16. And this alleged unlawful conduct cannot be reasonably expected to recur because the Attorney General's office has agreed it will not issue another investigative subpoena to ACC requesting the same or similar documents. Rumsey Decl. ¶ 6.

"The government's abandonment of a challenged [action] is just the sort of development that can moot an issue." *Becerra*, 92 F.4th at 1144 (citation omitted). In *Becerra*, the court found the case was moot because the government had already rescinded the policy that appellant challenged and had "not indicated any intention to reinstate" it. *Id*. Nonetheless, ACC maintains that the Attorney General's withdrawal of the investigative subpoena, dismissal of the petition, and commitment not to serve a similar investigative subpoena to ACC in the future are not sufficient. ACC essentially claims this case is not moot unless the Attorney General agrees never to use *any* legal instrument in *any* court at *any* time and in *any* context that could possibly implicate even one of the documents that ACC's complaint seeks to insulate from disclosure here. Opp. at 1. ACC does not cite any authority that would impose such a sweeping and far-ranging requirement and indeed none exists.

The Attorney General's office has specifically stated that it will not issue a similar investigative subpoena in the future. In "deciding 'whether a case presents a live controversy,' it is 'settled practice' to accept government defendants' representations regarding cessation."

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Pinson v. U.S. Dep't of Just.*, 514 F. Supp. 3d 232, 246 (D.D.C. 2021) (citing *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 745 (D.C. Cir. 1991));

*Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (affidavit from official is "sufficient" to meet government's "lighter burden" to make "absolutely clear" that conduct cannot "reasonably be expected to recur"), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011); *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986) (affidavits of government officials are entitled to a presumption of good faith).

ACC erroneously contends that an exception to mootness applies because the Attorney General could issue a third-party discovery subpoena to ACC in the *People of the State of California v. ExxonMobil Corp.* ("*ExxonMobil*"), San Francisco County Superior Court Case No. CGC-24-618323, which was filed on October 4, 2024, or in some other unidentified "future proceeding." Opp. at 3. That argument overlooks the limited scope of the claims upon which this Court's subject-matter jurisdiction rests and conflates the very different circumstances governing an investigative subpoena under California Government Code section 11180 et seq. and a civil discovery subpoena governed by the California Civil Discovery Act, Cal. Code Civ. Proc. §§ 2016.010 et seq.

### 1.    Third-Party Discovery in Pending Litigation is Not the "Allegedly Wrongful Conduct" ACC Complains about Here

ACC's argument—that this case is not moot because the Attorney General might seek discovery in the recently filed *ExxonMobil* litigation that may implicate some of the documents at issue here—fails for at least two separate reasons.

First and foremost, ACC's argument assumes that this Court can enjoin the Attorney General from seeking discovery from ACC in the context of the *ExxonMobil* litigation that might touch on the documents. It cannot. Following the principle of "party presentation," this Court can only rule on issues and claims as they are presented by the parties, *Nat'l Ass'n of Realtors v. United States*, 97 F.4th 951, 957 (D.C. Cir. 2024) (citations omitted), and the scope of discovery in a state court action is not an issue before this Court. The logical endpoint of ACC's position is that federal courts are proper forums to adjudicate discovery disputes in state proceedings involving government actors. But federal courts rarely—if ever—get involved in state-court discovery disputes. And as a matter of judicial economy and public policy, it would constitute an unprecedented expansion of federal-court subject matter jurisdiction and intervention in state-court matters.

The basis for federal subject matter jurisdiction here was ACC's claims under the U.S. Constitution and 42 U.S.C. section 1983 regarding the issuance of an *investigative subpoena* pursuant to the Attorney General's unique authority under Government Code section 11880 et seq. FAC ¶ 17. That authority is akin "to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Brovelli v. Superior Court*, 56 Cal.2d 524, 529 (1961) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–643 (1950)). The Attorney General's investigative authority is thus relatively broad, constrained only by the requirements that (1) the inquiry is "one which the agency demanding production is authorized to make," (2) the demand is "not too indefinite," and (3) the information sought is

**TABLE OF AUTHORITIES**
**(continued)**

"reasonably relevant" to the intended investigation. *Id*. As indicated by the word "reasonably,"

the relevance standard is construed broadly. *Brovelli*, 56 Cal.2d at 529 (citations omitted).

Proceedings to enforce an investigative subpoena do not require the filing of any charges or a

"case or controversy," and so are generally not governed by the California Code of Civil

Procedure. *People v. West Coast Shows, Inc.*, 10 Cal. App. 3d 462, 470 (Cal. Ct. App. 1970).

If the request for production of documents had been sought pursuant to a third-party

discovery subpoena as part of a pending lawsuit, rather than through the investigative subpoena,

ACC would have had no basis to seek relief in federal court. *W. Virginia v. Capital One Bank*

*(USA) N.A.*, No. 3:11-0492, 2011 WL 3516149, at *5 (S.D.W.Va. Aug. 11, 2011) (federal courts

should not become "engulfed" in state discovery disputes). Such discovery requests would occur

in the context of a complaint such as the one that has been filed against ExxonMobil alleging

specific violations of California law and would be governed by the complex set of rules set forth

in the California Discovery Act, Cal. Code Civ. Proc. § 2016.010 et seq. In contrast to the broad

scope of investigative subpoenas, any discovery must be "relevant to the subject matter involved

in [a] pending action," Cal. Code Civ. Proc. § 2017.010; *see also Morton Salt*, 338 U.S. at 642

(noting that while an administrative agency conducting an investigation has broad "powers of

original inquiry," courts should be "reluctant if not unable to summon evidence until it is shown

to be relevant to issues in litigation"). These vast differences underscore that the propriety of a

request for documents in third-party discovery is not the "allegedly wrongful behavior" at issue

before this Court. *Aref*, 833 F.3d at 251.

**TABLE OF AUTHORITIES**
**(continued)**

Indeed, the FAC's Prayer for Relief leaves no doubt about how hypothetical third-party discovery differs from the subject of this lawsuit. ACC requests that the Court (1) declare that the "Investigative Subpoena" constitutes a retaliatory action, FAC ¶ 104, and violates ACC's constitutional rights, *id*. ¶ 105; (2) "[e]njoin [the Attorney General] from initiating any action to enforce the Investigative Subpoena or further investigating [ACC] in violation of its constitutional rights," *id*. ¶ 106; (3) "[e]njoin [the Attorney General] to withdraw the Petition to Enforce that is presently pending in the California courts and to refrain from initiating any new action to enforce the Investigative Subpoena," *id*. ¶ 107; and other requests unrelated to resolution of this issue.

Second, any assertion that the Attorney General will issue discovery to ACC that touches on the documents at issue here is too speculative to support jurisdiction. *See* Mot. at 6–7. ACC insists that the Attorney General already knows exactly what will be needed to prove the case against ExxonMobil and that it is "far from mere speculation" that he will "seek ACC's privileged documents in the Exxon litigation." Opp. at 4. The Attorney General does not dispute he will likely issue discovery to ACC, but that is not sufficient to defeat mootness here. ACC cannot reasonably expect to insulate itself from all further requests for all time in all contexts— including those that might touch on these documents—and the Attorney General cannot know, when he issues a request, what documents will be implicated. Moreover, any discovery will be limited, as it must, to evidence necessary to support allegations that ExxonMobil engaged in a decades long campaign to mislead and deceive the public about the feasibility and viability of

**TABLE OF AUTHORITIES**
**(continued)**

plastics recycling.[2] Within those constraints, it is presently not clear what the Attorney General

will seek from ACC. There are thus insufficient facts to overcome mootness. *Sossamon*, 560

F.3d at 324 (finding mootness where "there are no facts before us" to determine whether the

future conduct might present the same constitutional issues).

The Attorney General has no intention to specifically seek "ACC's privileged

documents," as ACC asserts in at least a dozen instances in its Opposition. As an initial matter, it

bears emphasis that ACC has not met its burden to establish that the documents at issue are

privileged under the First Amendment. Regardless, it is the Attorney General's prerogative to

seek documents through discovery that will support his allegations that ExxonMobil has engaged

in consumer deception and false advertising, among other violations of California law. It may be

that some of his discovery requests will implicate documents over which ACC will assert a

privilege—as is often the case in civil discovery—including a qualified First Amendment

privilege. The Attorney General cannot unilaterally compel ACC to produce any documents that

it asserts are privileged under the First Amendment; only a court can do that, after evaluating the

merits of ACC's privilege claims and the government's competing need for the documents. *See*

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). The procedures for working

through discovery disputes are well-established, and there can be no doubt ACC would have its

---

[2] Referring to the preservation notice that remains in effect, ACC states, "Bonta fails to explain why he continues to direct ACC to preserve documents if he 'does not presently intend to make the same requests to ACC.'" Mot. at 5, quoting Rumsey Decl. ¶ 7. The preservation notice at issue was issued over two years ago and was broad in nature because there was an investigation, which by its very nature, is aimed at uncovering whether there have been any violations of law.

**TABLE OF AUTHORITIES**
**(continued)**

day in court—including to defend production of some or all the documents at issue here on the basis that they are privileged under the First Amendment—if propounded discovery even reaches documents that ACC believes are privileged. But that is not now at issue, and it may never be. It follows that for ACC to surmise that the Attorney General will issue discovery to ACC seeking the documents at issue here is indeed speculative and does not rise to the level of a cognizable controversy to support this Court's jurisdiction. *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.") (cleaned up); *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378 (D.C. Cir. 1984) ("[T]he 'chilling effect' which is produced by their fear of being subjected to illegal surveillance and which deters them from conducting constitutionally protected activities, is foreclosed as a basis for standing.").

> **2.    The Attorney General Has Not Taken, and Will Not Take,**
> **Action Against ACC in Retaliation for its Comments to the FTC**

ACC contends that the alleged harm is likely to recur because the Attorney General could "retaliate" against it by issuing discovery. ACC claims: "It makes no difference to ACC that Bonta retaliates against ACC by seeking its privileged document through an investigative subpoena as opposed to one issued in discovery." Opp. at 4. This simplistic assertion conflates the key differences between an investigative subpoena and a third-party discovery request in the context of an ongoing lawsuit, which were identified in Section 1, above. Moreover, an argument

**TABLE OF AUTHORITIES**
**(continued)**

Page

that any discovery the Attorney General's office might issue to ACC would be "retaliatory" is

without merit because the constraints on discovery would foreclose requests that are purely for

purposes of retaliation.[3] Discovery is required to be relevant to the claims asserted in the

pleadings. Cal. Code Civ. Proc. § 2070.010. If there is no connection between a discovery

request and the pleadings at issue, then the receiving party would be under no obligation to

comply.

Moreover, any notion that any forthcoming discovery is "retaliatory" would be belied by

the facts. ACC principally alleges here—as it must to support its retaliation theory—that the

Attorney General issued the investigative subpoena *in response to* ACC's comments to the FTC.

*See*, *e.g.*, FAC ¶ 4 ("This dispute arises from an event common to the political life of the District:

a federal agency's call for public comment on a matter under consideration by the agency."); *id.*

¶ 12 ("His investigation is merely a means to obtain ACC's internal advocacy strategies to

advantage his own engagement on an ongoing Federal policy issue.") Such assertions are

baseless here, but even more so in the context of discovery issued to ACC in the ExxonMobil

litigation: Now that the Attorney General has filed the complaint, ACC can see for itself the

claims that will drive discovery in that matter and confirm that they take no issue with the fact

---

[3] Of course, some courts have phrased parties engaging in abusive tit-for-tat discovery and motion practice as "retaliatory," but that is far different from the type of retaliation ACC alleges in its FAC. *See*, *e.g.*, *E & J Gallo Winery v. Encana Energy Servs., Inc.*, No. CV-F-03-5412, 2005 WL 8172972, at *4 (E.D. Cal. Jan. 28, 2005).

**TABLE OF AUTHORITIES**
**(continued)**

Page

that ACC submitted comments to the FTC. Rumsey Supp. Decl. ¶ 2, Exh. A.[4] Consistent with

the California Discovery Code, the Attorney General will only issue discovery as necessary to

support his claims or litigate any motion in that action. Cal. Code Civ. Proc. § 2070.010

(authorizing discovery "regarding any matter, not privileged, that is *relevant to the subject*

*matter involved in the pending action* or to the determination of any motion made in that

action").

> **B.** **The Withdrawal of the Investigative Subpoena and Dismissal of the Petition to Enforce Has Irrevocably Eradicated the Effects of ACC's Alleged Harm**

The second prong of the voluntary cessation doctrine asks this Court to consider whether

"interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation." *Becerra*, 92 F.4th at 1144 (citing *Cnty. of Los Angeles*, 440 U.S. at 631). ACC sought

declaratory and injunctive relief specific to the "Investigative Subpoena" and proceedings to

enforce that subpoena. FAC ¶¶ 106, 107. With the investigative subpoena's withdrawal,

dismissal of the enforcement proceeding, and a commitment not to re-issue a similar

investigative subpoena, ACC already has "what it seeks" here. *See id*.; *Staley v. Harris Cnty.*,

485 F.3d 305, 309 (5th Cir. 2007) (en banc) (citing *Harris v. City of Houston*, 151 F.3d 186, 189

(5th Cir. 1998) ("[W]e find it beyond dispute that a request for injunctive relief generally

becomes moot upon the happening of the event sought to be enjoined.").

---

[4] The claims asserted in the ExxonMobil litigation include nuisance, violations of consumer protection laws, and other violations of state laws enacted to protect California consumers and the environment.

Page

The only thing ACC sought that it does not already have in hand is a declaration "that the Investigative Subpoena constitute[d] a First Amendment retaliatory action," FAC ¶ 104, and violated ACC's constitutional rights, *id.* ¶ 105. But declaratory relief is improper where it is not tethered to a live controversy. *Calderon v. Ashmus*, 523 U.S. 740, 747–49 (1998) (declaratory relief improper where it would serve only to clarify a legal issue without any practical consequence for the parties). For these reasons, the Attorney General has carried his burden demonstrating this action is moot.

## II.    ACC HAS NOT ESTABLISHED PERSONAL JURISDICTION UNDER THE LONG-ARM STATUTE

Regardless of how this Court decides the mootness issue—or whether it resolves that issue at all—dismissal is also required for another reason: There is no personal jurisdiction over the defendant. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 588 (1999) (court may dismiss for lack of personal jurisdiction without determining subject matter jurisdiction).

### A.    ACC Fails to Establish Relevant Contacts and Harms under Subsection (a)(1)

ACC's first argument simply mischaracterizes the FAC's allegations. ACC argues that "ACC alleges in the Amended Complaint, and Bonta does not deny, that he retained a process server to hand-serve ACC the Petition to Enforce *prior* to ACC filing its initial complaint." Opp. at 13 (emphasis in original) (citing FAC ¶ 87). Nowhere in the FAC does it specifically allege that a process server was hired prior to ACC filing its initial complaint on May 24, 2024. Rather,

**TABLE OF AUTHORITIES**
**(continued)**

Page

ACC only alleges that the Attorney General hired a process server prior to May 30, 2024, FAC ¶ 87, and that is true: the process server was hired on May 29, 2024, which is *after* May 24. Rumsey Supp. Decl. ¶ 3.

Service of the petition to enforce after the original Complaint was filed could not retroactively have caused harm because ACC first alleged its claims against the Attorney General before such service took place. In its Opposition, ACC tries to cure its failure to allege harm by personal service of the petition by restating all the harms it alleged in its original complaint ("chill on its speech, associational, and petitioning activities," Opp. at 8), which again, was filed before that personal service took place. Indeed, now, as before, the gravamen of ACC's claims—and the underlying harm it alleges—stem from the act of "launching an investigation, serving an Investigative Subpoena … , and filing a Petition to Enforce the Investigative Subpoena … ." *See*, *e.g*., FAC ¶¶ 89, 99. It is beyond dispute that none of those acts occurred in the District. (And it strains credulity for ACC to assert that service of a preservation notice on a different entity—the Plastics Industry Association on April 28, 2022—is part and parcel of the conduct by which ACC was harmed, Opp. at 9; that notice had no effect on ACC whatsoever, and ACC does not allege otherwise. FAC ¶¶ 25, 36.)

    **A.**    **ACC Fails to Establish Any "Tortious Injury" for Purposes of Section (a)(3)**

ACC also fails to identify any "tortious injury" arising from an act or omission in the District under Section (a)(3). Section (a)(3) "is a precise and intentionally restricted tort section which stops short of the outer limits of due process." *Media Matters for Am. v. Paxton*, No. 24-

**TABLE OF AUTHORITIES**
**(continued)**

Page

cv-147, 2024 WL 1773197, at *9 (D.D.C. Apr. 12, 2024) (citing *Forras v. Rauf*, 812 F.3d 1102,

1107 (D.C. Cir. 2016)). "Central to this provision is the causation factor, which 'requires that

both the act and injury occur in the District of Columbia.'" *Foote v. Williams*, No. 16-2530, 2017

WL 3836044, at *5 (D.D.C. Aug. 31, 2017) (citing *Helmer v. Doletskava*, 393 F.3d 201, 208

(D.C. Cir. 2004)).

ACC asserts the same new fact—that the Attorney General contracted in the District for

personal service of the Petition to Enforce on ACC—as basis for jurisdiction under either

subsection (a)(1) or (a)(3). As set forth above, this argument should be rejected because service

of the Petition to Enforce did not cause ACC's injuries, and ACC had already filed this lawsuit

alleging violation of its First Amendment rights. ACC therefore cannot meet the "causation"

element of subsection (a)(3) with respect to service of the Petition to Enforce.

The alternative harms ACC points to in its Opposition are conclusory and not specific. For

example, ACC points to the fact that it did not conduct a second survey for fear of "retaliation

from Bonta." Opp. at 15 (citing ECF No. 16-3, ¶¶ 18–21). According to the cited declaration,

that "retaliation" would be "requiring ACC to produce documents." ECF No. 16-3, ¶ 19. As

explained above, it is the Attorney General's prerogative to request documents, whether by

investigative subpoena or through third-party discovery, but he cannot unilaterally compel

production of documents if ACC is legally entitled to withhold them. ACC also points to an

ambiguous fear of "additional singling out." *Id.* ¶ 16; Opp. at 10. That fear is not defined, and

clearly has no basis as the Court has already explained that the Attorney General "sent

**TABLE OF AUTHORITIES**
**(continued)**

preservation letters and then subpoenas to multiple companies and entities" in the course of his investigation and "has not specifically targeted Plastics or ACC." Order at 1, 18.

ACC also alleges fear of turning over member names and roles, as well as what it views as sensitive communications, fearing that information will be made public. In its Opposition, ACC provides no basis to substantiate that fear, other than to state it does not "typically" disclose that information. Opp. at 11 (citing FAC ¶ 41). Regardless, in addition to the fact that ACC fails to articulate what harm might befall any of the 31 members who participated in the Study if the *details* of their participation were to be disclosed, it fails to sufficiently articulate any other cognizable harm, relying exclusively on conclusory statements of injury. "Conclusory statements do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (internal citations omitted).

ACC next suggests this Court should give weight to the fact that the Attorney General has made "no attempt to show ACC's speech was misleading," Opp. at 12, suggesting this somehow supports that ACC has been tortiously injured. It does not. Moreover, it disregards the oft-repeated fact that to launch an investigation, the Attorney General's office need not show that a violation has in fact, been committed—that determination is precisely the purpose of an investigation. *Brovelli*, 56 Cal.2d at 529. And any of ACC's unfounded doubt regarding whether the investigation was genuine has been removed by the now-filed lawsuit, a 147-page complaint against ExxonMobil alleging six causes of action for violations of environmental and consumer protection laws. Rumsey Decl. ¶ 2, Exh. A.

TABLE OF AUTHORITIES
(continued)

Page

**B.    ACC's Fails to Establish Any "Tortious Injury" or Relevant Contacts for Purposes of Section (a)(4)**

ACC fails to establish a "plus factor" that is "separate from and in addition to the in-state injury," showing that there is "some other reasonable connection between the state and the defendant." *Hindu Am. Found v. Viswanath*, 646 F. Supp. 3d 78, 94 (D.D.C. 2022).

ACC mischaracterizes *Akhmetshin v. Browder*, 275 A.3d 290 (D.C. Cir. 2022) as finding that "contacts in D.C. related to engagement with the federal government support jurisdiction under (a)(4)." Opp. at 15. In *Akhmetshin,* the court simply found that the government contacts exception did not apply to subsection (a)(4) of the long-arm statute, but that expressly did *not* mean that the lower court should ignore the constitutional principles and other doctrines that underlies the exception. *See Akhmetshin*, 275 A.3d at 296. The ultimate question of whether personal jurisdiction was established was *not even certified to the court*, *id*. at 292, so that issue was not decided. Here, as there, the Attorney General has argued that "he has not purposefully availed himself of the protections and benefits of D.C. law by engaging in federal policy advocacy in the District," and while the government contacts exception may not apply under subsection (a)(4), those arguments "*nonetheless* bear on the constitutionality of [this Court's] exercise of personal jurisdiction over him ...." *Id*. at 296 (emphasis added). ACC does not counter authorities cited in the Attorney General's motion indicating that the remaining contacts are insufficient to satisfy the plus-factor (*see* Mot. at 15), and instead concedes the issue by seeking discovery to uncover additional facts. (For reasons discussed below, ACC's request should be denied.)

**TABLE OF AUTHORITIES**
**(continued)**

Page

    **C.**    **Exercising Personal Jurisdiction in this Matter Would Violate Due Process**

ACC cannot meet the ultimate test of establishing that personal jurisdiction in this matter would comport with due process. First, ACC cursorily dismisses the Attorney General's assertion that this analysis applies, stating that because a state is not a person under the Due Process Clause, "there cannot be any due process problem." Opp. at 17 (citing nothing). ACC disregards authority holding that when a state official is sued in his official capacity, analysis under the District's long-arm statute effectively incorporates the analysis that would apply for any other defendant under the Due Process Clause. *United States v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995).

The Attorney General has explained that he did not purposefully avail himself of the District in a way that could support specific jurisdiction. *See* Mot. at 16. ACC In cherry-picking facts to rebut that assertion (including that "ACC is headquartered in the District and that his subpoena would be received by ACC in the District," Opp. at 18), ACC neglects to contend with the significant countervailing facts set forth in the Attorney General's motion, namely that ACC also has headquarters in California; has California-based counsel; and could just as easily have been served in California—indeed, doing so would have been equally effective. *See* Mot. at 14 (citing Rumsey Decl., ¶¶ 11, 12). And even if the documents at issue "involve" ACC employees who reside in the District, ACC submits no proof that "[t]he District is where ACC would have to undertake efforts to further comply with the Investigative Subpoena." Opp. at 18. The documents at issue could well be electronic, and available anywhere. ACC also fails to

**TABLE OF AUTHORITIES**
**(continued)**

substantiate that "the effect of [the Attorney General's] conduct and the resulting chill would be felt in D.C." more than in, say, California. *Id*. Only *one* of ACC's 31 Plastics Division members—the Vinyl Institute—appears to be headquartered in the District. Rumsey Supp. Decl. ¶ 5.

> **D.      This Court Should Deny ACC's Request for Discovery**

ACC is not entitled to jurisdictional discovery because ACC has not demonstrated that such discovery would be appropriate. "[I]n order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Here, ACC has not demonstrated a good faith belief that the Attorney General had any "knowledge and intent of inflicting tortious harm on ACC in the District," as ACC speculates. Opp. at 19.

Moreover, before being permitted to obtain jurisdictional discovery, "a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'" *Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (quoting *U.S. v. Philip Morris Inc*., 116 F. Supp. 2d 116, 130 n. 16 (D.D.C. 2000)). "When there is no showing of how jurisdictional discovery would help plaintiff discover anything new, 'it [is] inappropriate to subject [defendants] to the burden and expense of discovery.'" *Id*. (quoting *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 n. 4 (D.D.C. 1995)). The jurisdictional discovery must also be "narrowly tailored" to produce relevant information. *Coal. For Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 5 (D.D.C. 2010), *aff'd*, 671 F.3d

**TABLE OF AUTHORITIES**
**(continued)**

Page

1275 (D.C. Cir. 2012). Here, ACC seeks jurisdictional discovery on how frequently the Attorney

General retained process servers in the District, what events the Attorney General attended and

official business that the Attorney General conducted in the District, how statements and factual

assertions of the Attorney General could be "tested," and other, unspecified discovery. Opp. at

19. The Court should not grant ACC's vague and wide-ranging discovery requests, which are

unsupported by "detailed showing" as to why this discovery is necessary, and which place no

limit on the burden and expense to the Attorney General.

## CONCLUSION

For the foregoing reasons, the Attorney General's Motion to Dismiss should be granted.


Dated: October 31, 2024                    Respectfully submitted,

ROB BONTA
*Attorney General of California*
DANIEL A. OLIVAS
Senior Assistant Attorneys General
DENNIS L. BECK, JR.
Acting Senior Assistant Attorney General
VANESSA MORRISON
Supervising Deputy Attorney General

/s/ *Elizabeth Rumsey*
ELIZABETH B. RUMSEY
STACY LAU
*Deputy Attorneys General*
*Attorneys for Defendant Rob Bonta, in his Official*
*Capacity as Attorney General of California*